## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| FAYE BLACK and JEANNINE TOLSON individually and on behalf of all others similarly situated, | |
|       Plaintiffs, | Case No. 6:23-cv-1218 |
| v. | COMPLAINT — CLASS ACTION |
| UNION PACIFIC RAILROAD COMPANY, | JURY TRIAL DEMANDED |
|       Defendant. | |

### PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned attorneys, William R. Griffin, of Martin, Pringle, Oliver, Wallace & Bauer, LLP, in association with W. Mark Lanier, Alex J. Brown and Ryan D. Ellis of The Lanier Law Firm, P.C., Wendy Kerner of Kresch Legal Services PR, PLLC, Christopher T. Nidel and Jonathan Nace of Nidel & Nace, PLLC, and Steven J. German of German Rubenstein, LLP, bring this civil action under Fed. R. Civ. P. 23 on their own behalf and on behalf of the Class they represent to obtain damages, both compensatory and punitive, and costs of suit from the Defendant. Plaintiffs complain and allege as follows:

## INTRODUCTION

1.      This is a civil action to redress circumstances created by Defendant Union Pacific Railroad Company ("Union Pacific") and for damages suffered by members of the putative class defined below (the "Class Members"). The Defendant's actions have resulted in the contamination of the Class Members' properties and Class Members' exposure to toxic chemicals by ongoing releases and leachate from an industrial railroad site known as the "29th and Grove Environmental Site" in Wichita, Kansas (the "Site"). The Site has been owned and operated by the Defendant, and during the ownership and operation of the Site, the Defendant: (1) mishandled and thereby released hazardous and toxic substances at the Site, (2) disposed of hazardous wastes at the Site, and (3) mishandled the management and the cleanup of the wastes and substances released from the Site. In combination, the contamination and its attendant risks have now migrated in, under, on, around and through Plaintiffs' and Class Members' properties. The Site has experienced continuing releases of toxic, hazardous, substances, and hazardous wastes for decades. Defendant has been aware of the contamination and the source of the contamination for decades. These facts were known to the Defendant for years and yet this information has been withheld and concealed from Plaintiffs and the Class Members.

2.      Because of the Defendant's ownership and operations at the Site, Plaintiffs and Class Members have been exposed to toxic and hazardous substances and wastes from chemical degreasing agents that Defendant used, transported, carried, or otherwise handled. These on-Site operations resulted in contaminants being released onto and into the soil, the ground water, and the air at the Site. These releases have migrated, and continue to migrate, to Plaintiffs' and Class Members' properties. The contaminants released at the Site were associated with the storage, transfer and use of solvents, acids, and metals including, but not limited to:

2

Volatile organic compounds (VOCs) (including chlorinated solvents): trichloroethylene (TCE), 1,1,1-trichloethane (1,1,1 TCA), cis-1,2-dichcloroethene (c-1,1-DCE), 1,2-dichloroethene (1,2, -DCE), vinyl chloride, chloroform methylene chloride and 1,4 dioxane (herein referred to as "contaminants", or "Contamination".)

3.     Despite its knowledge of: (a) the releasing, leaking, leaching, and migrating contaminants at the Site; (b) the off-Site nuisance and trespass caused by the contaminants; (c) the fate and transport characteristics of the contaminants; and (d) the associated health risks with these toxic, hazardous, and carcinogenic contaminants, Defendant concealed the presence of these contaminants and their releasing, leaching and migrating from the Site. Defendant also concealed the fact that the contaminants were migrating onto, into, and around the Plaintiffs' and the Class Members' properties.

4.     The presence of these toxic and hazardous contaminants on, at, and in Plaintiffs' and Class Members' properties presents a significant health risk and harm to those living at these contaminated properties as well as a significant environmental liability and damage to those owning these contaminated properties.

## PARTIES

### Plaintiff(s)

5.     Plaintiffs are residents of Wichita, Kansas and own properties that are located within the Class Area.  Plaintiffs are putative class representatives for the Class which is defined below.

6.     As a result of Defendant's actions, specifically the inadequate containment, handling, and remedial activities, the toxic and hazardous contaminants have entered and contaminated Plaintiffs' and Class Members' properties -  their air, land, groundwater, dwelling place (homes) and their surrounding environment - thereby causing Plaintiffs and Class Members

3

to suffer endangerment to their health, damage to their property and personal finances, and destruction of their community.

7.      As a result of the Defendant's actions, toxic and carcinogenic contaminants have entered onto Plaintiffs' and Class Members' properties, creating a blight on their community, and causing diminution in their property values.

## Defendant

8.      Union Pacific is a foreign corporation incorporated in the State of Delaware with principal executive offices located at 1400 Douglas Street in Omaha, Nebraska 68179.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and the action is between multiple members of the class, who are residents and/or citizens of the State of Kansas, and the Defendant, who is a citizen of the State of Delaware and the State of Nebraska. The number of members of all proposed plaintiffs in the class in the aggregate is more than one hundred (100).  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over Defendant because Plaintiffs' claims arise out of Defendant's contacts, acts, and omissions within the State of Kansas such that the exercise of such jurisdiction is consistent with due process under the United States Constitution.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions that give rise to the claims at issue in this case occurred in this District, in Sedgwick County Kansas, Defendant conducts substantial business in this District, and Defendant has caused harm to Plaintiffs and Class Members in this District.

4

**GENERAL FACTUAL ALLEGATIONS**

12.     Plaintiffs and the Class Members have suffered damages as a result of the presence of contaminants at their properties and/or residences due to the ongoing and continuing release, leaking, leaching, and migration of the contamination from the Site into, under, onto, at and around their properties and residences.

13.     The contaminants have been released and migrate (and continue to be released and migrate) into, under, onto and around the Plaintiffs' and the Class Members' properties and residences. Plaintiffs' and the Class Members' properties and residences have been and continue to be contaminated with these contaminants - including toxic and carcinogenic chlorinated solvents such as TCE and 1,4-dioxane.

14.     The Site has been used by Defendant for decades and the contamination is believed to date back to spills that took place in the 1970s, 1980s, or earlier. During the period of Defendant's use of the property, spills and leaks of toxic chemicals, including but not limited to, chlorinated solvents such as TCE, occurred at the Site, contaminating the soil and groundwater. These spills and leaks have resulted in contamination throughout the neighborhood that extends roughly three miles south and numerous city blocks laterally from Defendant's source of contamination. Defendant's release and disposal of contaminants created an imminent and substantial threat to public health and to the Plaintiffs' and the Class Members' health and wellbeing, and have devalued their residences and properties.

15.     Defendant has known, or should have known, that the operations at the Site were releasing, leaking, leaching, and discharging these hazardous and carcinogenic contaminants into, under, and onto properties and into the groundwater and air in the Class Area as identified below.

16.     Furthermore, Defendant did nothing to notify the general public in the Class Area, including those living or purchasing homes in the Class Area, that their properties and residences were contaminated or were threatened by contamination.

17.     For at least fifty-years Defendant owned and/or operated at the Site and failed to properly control the contamination, properly remediate the contamination, and to appropriately notify the public about the presence, hazards and threats of the contamination.

18.     Had Defendant properly remediated or contained the contaminants, Plaintiffs' and the Class Members' properties would not have been contaminated and their health would not have been put at risk and continue to be threatened and damaged.

19.     Had Defendant adequately notified the public, the Plaintiffs and the Class Members would not have purchased property and/or resided at property within and around the Class Area and would not have suffered damages as a result.

20.     The contaminant trichloroethylene, or TCE, is a known human carcinogen. TCE also degrades into other chlorinated solvents, many of which are also known carcinogens (such as vinyl chloride).

21.     In addition, on information and belief, the Site is expected to be also releasing 1,4-dioxane, which has been used as a preservative for chlorinated solvents including TCE and TCA. 1,4-dioxane is an anticipated human carcinogen. The contaminant 1,4-dioxane also is more water soluble than TCE and therefore tends to migrate farther and faster than the chlorinated solvents themselves suggesting that the contamination plume may be significantly larger than that identified to the public.

22.     Despite these facts, upon information and belief, Defendant has never revealed any testing for 1,4-dioxane in and around the Site or the surrounding Class Area.

6

23.     Contaminants leaching into and migrating with the groundwater expose the Plaintiffs and the Class Members to dangerous carcinogens and VOC contaminants through the well-known, well-understood and generally accepted process of "vapor intrusion."

24.     Vapor intrusion occurs when chemical vapors from VOCs migrate upward from contaminated soil and/or groundwater through the soil and through building foundations and floors and into the indoor air.

25.     Unknown to them, for years Plaintiffs' and the Class Members' properties have been contaminated and this contamination poses an ongoing and continuing threat to the property as well as to those residing in and on the property.

26.     As a result of the contamination at their properties and the continuing threat of exposure, Plaintiffs and Class Members have suffered damages, such as diminution in their property values.

**<u>Plaintiffs and Class Members Were Left Completely in the Dark</u>**

27.     No one, including the Defendant or the Defendant's employees and agents, adequately notified Plaintiffs or the Class Members of the presence of their contaminants at, in, under, and around Plaintiffs' and the Class Members' properties.

28.     No one, including the Defendant, or its employees or agents, adequately notified Plaintiffs or the Class Members of the threat of exposure or the potential carcinogenic risks and risks of other diseases posed by the presence of these contaminants at, in, under, and around their properties and residences.

29.     Rather than provide such notice and information, for decades Defendant concealed from the public, the Plaintiffs, and the Class Members, the presence of its contaminants migrating throughout the Class Area properties and residences.

7

30.     Plaintiffs and the Class Members reasonably believed that the groundwater, surface water, air, and soil in their neighborhood did not pose any greater health hazard than any other groundwater, air, soil, or natural resources in a typical unpolluted residential community.

31.     Plaintiffs' and the Class Members' properties have each been impacted by the contamination due to Defendant's acts and omissions in handling, operating, containing, and remediating the Site and its contamination.

32.     Plaintiffs and the Class Members seek redress and damages including, but not limited to, economic losses, such as loss of property value, and punitive and other damages as the result of the careless, reckless, negligent, willful and wanton actions in violation of law and disregard of persons who foreseeably might be harmed by such acts or omissions by the Defendant.

33.     Defendant's intentional, reckless, or otherwise negligent conduct created the condition causing the contamination and Defendant knew or should have known that harm to Plaintiffs and Class Members was substantially certain to follow.

34.     Defendant, despite knowledge of the serious health and environmental effects associated with the contaminants migrating throughout the Class Area and the surrounding environment, failed to warn the public in general, and the Plaintiffs and the Class Members in particular, of the dangers that the historical use activities at the Site and the threat that the contamination from the Site posed.

35.     Despite its knowledge of the serious health and environmental effects associated with the Site contamination, Defendant did not adequately investigate and remediate the Site in order to prevent contamination of and throughout the Class Area. Nor did Defendant publicize the scope and extent of contamination and its associated risks. These actions and omissions prevented Plaintiffs and Class Members from taking the appropriate response and enabled Defendant to avoid

8

taking necessary and reasonable steps to address and respond and protect the properties within the Class Area in a timely manner. As a result, Plaintiffs and the Class Members suffered while Defendant gained by the indefinite delay of mitigation and remediation, which allowed the contaminants to migrate further into the surrounding community resulting in additional exposure and harm due to these dangerous chemicals.

### THE PLAINTIFFS AND CLASS MEMBERS' CONCERNS REGARDING THE CONTAMINATION ARE REASONABLE

36.     In the fall of 2022, the Kansas Department of Health and Environment (KDHE) presented the first in a series of public meetings informing the community in northeast Wichita about the TCE contamination and related public health risks.[1]

37.     KDHE's first public meeting was September 8, 2022, when the agency alerted residents about the TCE plume and the human health risks linked to TCE exposure in well water through ingestion or dermal contact. KDHE also warned residents there was risk of exposure because of potential vapor intrusion in their homes. They further warned that TCE exposure is linked to a variety of cancers and other illnesses.

38.     At subsequent meetings on November 25, 2022, May 19, 2023, and June 24, 2023, KDHE continued to caution the community about the risks of exposure to TCE through well water and vapor intrusion. KDHE also provided flyers warning residents of these risks.

39.     Various news outlets also reported on these meetings—referring to the contamination from Union Pacific as the "Cancerous Chemical Spill;"[2] informing readers "that exposure to TCE can cause, among other things, kidney cancer, non-Hodgkin's lymphoma, and

---

[1] https://www.kdhe.ks.gov/1938/29th-and-Grove-Site#:~:text=On%20September%208%2C%202022%2C%20a,draft%20during%20the%20public%20meeting.
[2] https://www.communityvoiceks.com/2022/10/06/eighteen-years-after-its-discovered-kdhe-makes-community-aware-of-cancerous-chemical-spill/

heart issues;"[3] and notifying residents that Kansas health officials recommend they seek cancer screenings.[4]

40.     With the plethora of means by which KDHE and news outlets were spreading warnings in Northeast Wichita about the impacts of the TCE contamination, the general public was made aware of the cancer risks in the community from the plume and potential exposure from well water and vapor intrusion. The general public's and the Plaintiffs' and Class Members' concerns regarding the contamination were reasonable.

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

41.     Plaintiffs and the Class Members incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

42.     The running of any statute of limitations or statute of repose has either not begun to run or has been tolled by reason of Defendant's fraudulent concealment. Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Class Members the pollution present on, at, and around their properties and Plaintiffs and Class Members only recently became aware of such contamination on, at, and around their properties and residences.

43.     The intentional failure to disclose such information was material to Plaintiffs and Class Members who in turn suffered losses because of their reliance on the belief that their water, air, and soil was free of harmful contaminants.

44.     As a sophisticated corporation that regularly handles industrial chemicals and employs environmental, safety, engineering and myriad other professionals in technical and

---

[3] https://www.kmuw.org/news/2022-11-05/community-angered-at-contamination-in-northeast-wichita
[4] https://www.kansas.com/news/politics-government/article275613856.html

scientific fields, Defendant knew or should have known to a substantial certainty that contaminants they released into the environment and failed to properly remediate would enter the property of Plaintiffs and Class Members. Defendant knew or should have known that such migration of these contaminants would inevitably result and enter Plaintiffs' and Class Members' properties

45.     However, Defendant fraudulently concealed such evidence to the public, notwithstanding that it released these contaminants in the 1970s, 1980s, or earlier. Furthermore, in 1998 Defendant's Site was confirmed as being the source of contamination; then in 2002 Defendant entered into a consent order with the state to investigate the contamination and potential remediation options.[5] In 2003 Defendant learned that the Plume extended 2.9 miles south of the Site to Murdock Ave and was several blocks wide.[6] Yet, Defendant consistently failed to reveal the contamination to the community.

46.     As a result of Defendant's actions, Plaintiffs and the Class Members could not reasonably know or have learned through reasonable diligence that Plaintiffs' and the Class Members' properties were contaminated with TCE and other chemicals and that those risks were the direct and proximate result of Defendant's acts and omissions.

47.     Defendant is estopped from relying on any statute of limitations because of its concealment of the character, quality, scope, extent, and nature of the contamination at, in, under, and on properties forming the class area.  Defendant was aware of the non-public nature of the circumstances of the contamination.  This non-public information (over which Defendant had and continues to have control) was not provided to the residential homeowners and purchasers, and persons living at properties within the Class Area, including the Plaintiffs and the Class Members.

---

[5] https://www.kmuw.org/news/2022-11-05/community-angered-at-contamination-in-northeast-wichita
[6] Draft Corrective Action Decision, KDHE (August 2022).

On information and belief, to this day Defendant has failed to provide the full set of facts and information to the Plaintiffs and Class Members.

48.     Plaintiffs and the Class Members had no knowledge that Defendant was engaged in the wrongdoing alleged herein. The contamination cannot be seen either in the ground water beneath their property, or in the vapors from the contaminants entering their homes. Because of the concealment by Defendant, the failure to notify the Plaintiffs, the Class Members, and the public of the contamination and its attendant risks, neither the Plaintiffs nor the Class Members have, nor could they have reasonably discovered, the contamination at any time prior to the commencement of this case.

## CLASS ACTION ALLEGATIONS

49.     This class action is being filed by the Plaintiffs, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and others similarly situated. The putative Class Members are similarly situated.

50.     Plaintiffs seek to certify the following class, defined as:

**The Class: Any and all persons that own any residential real property as of September 8, 2022 in the area of Northeast Wichita depicted by the area outlined in Red below (collectively, the "Class Area").**



**The Class Area can narratively be defined as all residential properties within the area defined as all residents on both sides of the road:**

**Beginning at the corner of E 27th St. N and N. Grove St. travelling south on N. Grove Street to E 23rd Street, travelling East on E 23rd St to N. Poplar St., travelling South on N. Poplar Street to and continuing South to E. 19th Street, travelling West on E. 19th Street to N. Grove Street, travelling South on N. Grove Street to the pedestrian walk south of E. Murdock Avenue; travelling west on the pedestrian path to Highway 81/I-135; travelling North on Highway 81/I-135 to N. New York Avenue continuing due East to the corner of N. Grove Street and E. 27th Street N.**

51. To the extent revealed by discovery and investigation, the Class Area boundaries may be extended and there may be additional appropriate classes and/or subclasses derived from the above class definition.

13

52.     Excluded from the class are the Defendant, any entity that has a controlling interest in the Defendant, their legal representatives, officers, directors, assigns, successors, employees, agents and members of their immediate families; governmental and the judicial officers to whom this case is assigned, their staff, (and the members of their immediate families).

53.     This Court may maintain these claims as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4).

**Numerosity**

54.     Fed. R. Civ. P. 23(a)(1): The members of each class are so numerous that joinder of all members is impractical. There are nearly 3000 parcels of real estate in the Class Area. The number of persons that own these properties located within the Class Area is estimated to be multiple thousands. The number of Class Members is such that it exceeds the number that reasonably allows for joinder of all Class Members and, therefore, the number of members of the Property Class satisfies Fed.R.Civ.P. 23 (a)(1).

**Commonality**

55.     There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class. The same conduct by Defendant has injured or will injure all Class Members.

56.     The same conduct by Defendant has injured each respective Class Member. Common questions of law and/or fact that are common to the Class include, but are not limited to:

   a.     Whether Defendant was negligent in its acts or omissions that caused contaminants to be released from the Site and migrate into, under and throughout the Class Area;

   b.     Whether Defendant, through its acts or omissions at the site, proximately caused contaminants to be released and migrate into, at, on, or around the Class Area;

c.     Whether Defendant failed to exercise reasonable care in its handling, storing, transporting, using, releasing, discharging, emitting, disposing and/or failed to reasonably investigate, contain, remediate and mitigate the contaminants;

d.     Whether Defendant violated applicable standards concerning handling, storing, transporting, use, release, discharge, emission, disposal and/or failure to investigate and remediate the contaminants.

e.     Whether Defendant's acts of releasing, discharging, spilling, emitting, allowing migrating or depositing contaminants onto Plaintiffs' properties, and/or their failure to remove, contain, or mitigate such contamination from Plaintiffs' properties, constitutes a private nuisance;

f.     Whether the nature of the Defendant's actions and the resulting contamination constitutes a permanent nuisance;

g.     Whether Defendant's releasing, discharging, emitting or depositing site contaminants onto Plaintiffs' properties, and/or their failure to remove such contamination, constitutes a trespass;

h.     Whether Defendant proximately caused Site contaminants to be released into the environment, and Plaintiff's and Class Members' properties and persons have been exposed to such contaminants;

i.     Whether, as a result of the exposure to Site contaminants, Plaintiff's properties and the properties of the members of the Property Class have suffered a loss in value; and

j.     Whether Defendant fraudulently concealed the contamination from Plaintiffs and Class Members.

57.     These questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class Members.

## Typicality

58.     The claims of Plaintiffs, Faye Black and Jeannine Tolson, are typical of the claims of the Class Members as required by Rule 23(a)(3), in that all claims are based upon the same factual and legal theories. It is the same conduct of the Defendant that injured each Class Member. The principal issue in this case involves Defendant's conduct in the wrongful handling, storing,

transporting, using, releasing, discharging, emitting, and disposing the Site contaminants, and Defendant's failing to quickly warn, contain, remediate and mitigate the site contaminants. Its operations at the site have impacted all members of the Class.

## Adequacy

59.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, as required by Rule 23(a)(4). Plaintiffs have retained counsel with substantial experience in the prosecution of class actions and environmental litigation. Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor counsel has any interest adverse to those of the Class Members.

## Rule 23(b)(1)

60.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications that would establish incompatible standards of conduct for Defendant. Adjudications respecting individual Class Members would, as a practical matter, be dispositive of the interests of the other Class Members or would risk substantially impairing or impending their ability to prosecute their interests.

## Rule 23(b)(2)

61.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to all Class Members, thereby making relief in the form of an injunction appropriate. Defendant should be required to address the nuisance and trespass through a prompt and thorough investigation, which includes continual monitoring of the air, groundwater, and soil at the properties of Plaintiffs and Class

Members and contain, mitigate, and manage the Site contaminants to prevent further injury to the extent it is reasonably appropriate.

62.     Plaintiffs and Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.

## Rule 23(b)(3)

63.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23 (b)(3). Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. Absent a class action, most Class Members likely would find the cost of litigating their claims prohibitive and will have no practical or effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. It would be impracticable and undesirable for each member of the putative class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all putative class members.

64.     Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

65.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

66.     Plaintiffs and the Class Members were not in any way responsible for the site contaminants in Wichita, Kansas.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

67.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

68.     At all relevant times hereto, Defendant owed to Plaintiffs and Class Members, who foreseeably could be injured by its negligence, a duty to exercise reasonable care in using, handling, storing, disposing, releasing, and discharging site contaminants, including carcinogenic materials, that it knew, or should have known, could result in damage and injury to Plaintiffs, Class Members, their property, and their residences.

69.     Defendant also owed a duty of care to Plaintiffs and Class Members to exercise reasonable care in the disposal, storage, and remediation of site contaminants particularly in proximity to Plaintiffs' and Class Members' residential property.

70.     Defendant further owed a duty to exercise reasonable care to disclose the presence of these contaminants, including carcinogenic materials, the risks that they posed, and what Defendant knew about the presence and risks of these site contaminants.

71.     Defendant further owed a duty to exercise reasonable care to contain, mitigate and manage the Site contaminants to avoid further injury to Plaintiffs and Class Members.

72.     These duties to exercise reasonable care arose out of the common law as well as relevant Federal and State of Kansas environmental statutes and regulations.

73.     Defendant breached its duty, over a period of years, in at least the following respects:

18

a.      Improperly releasing contaminants into the groundwater.

b.      Failing, and continuing to fail, to prevent groundwater contamination and its migration off site.

c.      Despite knowledge of the widespread presence of contamination, and along with the knowledge of the health and environmental risks that these materials posed for those living in the Class Area, failing, and continuing to fail to take appropriate actions in the on and around the site (including acts into, onto, and under the land that forms the Class Area) and into private homes within the Class Area.

d.      Failing, and continuing to fail to safely, properly, and timely contain, remove, remediate, and dispose of the hazardous and toxic contamination, including carcinogenic materials.

e.      Failing, and continuing to fail to warn and disclose to Plaintiffs and Class Members of the contamination on, in, and around their properties, and the risks that this contamination posed to them and to their families, and the likelihood that they were being exposed to carcinogenic chemicals.

f.      Failing, and continuing to fail, to adequately and with due care identify the extent of contamination from the site, promptly notify property owners of impacts and health threats posed by those chemicals, and remediate these chemicals so as to reduce or remove the threat to Plaintiffs' and Class Members' properties;

g.      Being otherwise negligent.

74.     As a result of Defendant's negligent acts and omissions, as further detailed above, extensive contamination has existed, exists, and will continue to exist without affirmative remedial actions in and around the Class Area.

75.     As a result of Defendant's acts and omissions, as further detailed above, extensive contamination has existed, exists, and will continue to exist on Plaintiffs' and Class Members' properties, causing injury to properties within the Class Area.

76.     As a result of Defendant's misconduct and continued malfeasance as set forth herein, Plaintiffs and Class Members have suffered and continue to suffer harm and damages, including, but not limited to, injury to their properties, such as loss of value.

77.     At all relevant times, Defendant caused and continues to cause actual injury and actual damages to Plaintiffs and the Class Members and/or their property through acts and omissions actuated by actual malice and/or accompanied by a reckless, wanton, and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

78.     Defendant, despite knowledge of the serious health and environmental effects associated with exposure to site contaminants, masked and continues to mask the true extent of contamination, thereby enabling it to avoid taking all appropriate steps to properly remediate the hazardous substances and levels of contamination in, on, and around the Class Area or to remediate, contain, and mitigate dangers.

79.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs' and Class Members' properties have been permanently contaminated, their property values have diminished, and their properties are unfit for unfettered residential use.

80.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs and the Class Members currently suffer actual property damage, stigma, diminution in the value of their property, and degradation to their community.

81.     Plaintiffs and the Class Members seek to recover against the Defendant for such damages caused by site contaminants on and around Plaintiffs' property.

## COUNT II – PRIVATE NUISANCE

82.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

83.     Defendant's past, present and/or continuing acts and/or omissions constitute an intentional nuisance in that Defendant leaked, leached, or discharged contaminants from the Site and created or caused contamination with knowledge that the harm to the Plaintiffs and the Class Members was substantially certain to follow in the form of offense and endangerment to their lives and health, injury to their property, and diminution of property values.

84.     Defendant's past, present and/or continuing activities, acts and/or omissions at the site and in the property surrounding the site including, but not limited to, the Class Area neighborhood, constitute a private permanent nuisance resulting in the presence of hazardous and toxic substances contaminating Plaintiffs' and Class Members' properties and the surrounding environment, thereby exposing Plaintiffs and the Class Members to substantial and unreasonable harms and causing diminution to their property values.

85.     Defendant's past, present and/or continuing acts and/or omissions, resulting in high levels of hazardous contamination in and on the properties surrounding the Site and/or Defendant's failure to properly investigate, mitigate, and remediate this hazardous contamination, and allowing such contamination to remain on Plaintiffs' and the Class Members' properties, the surrounding

properties, and the surrounding environment, constitute a nuisance in that Defendant has managed and handled use and disposal of chemicals at the site in a manner that has unreasonably interfered with Plaintiffs' and the Class Members' property interests and health and safety.

86.   The nuisance that Defendant created is a nuisance that is permanent and not reasonably abatable.

87.   Defendant leaked, leached, or discharged contaminants from the Site in the 1970s, 1980s, or earlier, which resulted in high levels of contamination at and on the properties surrounding the site. Defendant intentionally created and caused such contamination to enter and remain on the Plaintiffs' and Class Members' private properties, which constitutes a permanent nuisance in that the contamination arising from the TCE spill at the Site caused past, present, and prospective injuries that were not and cannot be reasonably abated.

88.   Defendant's contamination is of a nature and duration that exceeds health-based regulatory standards and has resulted in governmental warnings to avoid groundwater usage and avoid other exposure to such contaminants.

89.   The contamination presently impacts and injures Plaintiffs and the Class Members' property, causes a diminution in their property values, and is a blight on their community.  Such harms include, but are not limited to, the devaluation of Plaintiffs' and Class Members' property.

90.   As a sophisticated corporation that regularly handles industrial chemicals and employs environmental, safety, engineering and myriad other professionals in technical and scientific fields, Defendant knew or should have known to a substantial certainty that contaminants they released into the environment and failed to properly remediate would enter the property of Plaintiffs and Class Members. Defendant knew or should have known that such migration of these contaminants would inevitably result and enter Plaintiffs' and Class Members' properties and

22

would result in an interference with their property, land, and groundwater; cause fears and concerns about their safety and health and the safety and health of their families and could require treatment and/or remediation. However, Defendant fraudulently concealed this information and failed to inform the community that it leaked, leached, or discharged contaminants from the Site in the 1970s, 1980s, or earlier, and that such contamination could cause contamination to the aquifer and Plaintiffs' and Class Members' properties.

91.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiffs and the Class Members have suffered, currently suffer, and will suffer exposure to hazardous substances and economic loss as a result, including the loss of value to their property and other harms for which damages are justified.

92.     Defendant caused injury and damages to the Plaintiffs, the Class Members and/or their property through acts and omissions actuated by actual malice and/or accompanied by a reckless, wanton, and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

93.     Defendant, despite knowledge of the serious health and environmental effects associated with exposure to the Site contaminants failed to properly investigate and remediate said contaminants from the Site and surrounding environment, and knew or should have known that the land, groundwater, and indoor air had been, is, or would be developed for residential use; at the same time as failing to warn purchasers and residents of the dangers of such contaminants.

94.     Defendant, despite knowledge of the serious health and environmental effects associated with exposure to the Site contaminants, did not disclose and fraudulently concealed the true extent of contamination, thereby enabling the Defendant to avoid taking all appropriate steps

to properly mitigate and remediate site contaminants and to mitigate their dangers in the Class Area.

95.     Defendant, despite knowledge of the serious health and environmental effects associated with exposure to the site contaminants, failed to properly warn, contain, and remediate such contamination in the Class Area.

96.     This intentional contamination of Plaintiffs' and the Class Members' property is substantial, unreasonable, unwarranted, and unlawful.

## COUNT III – TRESPASS

97.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

98.     Defendant intentionally used, disposed of, and stored chemicals that directly caused, and continue to cause, the migration of contamination at, under, onto, and into Plaintiffs' and Class Members' properties and homes. Such intrusion constitutes a trespass.

99.     As a sophisticated corporation that regularly handles industrial chemicals and employs environmental, safety, engineering, and myriad other professionals in technical and scientific fields, Defendant knew or should have known that it was a substantial certainty that contaminants released into the environment and not properly remediated would enter the property of Plaintiffs and Class Members and that such migration of these contaminants would inevitably result and enter their properties.

100.    These chemicals on their land constitute an uninvited, unwanted, and unlawful invasion of Plaintiffs' and Class Members' properties and homes causing injury to the Plaintiffs' and Class Members' properties.

101.    Defendant's trespass has proximately caused, and continues to cause, Plaintiffs and the Class Members to suffer economic and non-economic damages, stigma, and loss of their property values.

102.    Plaintiffs' and the Class Members' right to be free of trespass has been and continues to be denied by Defendant.

**COUNT IV-VIOLATION OF THE KANSAS DISCHARGE STATUTE K.S.A. 65-6203**

103.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

104.    Defendant released and discharged contaminants that were detrimental to the quality of the water and soil in, on, and around Plaintiffs' and Class Members' properties in violation of K.S.A. 65-6203.

105.    Plaintiffs and Class Members did not cause or contribute to the contamination.

106.    Because of Defendant's release and discharge of the contaminants, Plaintiffs and Class Member have suffered actual damages.

107.    Defendant's contamination is of a nature and duration that pollutes the State of Kansas' soil and groundwater, exceeds health-based regulatory standards, has resulted in governmental warnings to avoid groundwater usage and avoid other exposure to such contaminants, presently impacts and injures Plaintiffs' and the Class Members' property, causes a diminution in their property values, and is a blight on Plaintiffs' and the Class Members' community. Such harms include, but are not limited to, contamination to Plaintiffs' and Class Members' air, water, and soil, and the stigma and devaluation of their property due to the contamination.

108.    Defendant violated K.S.A. 65-6203 when it failed to comply with rules and regulations designed to ensure the prompt correction of the release and discharge of contaminants, thereby endangering public health and the environment.

109.    Pursuant to K.S.A. 65-6203, Defendant is strictly liable for these discharges and must compensate Plaintiffs and Class Members for any and all damages and for the cost of corrective action accessible to them.

## COUNT V- UNJUST ENRICHMENT

110.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

111.    By releasing, spilling, discharging, and then failing to warn, contain, and remediate site contamination at the Plaintiffs' and the Class Members' property and homes Defendant's costs were significantly reduced by avoiding costs of lawful handling, disposal, and remediation of the contaminants and hazardous wastes generated at the site.

112.    This unlawful disposal and storage of hazardous waste contaminants at, on, in and under the Class Area results in damages and additional costs to Plaintiffs and the Class Members as diminished property value and stigma.

## JURY TRIAL DEMAND AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs hereby demand a trial by jury of all issues so triable. Plaintiffs further request that the Court enter an order or judgment against Defendant as follows:

A.    Enter an Order pursuant to Federal Rule of Civil Procedure 23 permitting this action to be maintained as a class action, appointing Plaintiffs as the representatives of the Class Members and Plaintiffs' counsel as counsel for the Class;

B.    Enter judgment in favor of Plaintiffs and Class Members against Defendant for the loss of property value, stigma, unjust enrichment, the cost of prompt corrective action, and for all other relief, in an amount to be proven at trial, as to which they

may be entitled, including interest, costs of notice to class members, fees and costs of this suit;

C.       Award prejudgment and post-judgment interest as provided by law;

D.       Award punitive damages;

E.       Award reasonable and necessary attorneys' fees; and

F.       Award such other relief as this Court deems necessary, just and proper.

Dated:  October 10, 2023

Respectfully submitted,

MARTIN, PRINGLE, OLIVER,
  WALLACE & BAUER, L.L.P.

*s/ William R. Griffin*
William R. Griffin, #21628
645 E. Douglas, Suite 100
Wichita, KS 67202
Tel (316) 265-9311
wrgriffin@martinpringle.com

*IN ASSOCIATION WITH (COUNSEL TO
APPLY FOR ADMISSISON PRO HAC VICE)*

W. Mark Lanier
WML@lanierlawfirm.com
Texas Bar No. 11934600
New York Bar No. 4327284
Alex J. Brown
Alex.Brown@lanierlawfirm.com
Texas Bar No. 24026964
New York Bar No. 4593604
Ryan D. Ellis
Ryan.Ellis@lanierlawfirm.com
Texas Bar No. 24087470
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N
Houston, Texas  77064
Telephone:  (713) 659-5200
Facsimile:  (713) 659-2204

Christopher T. Nidel DC Bar No.: 497059
chris@nidellaw.com
Jonathan Nace, Esq. DC Bar No.: 985718
jon@nidellaw.com
**NIDEL & NACE, P.L.L.C.**
One Church Street
Suite 802
Rockville, MD 20850
Tel: 202-780-5153

Wendy Kerner Colorado Bar No. 56559
wkerner@1800lawfirm.com
**KRESCH LEGAL SERVICES PR, PLLC**
1225 Avenida Ponce de Leon, Suite 605
San Juan, Puerto Rico 00907
Tel:  (800) 529-3476

Steven J. German
German Rubenstein, LLP,
19 West 44th Street, Suite 1500
New York, NY 10036
Tel. 212-704-2020

*Attorneys for the Plaintiffs and the
Putative Class Members*