## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FAYE BLACK, et al.,

        *Plaintiffs*,

v.

        Case No. 23-cv-1218-EFM-ADM

UNION PACIFIC RAILROAD COMPANY,

        *Defendant*.

## MEMORANDUM AND ORDER

Before the Court is Defendant Union Pacific Railroad Company's Motion to Dismiss (Doc. 10). Plaintiffs Faye Black and Jeannine Tolson assert five claims against Defendant because of leaked hazardous materials that have contaminated Plaintiffs' property. These are: (1) negligence; (2) private nuisance; (3) trespass; (4) violation of K.S.A. § 65-6203, Kansas's discharge statute; and (5) unjust enrichment. In their present Motion, Defendant seeks the dismissal of each of Plaintiffs' claims under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim. Because the statutes of limitation and repose have run as to each of Plaintiffs' claims except liability under K.S.A. § 65-6203, the Court grants in part in denies in part Defendant's Motion.

## I.     Factual and Procedural Background[1]

Defendant is a railroad company incorporated in Delaware with its principal executive offices located in Omaha, Nebraska.  Defendant owns and operates an industrial railroad site known as the "29th and Grove Environmental Site" in Wichita, Kansas (the "Site").  During the 1970s and 1980s, Defendant spilled hazardous chemicals at the Site without remedying the spills. Among the spilled chemicals were volatile organic compounds: trichloroethylene (TCE), 1,1,1-trichloethane, cis-1,2-dichcloroethene, vinyl chloride, chloroform methylene chloride, and 1,4 dioxane.  Several of these chemicals are carcinogenic and capable of contaminating soil and groundwater as well as creating vapors.  Defendant did not reveal the spills to anyone.

In 2003, Defendant learned that the hazardous chemicals had migrated 2.9 miles south of the Site to Murdock Avenue and was several blocks wide.  Attaching a map showing those same dimensions, Plaintiffs refer to this affected area as the "Class Area."  Plaintiffs all reside in the Class Area.  The Class Area remains contaminated.  Defendant has not taken any steps to remedy the situation.

On September 8, 2022, the Kansas Department of Health and Environment ("KDHE") held a community meeting for residents in the Class Area to inform them of the chemical spills and subsequent migration.  This was the first time Plaintiffs and other property owners were made aware of the spills.  News outlets picked up the story, informing the public at large of the spills and hazardous resulting therefrom.  Because of the public's knowledge of carcinogenic chemicals on their properties, Plaintiffs' property values decreased.

---

[1] The facts in this section are taken from Plaintiff's Complaint and are considered true for the purposes of this Order.

Plaintiffs filed suit against Defendant on behalf of themselves and others similarly situated on October 10, 2023.  In total, Plaintiffs assert five claims under Kansas law: (1) negligence; (2) private nuisance; (3) trespass; (4) violation of the Kansas Discharge Statute K.S.A. § 65-6203; and (5) unjust enrichment.  In its present Motion, Defendant seeks dismissal of Plaintiffs' claims primarily based on the relevant statutes of limitation and repose.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7]  If the allegations in the

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8]

### III.   Analysis

Before getting to the meat of the parties' briefs, the Court recognizes that Defendant first argues Plaintiffs fail to allege specific facts to state any claim under Rule 8(a)(2).  Ironically, Defendant's argument on this issue is overgeneralized without any analysis of the requisite elements for any of Plaintiffs' claims.  Such perfunctory arguments may be sufficient when addressing complaints based entirely upon conclusory allegations.[9]  But generally, "the Tenth Circuit has repeatedly held that arguments 'raised in a perfunctory manner . . . are waived.'"[10]

Here, Plaintiffs' allegations identify the location of their properties, the parties responsible for entry of hazardous materials onto their properties, the intentional or reckless acts leading to entry, and damages resulting from that entry.[11]  And yet, in arguing for dismissal, Defendant refuses to perform any substantive analysis of Plaintiffs' factual allegations or the law governing Plaintiffs' claims. Thus, the Court concludes—for the purposes of this Order—that Defendant effectively waives any argument as to whether Plaintiffs allege sufficient facts to state each of their claims under Rule 8(a)(2).  Therefore, the Court denies Defendant's Motion on this ground.

That settled, the Court comes to the heart of Defendant's Motion.  For each of Plaintiffs' claims, Defendant argues Kansas's statutes of limitation and repose prevent Plaintiffs from

---

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] *See, e.g.*, *Spencer v. Millsap & Singer, LLC*, 2021 WL 1564596, at *8 (D. Kan. 2021) (finding that the plaintiffs' complaint failed to state a trespass claim when plaintiffs alleged that unnamed parties had in some unspecified way entered their property at some time during a nine-year period).

[10] *Madison, Inc. v. W. Plains Reg'l Hosp., LLC*, 2018 WL 928822, at *10 (D. Kan. 2018) (quoting *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)).

[11] Defendant's statements in its Motion that Plaintiffs fail to identify their location or any damages are at best a misreading of the Complaint and at worst borders on a material misrepresentation to this Court.

bringing any action related to the spills.  The Court will address Plaintiffs' tort claims (Counts I, II, and III) together before individually assessing Plaintiffs' claims under K.S.A. § 65-6203 (Count IV) and unjust enrichment (Count V).

**A.      Plaintiffs' tort claims—Counts I, II, and III**

First, the Court will address Plaintiffs' tort claims—Counts I, II, and III—which fall under the statute of limitations and repose contained within K.S.A. § 60-513.

Section 60-513(a) details a two-year statute of limitations for trespass and any "action for taking, detaining or injuring personal property, including actions for the specific recovery thereof," i.e., negligence or private nuisance.  However, § 60-513(b) states that tort claims:

> shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

As noted by Defendant, the statute's last phrase operates as a statute of repose, which guarantees tortfeasors' safety from liability if an action commences more than 10 years after the causative event occurred.[12]  Under Kansas law,

> A statute of limitations establishes a maximum time from when an action accrues during which an injured party may file for recourse, and the action may accrue when the injuries manifest themselves. A statute of repose, on the other hand, establishes a maximum time to seek legal relief after a causative event has occurred, even if no discernible injury has yet manifested itself; it may create finality for meritorious suits even when the plaintiff is not responsible for the delay.[13]

---

[12] *See, e.g.*, *Dunn v. Dunn*, 47 Kan. App. 2d 619, 281 P.3d 540, 548 (2012).

[13] *H.B. v. M.J.*, 315 Kan. 310, 508 P.3d 368, 371 (2022) (further citations omitted).

Statutes of limitation and repose serve two separate and distinct purposes: "the statute of limitations eliminates stale claims, and the statute of repose provides immunity for claims."[14]  As evident from § 60-513(b), statutes of repose run not from the time a cause of action accrues but rather from "the time of the act giving rise to the cause of action."  Therefore, statutes of repose may "abolish[] a cause of action even if it has not yet accrued."[15]

Here, Plaintiffs allege that the spills and leaks forming the basis of their claims occurred sometime in the 1970s or 1980s.  Plaintiff also allege that Defendant learned in 2003 that the hazardous materials migrated to cover an area several blocks wide and 2.9 miles south of the Site.  The attached map in the Complaint identifies the Class Area affected as extending roughly 3 miles south of the Site and reaching several blocks in width.  It appears to be identical to the area described by Plaintiffs in alleging Defendant's knowledge of the spill in 2003, thus showing that the chemicals had spread to the Class Area by 2003.  Because Plaintiffs did not initiate this action until October 10, 2023, Defendant claims that Plaintiffs are simply too late to bring any tort claims.

Plaintiffs respond with a hodgepodge of arguments as to why the statute of repose should be tolled or why their causes of actions accrued only once the KDHE revealed the leak to residents at the public meeting on September 8, 2022.  The predominant argument raised by Plaintiffs is the doctrine of fraudulent concealment.  Because Plaintiffs assert this doctrine applies to each of their tort claims, the Court will address it first before turning to the individual claims.

1.    *Fraudulent concealment*

---

[14] *O'Neill v. Dunham*, 41 Kan. App. 2d 540, 203 P.3d 68, 71 (2009).

[15] *Id.*

Plaintiffs first assert the doctrine of fraudulent concealment—or equitable estoppel[16]—as a shield against applying § 60-513(b) to each tort claim.  Under Kansas law, fraudulent concealment may toll both the statute of limitations *and* the statute of repose.[17]  Parties asserting fraudulent concealment must prove:

> Another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed.  The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.[18]

However, it appears that Kansas courts only toll the statute of repose based on fraudulent concealment for claims sounding in fraud.[19]  Furthermore, Kansas courts have held that a duty to speak in the fraudulent concealment context exists only when there is "a fiduciary or confidential relationship."[20]  Without such a relationship, "there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action."[21]  Thus, "fraudulent concealment requires additional, separate, affirmative actions beyond the original act of fraud supporting the claim."[22]

Despite Plaintiffs' arguments to the contrary, it is facially apparent that their tort claims based on Defendant spilling hazardous chemicals do *not* sound in fraud.  Therefore, it is unlikely

---

[16] *Roderick v. XTO Energy, Inc.*, 2016 WL 4039641, at *13 (D. Kan. 2016) ("[T]he difference between fraudulent concealment and equitable estoppel is merely semantic.").

[17] *Robinson v. Shah*, 23 Kan. App. 2d 812, 936 P.2d 784, 794 (1997).

[18] *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 157 P.3d 1109, 1120 (2007) (brackets omitted).

[19] *See Karlin v. Paul Revere Life Ins. Co.*, 742 F. Supp. 2d 1253, 1268 (D. Kan. 2010) (discussing *Robinson*); *see also Dunn*, 281 P.3d at 642 (2012) (acknowledging "[w]hether the doctrine of equitable estoppel is even available to toll a statute of repose is a debatable issue in Kansas").

[20] *Doe v. Popravak*, 55 Kan. App. 2d 1, 421 P.3d 760, 769 (2017).

[21] *Id.*

[22] *Id*; *see also Friends Univ. v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936, 941 (1980) ("Although mere silence or failure to disclose may not in itself constitute fraudulent concealment, any statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent." (further citation omitted).

that Kansas courts would allow the doctrine of fraudulent concealment to apply in this case.  Even if Plaintiffs had pled a fraud claim, there are no allegations showing a fiduciary or confidential relationship between Plaintiffs and Defendant.  Without such a relationship, Plaintiffs must show that Defendant affirmatively misrepresented or concealed the spill—yet another allegation absent from Plaintiffs' Complaint.  Plaintiffs merely alleged that Defendant "consistently failed to reveal the contamination to the community."[23]  In the absence of a duty to speak based on a confidential or fiduciary relationship, Defendant's silence cannot constitute fraudulent concealment.  Because fraudulent concealment does not toll § 60-513(b) on Plaintiffs' tort claims, the Court must address them each individually.

> ### 2.    *Count I—Negligence*

Plaintiffs' Count I alleges negligence.  Plaintiffs claim that Defendant owed them a duty of care "in using, handling, storing, disposing, releasing, and discharging site contaminants, including carcinogenic materials, that it knew, or should have known, could result in damage and injury to Plaintiffs."  However, Defendant used, handled, stored, disposed, released, and discharged the alleged substances in the 1970s or 1980s.  Therefore, the "acts" of which Plaintiffs complain occurred well over 10 years ago, triggering the statute of repose in this case.  However, Plaintiffs attempt to dodge the statute of repose by arguing that (1) their cause of action did not accrue until recently, and (2) their claim for negligent remediation remains ongoing.

As to their first argument, Plaintiffs claim that they did not suffer damages—specifically, lowered property values—until the spill was revealed in 2022.  Because damages are a necessary

---

[23] In their Response, Plaintiffs claim that in 2006 Defendant affirmatively represented to KDHE that there was no risk of vapor intrusion from the spills.  However, this fact does not appear in Plaintiffs' Complaint and the Court will not consider it here.  Furthermore, it is unclear whether Defendant's affirmative misrepresentation to a third party would have any legal significance on Plaintiffs' ability to plead fraudulent concealment.

element of a negligence claim, Plaintiffs contend that their claims were not actionable until September 8, 2022, at which point the timer to bring their claims began. However, Plaintiffs confuse the statute of limitations, which runs from the date of accrual, with the statute of repose, which examines Defendant's last *act*. Therefore, the date upon which Plaintiffs experienced damages is irrelevant to whether the statute of repose has already run. The Court notes the multi-decadal interval between Defendant's last act giving rise to Plaintiffs' cause of action and Plaintiffs filing this case in 2023. Accordingly, Plaintiffs are barred from asserting any negligence claim based on Defendant's acts in spilling the carcinogenic chemicals.

Second, Plaintiffs argue that Defendant has a continuing duty to remediate the chemical spill, which it has neglected up to and including the present date. Plaintiffs compare the present case to *Kipp v. City of Gypsum*.[24] In *Kipp*, the Kansas Court of Appeals held that the defendant's "alleged negligence in operating and maintaining the flood control project" constituted a new a separate act from installing the flood control project decades before.[25] There, the city had allowed farmers to till over the flood dike, comprising the dike's integrity and leaving the plaintiffs vulnerable to flooding. Because the city had an ongoing duty to maintain the flood dike, the plaintiffs were able to timely bring a negligence claim once they experienced damages from flooding.[26] However, the court expressly barred any claim based on negligent installation of the dike.[27]

Unlike the municipal defendant in *Kipp*, the only continuing "duty" Plaintiffs ascribe to Defendant is a duty to remediate any harms caused by the spill. Essentially, Plaintiffs would create

---

[24] 293 P.3d 815 (table), 2013 WL 452151 (Kan. Ct. App. 2013).

[25] *Id.* at *13.

[26] *Id.*

[27] *Id.* at *11.

a "duty" upon the part of any tortfeasor to remedy the harm they have caused.  And failure to fulfill that duty would constitute a new "act" which could subject the tortfeasor to liability.  Creating such a duty would effectively erase all statutes of repose because defendants would be liable for acts until the they have remedied the harm resulting from that act.  This would eradicate any "immunity" from past acts, undermining the entire purpose for statutes of repose.

Plaintiffs' request is out of touch with the purposes of statutes of repose and without support in Kansas law.  In fact, Plaintiffs do not cite a single case where a court applying Kansas law examined and approved a "negligent remediation" theory of recovery.   To be sure, Plaintiffs cite *City of Neodesha v. BP Corp. North America*,[28] where the court briefly mentioned a negligent remediation claim.  However, the defendant in that case undertook professional remediation services, and thus had a duty to carry out those services with reasonable care.[29]  It was the failure to exercise reasonable care while performing remediation services that led to a "negligent remediation" claim.  Therefore, the facts in *City of Neodesha* sharply contrast with the present case.  Here, Plaintiffs fail to allege that Defendant voluntarily undertook remedial services thereby creating a duty to exercise reasonable care in doing so. Rather, Plaintiffs only allege that Defendant has wholly failed to remediate the situation.

Kansas courts regularly enforces statutes of repose when the defendant has not remedied any harms caused by their initial act.[30]  For example, in a water contamination case, this Court acknowledged that "applying Kan. Stat. Ann. § 60-513(b) to Plaintiffs' claims would mean

---

[28] 50 Kan. App. 2d 731, 334 P.3d 830, 845 (2014).

[29] *See* 334 P.3d at 837–38.

[30] *See, e.g.*, *O'Neill*, 203 P.3d at 72 (collecting and discussing cases where statutes of repose prevented lawsuits based on unremedied harms from tortfeasors' prior acts).

Plaintiffs' cause of action was extinguished . . . seventeen years before any of the [Plaintiffs] learned of the contamination of their groundwater."[31]

In sum, Plaintiffs' creative attempt to avoid the statute of repose by pleading negligent remediation fails. The Court declines to create a duty on the part of all defendants everywhere to remedy any harm they may cause. Therefore, the Court grants Defendant's Motion as to Plaintiffs' negligence claim.

### 3.    Count II—Private Nuisance

Next, Defendant contends that Plaintiffs' private nuisance claim is untimely. Plaintiffs allege that their properties have been permanently damaged by contamination from Defendant's spills.[32] Because Defendant's act in spilling TCE and other hazardous materials occurred decades ago, K.S.A. § 60--513(b) bars Plaintiffs from asserting a private nuisance action for a permanent nuisance.[33]

Plaintiffs appear to acknowledge the unavailability of a private nuisance action based on permanent damages. However, they attempt to avoid the statute of repose by characterizing the chemical spill as a "continuing nuisance" with "temporary damages" instead of a permanent nuisance. Plaintiffs' argument stands in sharp contrast to their Complaint, where they consistently

---

[31] *Mechler v. United States*, 2013 WL 3989640 (D. Kan. 2013), *abrogated on other grounds by CTS Corp. v. Waldburger*, 573 U.S. 1 (2014).

[32] *See Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 15 P.3d 338, 343–44 (2000) (distinguishing between permanent damages and temporary damages for purposes of statute of limitations); *see also Kipp*, 2013 WL 452151, at *3 ("Here, the applicable statute of limitations or statute of repose, depends on whether the prior damages to the Kipps' property were permanent or temporary.").

[33] *See Dougan*, 15 P.3d at 344 ("If an injury is permanent in character, all the damages caused thereby, whether past, present, or prospective, must be recovered in a single action. If a plaintiff suffers permanent damages, the cause of action begins to run at the time of the damage; therefore, the plaintiff must bring his or her tort claim within 2 years after the injury is reasonably ascertainable."); *see also Kipp*, 2013 WL 452151, at *3 (barring action for permanent private nuisance based on statute of repose).

maintain that their "properties have been permanently contaminated"[34] and the "permanent private nuisance"[35] created by the spill "is permanent and not reasonably abatable."[36]  Plaintiffs briefly argue that the Court should disregard their Complaint, citing *Miller v. Cudahy Co.*[37]  In *Miller*, the Tenth Circuit held that the characterization of a nuisance claim as "temporary" in the pretrial order superseded the complaint's language describing the claim as "permanent."[38]  This example hardly support Plaintiffs' position because pretrial orders *always* supersede the pleadings.[39]

Here, there is no pretrial order.  All the Court has before it is Plaintiffs' Complaint as drafted by Plaintiffs' counsel.  Given that Plaintiffs willingly chose which claims to assert, the Court is inclined to accept their own characterization of their claims rather than the post hoc reimagining attempt presented in their Response.  Therefore, the Court grants Defendant's Motion to Dismiss Plaintiff's permanent private nuisance claim.

Unsurprisingly, Plaintiffs seek leave to amend their Complaint to add a claim for temporary nuisance.  In full, their argument for amendment is as follows: "If Plaintiffs need to conform their nuisance claim pleadings with Kansas law by amending the complaint, Plaintiffs seek leave to do so."

The Tenth Circuit has stated on numerous occasions that a "bare request in response to a motion to dismiss that leave be given to amend the complaint is insufficient."[40]  It has soundly

---

[34] Pls.' Compl. at ¶ 79.

[35] *Id.* at ¶ 84.

[36] *Id.* at ¶ 86.

[37] 858 F.2d 1449 (10th Cir. 1988).

[38] *Id.* at 1454 n.4.

[39] *See VanHorn v. U.S. Postal Serv.*, 2024 WL 245664, at *2 (D. Kan. 2024); *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation.") (further citations omitted).

[40] *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 52 (10th Cir. 2021) (cleaned up) (further citations omitted).

rejected granting leave to amend where a plaintiff "simply made perfunctory, conditional requests in his responses to the motions to dismiss that they be allowed to amend if the court found his allegations deficient."  Moreover, under this Court's local rules, a party filing a motion to amend must:

> (1) set forth a concise statement of the amendment or leave sought;
> (2) attach the proposed pleading or other document; and
> (3) in the case of a proposed amended pleading, a non-pro se filer must also attach a redlined version of the proposed amendment that shows all proposed changes to the pleading; and
> (4) comply with the other requirements of D. Kan. Rule 7.1.[41]

Plaintiffs have failed to comply with this Court's rules governing amendment of the pleadings.  They offer nothing in support of their request but perfunctory, conditional requests, which are wholly insufficient under Tenth Circuit precedent.  They likewise fail to attach the proposed pleading, much less a redlined version showing the proposed changes.  Therefore, the Court denies Plaintiffs' requested leave to amend.  Should Plaintiffs later seek to amend their Complaint to add a temporary nuisance claim by following this Court's rules and the applicable law, they will have to show why amendment would not be futile under K.S.A. § 60-513(b).

### 4.      Count III—Trespass

Plaintiffs' Count III attempts to state a claim for trespass.  A plaintiff alleging trespass under Kansas law "must only show that the defendant was intentionally on any part of the plaintiff's land."[42]  Relevant here, "the doing of an act which will almost certainly result in the

---

[41] D. Kan. R. 15.1(a).

[42] *Muhl v. Bohi*, 37 Kan. App. 2d 225, 152 P.3d 93, 98 (2007).

entry of foreign matter upon another's land . . . suffices for an intentional trespass to land, regardless of the lack of an intent to harm."[43]

Here, Plaintiffs claim that the entry of TCE and other chemicals from Defendant's spill constitutes trespass under Kansas law.  But once again, the act underlying the entry of these chemicals occurred at best over 20 years ago.

In their attempt to evade the statute of repose, Plaintiffs rely heavily on the Kansas Supreme Court's decision in *Nida v. American Rock Crusher Co.*[44] to show that their trespass claim only recently accrued.  In *Nida*, a landowner's surface sank due to subsurface mining that occurred 30 years beforehand.[45]  The defendant, a mining company, claimed that K.S.A. § 60-513(b) prevented the plaintiffs from bringing a cause of action because 30 years had passed since the subsurface mining had occurred.[46]

Ultimately, the court concluded that the "act" giving rise to the landowner's trespass claim was "the subsidence of the surface and not the mining operations."[47]  This is because the mining itself was perfectly lawful and did not constitute a trespass.[48]  Rather, the trespass only occurred once the surface land fell.[49]  The court reasoned:

> In a trespass action, the intrusion and the interference and the occurrence of damage are concurrent.  The act committed by the defendant may have taken place much earlier, but there was no trespass until the surface was affected.

---

[43] *United Proteins, Inc. v. Farmland Indus., Inc.*, 259 Kan. 725, 729, 915 P.2d 80 (1996) (citing Am. Jur. 2d, Trespass § 29).

[44] 253 Kan. 230, 855 P.2d 81 (1993).

[45] *Nida*, 855 P.2d at 81.

[46] *Id.* at 85.

[47] *Id.* at 87.

[48] *Id.*

[49] *Id.*

The theory of a negligence action differs in that the wrongful act is the act of the defendant.  Once it takes place the negligence has occurred, even though the harmful consequence may not be manifest until later.

Although a negligence cause of action usually runs from an act of a defendant, a trespass action need not, and often would not, run from an act of defendant.  There is no trespass until the entry is accomplished and the damage occurs (or has begun to occur, as in a case of continuing trespass).  The trespass counterpart of the negligence "wrongful act" is the entry and the damage.  In the present case, the entry was accomplished and the damage occurred when the surface fell.[50]

Relying largely on the quoted language above, Plaintiffs argue that *Nida* supports a finding that trespass does not occur until a landowner suffers damage to her property.  Plaintiffs further contend that the TCE contamination did not manifest damages until the contamination was publicly disclosed, thereby lowering property values in the Class Area.  And because Plaintiffs were not "damaged" by the spill until their property values were lowered, they argue the trespass did not occur until the public meeting in September 2023.

In assessing Plaintiffs' argument, the Court recognizes that *Nida* is a perplexing and unique case.  It is perplexing because the Kansas Supreme Court's use of the term "runs" relates to the cause of action's accrual.  As stated elsewhere by Kansas and federal courts, the time at which a cause of action accrues is irrelevant to a defendant's immunity under a statute of repose.  That is, statutes of repose may "abolish[] a cause of action even if it has not yet accrued."[51]

Furthermore, the court's statement that negligence claims usually run from the time of a defendant's act is an unhelpful comparison.  Damages comprise a necessary element of any negligence claim.  Without having suffered damages, a plaintiff cannot bring a negligence claim regardless of when the defendant's "wrongful act" takes place.  Of course, this brings the Court

---

[50] *Id.* at 86–87.

[51] *O'Neill*, 203 P.3d at 71.

back to the entire point of statutes of repose, which is granting defendants immunity from liability *regardless of when the cause of action accrues*.

All perplexities aside, the Court recognizes that *Nida* is a unique case dealing with a unique situation—a landowner's "absolute right to subjacent support."[52]  The need for an "act" other than the defendant's mining becomes obvious when one realizes that the mining in *Nida* was itself lawful and not an act capable of giving rise to a trespass claim.  The landowner's absolute right to subjacent support was invaded only when the surface fell.  Therefore, there must be some "act" other than the lawful act of mining for the landowner to have any viable action to protect his "absolute right."  Recognizing the need to define a different act to protect the landowners' right, the Kansas Supreme Court decided to define that "act" as "the act of allowing the owner's land to fall."[53]

Because of *Nida*'s unique facts and perplexing legal reasoning, the Court is disinclined to apply its reasoning outside the context of trespass via land subsidence.  Moreover, to the extent *Nida* applies at all, it supports Defendant's position.  Unlike the lawful act of mining in *Nida*, here, Plaintiffs argue that Defendant's act of allowing carcinogenic chemicals to enter their property was unlawful.  Plaintiffs liken the chemicals' entrance onto their property to the "surface fall" in *Nida*, arguing that this constitutes an "act" under § 60-513(b).  This intrusive act—and the accompanying injury to Plaintiffs' property rights—is sufficient to create a claim for trespass, regardless of whether Plaintiffs experienced immediate damages.

Moreover, many cases applying Kansas law have held that K.S.A. § 60-513(b) bars trespass actions when the defendant's last act leading to the trespass occurred more than 10 years

---

[52] *Nida*, 855 P.2d at 87.

[53] *Id.* at 83 (further citations and quotations omitted).

before, regardless of when the injury was discovered.[54]   For instance, in *Pagel v. Burlington Northern Sante Fe Railway Co.*,[55] the plaintiff alleged trespass because a defendant discarded batteries on the plaintiff's property 25 years earlier.  The plaintiff explicitly argued that for trespass claims "the limitation period is triggered when the injury is ascertainable, not on the date of the wrongful act."[56]  Disagreeing, this Court recognized that "the legislature intended . . . § 60-513(b) to be a statute of repose, with ten years from the occurrence of the act giving rise to the cause of action as the absolute limit for filing actions."[57]  Because the defendant deposited the batteries 25 years earlier, § 60-513(b) barred the plaintiff's trespass claim even though the plaintiff had only recently discovered the intrusion.

It is nonsensical to claim that the last act leading to Plaintiffs' trespass claim occurred when the KHCE informing the community of the TCE contamination, thereby lowering property values. Instead, the last act occurred in 2003 when Defendants allowed the TCE to infest Plaintiffs' property.  Therefore, § 60-513(b) grants Defendant immunity from Plaintiffs' trespass claim which accrued 20 years ago.  Accordingly, the Court grants Defendant's Motion as to Count III.

**B.      Count IV—Violation of K.S.A. § 65-6203**

In Count IV, Plaintiffs' claim that Defendant violated K.S.A. § 65-6203.  As Kansas's anti-discharge statute, § 65-6203 requires anyone "responsible for an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state" to compensate the property owner.[58]  Unlike Plaintiffs' tort claims, "[a]n action upon a liability created by a statute other than

---

[54] *See, e.g.*, *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 378 P.3d 1090, 1094–96 (2016) (barring action for trespass when plaintiff did not discover subsurface mining until after statute of repose had run).

[55] 316 F. Supp. 2d 984 (D. Kan. 2004).

[56] *Id.* at 988.

[57] *Id.*

[58] K.S.A. § 65-6203(a).

a penalty or forfeiture" is subject to a three-year statute of limitations under K.S.A. § 60-512(2). And in contrast to § 60-513, § 60-512 "does not contain a statute of repose,"[59] nor does it contain a "discovery rule."[60]  Therefore, under the plain language of the statute, Plaintiffs' Count IV would have expired three years after Defendant spilled the chemicals.

Plaintiffs, however, claim that federal law preempts K.S.A. § 60-512(2) in this case.  In 1980, the United States Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), codified as 42 U.S.C. § 9658.  CERCLA states:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.[61]

CERCLA defines the "federally required commencement date" as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."[62]  In essence, CERCLA adopts a "discovery rule" for hazardous spill claims.[63]  Although CERCLA does not preempt statutes of repose,[64] the Supreme Court has upheld its ability to preempt state statutes of limitations.[65]

---

[59] *Mechler v. United States*, 2013 WL 3989640, at *6 (D. Kan. Aug. 2, 2013).

[60] *See* K.S.A. § 60-512.

[61] 42 U.S.C. § 9658(a)(1).

[62] *Id.* § 9658(b)(4).

[63] *See CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014).

[64] *Id.* at 18.

[65] *Id.* at 3.

To avoid federal preemption, Defendant argues that CERCLA only applies to state-law tort claims.  However, Defendant fails to cite a single case to support that position.  The only law Defendant references for its argument is the Supreme Court's decision in *CTS Corp. v. Waldburger*.[66] There, the Supreme Court held that CERCLA "contains a provision that by its terms pre-empts statutes of limitations applicable to state-law tort actions in certain circumstances."[67] But the Supreme Court did not express or imply that CERCLA applied *solely* to tort claims.  Under its plain terms, CERCLA preempts statutes of limitations for "any action brought under State law for personal injury, or property damages."[68]  Necessarily, this definition *includes* tort claims, which is exactly what the Supreme Court said.  What the Supreme Court did not say is that CERCLA applies *only* to tort claims.

Plaintiffs' claim under K.S.A. § 65-6203 relies on their diminished property values.  As such, Plaintiffs assert a state law claim for property damages.  Therefore, Plaintiffs' claims fit snugly within the bounds of CERCLA's coverage.  Accordingly, CERCLA's discovery rule displaces K.S.A. § 60-512(2).  The question, therefore, becomes whether the facts as pled support the reasonable inference that Plaintiffs only knew or reasonably should have known about the spills within the last three years.

There are no facts alleged in the Complaint showing that Plaintiffs knew or should have reasonably known that Defendant spilled carcinogenic chemicals which migrated to their properties.  However, Defendant in its Reply attaches a Community Relation Plan (the "Plan") drafted by the KDHE, claiming that the Court may take judicial notice of the Plan as a public

---

[66] 573 U.S. 1 (2014).

[67] *Id.* at 3.

[68] 42 U.S.C. § 9658(a)(1).

record.  The Plan states that KDHE held a community meeting on March 1, 2003.  Although somewhat unclear from the face of the document, it appears that KHDE informed residents that the TCE spills affected the Class Area's neighborhoods.  From this meeting, Defendant argues that Plaintiffs should have known about the TCE in 2003, meaning that the statute of limitations has long passed even under CERCLA's discovery rule.

Although a court may take judicial notice of public records without converting a motion to dismiss into one for summary judgment, "the documents can 'only be considered to show their contents, not to prove the truth of the matters asserted therein.'"[69]  Here, Defendant asks the Court to do the impermissible—to rely upon the Plan to show that KDHE informed persons in the Class Area about the spill and to infer that Plaintiffs knew or reasonably should have known about the spill in 2003.  Because the Court cannot take judicial notice of the Plan for the purposes requested by Defendant, the Court is left with the facts alleged in the Complaint.  Considering solely those facts, the Court concludes that under CERCLA's discovery rule, the statute of limitations began to run on September 8, 2023, when the community meeting occurred.  Therefore, Plaintiffs' claim under K.S.A. § 65-6203 is timely.  Accordingly, the Court denies Defendant's Motion as to Count IV.

### C.    Count V—Unjust Enrichment

Plaintiffs' final count alleges unjust enrichment.  Under Kansas law, unjust enrichment is characterized as an implied contract claim subject to the three-year statute of limitations contained within K.S.A. § 60-512(1).  Alleging unjust enrichment requires a plaintiff to show: "(1) a benefit conferred; (2) an appreciation or knowledge of the benefit by the one receiving the benefit; and (3)

---

[69] *Coates v. Reichert*, 2023 WL 3072672, at *4 (D. Kan. 2023) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006)).

the acceptance or retention of the benefit under such circumstances as to make it inequitable to retain the benefit without payment of its value."[70]

Plaintiffs' theory of unjust enrichment is that Defendant benefited from disposing of hazardous chemicals at the Site by saving the cost required by proper disposal. Because Defendants knew of the TCE contamination throughout the Class Area and received its "benefit" therefrom by 2003, Plaintiffs' unjust enrichment would have accrued by then. Therefore, the three-year statute of limitations has long expired.

Once again, Plaintiffs assert the doctrine of fraudulent concealment in an attempt the statute of limitations. But the Court has already determined that fraudulent concealment is unavailable to Plaintiffs based on the nature of their claims and the facts of this case.[71] The same analysis applies to Plaintiffs' unjust enrichment claim, bolstered by the fact that Plaintiffs fail to cite a single Kansas case where the discovery rule applied to an unjust enrichment claim.[72] Because the statute of limitations on Plaintiffs' unjust enrichment claim has long passed, the Court grants Defendant's Motion as to Count V.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 10) is **GRANTED** in part and **DENIED** in part.

---

[70] *In re Estate of Ramsey*, 465 P.3d 1157 (Kan. Ct. App. 2020) (quoting *In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204 (2007)).

[71] It is further worth noting that as unjust enrichment is not a claim for personal or property damage, CERCLA does not apply. Therefore, Plaintiffs cannot take advantage of the discovery rule contained therein.

[72] *See, e.g.*, *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 405 F. Supp. 3d 981 (D. Kan. 2019) (summarizing caselaw finding a lack of support in Kansas for applying discovery rule to unjust enrichment claim). In *Vance v. Vance*, 2023 WL 5929461, at *23 (D. Kan. 2023), this Court stated: "It is unsettled in Kansas whether the discovery rule applies to an unjust enrichment claim." Plaintiffs quote this statement to imply that Kansas courts have discussed without conclusively deciding the issue. That is not the case and misreads *Vance*. The Kansas courts have simply not discussed the matter.

**IT IS FURTHER ORDERED** that Counts I, II, III, and V are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated this 12th day of April, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE