## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FAYE BLACK and JEANNINE TOLSON,           )
*individually and on behalf of all others*     )
*similarly situated,*                                    )
                                        Plaintiffs,     )
                                                             )
v.                                                           )      Case No. 23-1218-EFM-ADM
                                                             )
UNION PACIFIC RAILROAD COMPANY,     )
                                                             )
                                        Defendant.     )

### MEMORANDUM AND ORDER
#### and
### REPORT AND RECOMMENDATION

Plaintiffs Faye Black and Jeannine Tolson (together, "plaintiffs") filed this putative class action for injunctive relief and damages allegedly caused by defendant Union Pacific Railroad Company's ("Union Pacific") release of toxic chemicals into the air, water, and soil, which chemicals migrated and continue to migrate onto plaintiffs' property. The matter is before the court on Plaintiffs' Motion for Leave to File an Amended Complaint. (ECF 48.) Plaintiff filed the motion on the heels of presiding U.S. District Judge Eric F. Melgren's April 12, 2024 Memorandum and Order dismissing four out of five of their originally pled claims. *Black v. Union Pac. R.R. Co.*, No. 23-cv-1218-EFM-ADM, 2024 WL 1604620 (D. Kan. Apr. 12, 2024). They seek to reassert the dismissed claims as supported by newly proposed factual allegations, as well as to add wholly new claims. Union Pacific opposes the amendment as both futile and prejudicial to Union Pacific, arguing plaintiffs should not be permitted to reassert claims previously briefed for dismissal and ultimately dismissed with prejudice. For the reasons explained below, the court grants plaintiffs' motion to the extent it seeks to assert new claims for negligent remediation, continuing nuisance, continuing trespass, and fraudulent concealment, as well as factual allegations related to these new claims. But the court recommends that Judge Melgren deny as

futile the portion of plaintiffs' motion seeking to re-assert their previously pled claims for negligent storage/spill of chemicals, permanent nuisance, permanent trespass, and unjust enrichment.[1]

## I.    BACKGROUND[2]

Union Pacific owns and operates an industrial railroad site in Wichita, Kansas ("the Site"). In the 1970s and 1980s, Union Pacific spilled toxic and hazardous chemicals at the Site that contaminated the soil and groundwater.  For decades, Union Pacific did not tell anyone about the spills and contamination.  But in 2002, Union Pacific entered into a consent order with the Kansas Department of Health and Environment ("KDHE") to investigate the contamination and potential remediation options.  Union Pacific retained and contracted with The Forrester Group to provide these environmental services.

In 2003, Union Pacific learned that the contaminants had migrated 2.9 miles south of the Site and affected an area several blocks wide in northeast Wichita.  Plaintiffs refer to this area as the "Class Area," and it is where they reside.  Union Pacific did not inform plaintiffs, other residents, or the public of the contaminants and their releasing and migrating from the Site.  Despite the migration, Union Pacific informed KDHE that there was no risk of vapor intrusion in the Class

---

[1] The court issues this portion of its decision by way of a report and recommendation because, to the extent the court denies a motion to amend solely on grounds of futility, the ruling is considered dispositive. *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim, a question this court reviews de novo."); *see, e.g.*, *Gardiner v. McBryde*, No. 15-3151-DDC-JPO, 2018 WL 6991101, at *1 n.3 (D. Kan. Oct. 5, 2018) (recommending the assigned district judge deny motion to amend as futile), *report and recommendation adopted*, No. 15-3151-DDC-JPO, 2018 WL 6715827 (D. Kan. Dec. 21, 2018); *Jackson v. Kan. Cnty. Ass'n Multiline Pool*, No. 03-4181-JAR, 2005 WL 3307215, at *1 (D. Kan. Dec. 6, 2005) (reviewing futility-based denial of motion to amend under de novo standard); *McCormick v. City of Lawrence, Kan.*, No. 02-2135-JWL, 2003 WL 158704, at *1 (D. Kan. Jan. 17, 2003) (same).

[2] The facts in this section are taken from plaintiffs' proposed amended complaint and are considered true for the purposes of this Memorandum and Order/Report and Recommendation.

Area.

In 2010 and 2011, Union Pacific excavated contaminated shallow soil at the Site, but not all of the impacted soil.  Around that same time, Union Pacific hired Arcadis as the primary consultant on remediating the contamination.  Union Pacific and Arcadis conducted investigations and feasibility studies of how to remediate the chemical plume, but did not begin meaningful remediation efforts until 2023.

On September 8, 2022, KDHE held a community meeting for residents in the Class Area to inform them of the chemical spills and subsequent migration.  KDHE warned plaintiffs of the human health risks of potential exposure to the contaminants through well water and vapor intrusions in their homes.  This was the first time that plaintiffs and other property owners were made aware of the contamination and resulting health threats.  News outlets picked up the story, informing the public at large of the spills and hazards resulting therefrom.  Because of the public's knowledge of the chemicals on their properties, plaintiffs' property values decreased.

Today, the Site remains contaminated, and chemicals from the Site continue to migrate to the Class Area, presenting continuing health risks to plaintiffs and diminution of their property values.  On October 10, 2023, plaintiffs filed this purported class action on behalf of themselves and other residents of the Class Area.  Plaintiffs' complaint asserted five claims under Kansas law: (1) negligence; (2) nuisance; (3) trespass; (4) violation of the Kansas Discharge Statute, KAN. STAT. ANN § 65-6203; and (5) unjust enrichment.  (ECF 1.)  Union Pacific moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), arguing the relevant statutes of limitation and repose barred the claims.  (ECF 10.)  In response, plaintiffs asserted that "Defendant's motion should be denied and, alternatively, leave to amend granted."  (ECF 18, at 25.)  Plaintiffs argued, "[i]f the Court is inclined to grant Defendant's motion in whole or in part, Plaintiffs should be

given leave to amend." (*Id.*)  Plaintiffs stated that they could "add facts to bolster or clarify their claims, if necessary." (*Id.*)

In a Memorandum and Order issued April 12, 2024, Judge Melgren ruled that, at least as pled, the statutes of limitation and repose had run as to each of plaintiffs' claims, other than their claim for violation of the Kansas Discharge Statute.  Judge Melgren dismissed—with prejudice—plaintiffs' claims for negligence, nuisance, trespass, and unjust enrichment.  *Black*, 2024 WL 1604620, at *11.  The court acknowledged plaintiffs' request for leave to amend their complaint—at least as it applied to plaintiffs' nuisance claim—but denied the request as perfunctory, noting that plaintiffs had not offered meaningful support for their request or submitted a proposed amended complaint.  *Id.* at *7.  Judge Melgren explicitly left open the door for plaintiffs to seek leave to file an amended complaint to add a new claim (for temporary nuisance), but did not directly address whether plaintiffs could seek to re-assert their dismissed claims under amended factual allegations.  *Id.*  Plaintiffs did not seek reconsideration of any portion of the Memorandum and Order.

On May 9, the court issued a scheduling order to govern the class-certification stage of the case.  The scheduling order set a deadline of June 7 for motions to amend pleadings.  (ECF 36.)  On that date, plaintiffs filed the current motion to amend the complaint.  (ECF 49.)  By way of this motion, plaintiffs seek leave to file an amended complaint that asserts eight counts: (Count I) Negligence based on both the original spill as originally pled, as well as a new theory concerning remediation efforts; (Count II) Permanent Nuisance, which was previously titled just "Nuisance"; (Count III) Continuing Nuisance, a new theory; (Count IV) Permanent Trespass, which was previously titled just "Trespass"; (Count V) Continuing Trespass, a new theory; (Count VI) Fraudulent Concealment, a new theory; (Count VII) Kansas Discharge Statute; and (Count VIII)

Unjust Enrichment.  (ECF 49-1.)  Union Pacific opposes the motion, asserting the court should deny it "(1) on the basis of futility because the Court has already dismissed these claims; and (2) because allowing Plaintiffs to reassert their dismissed claims would prejudice Union Pacific." (ECF 50, at 1.)

## II.    LEGAL STANDARDS

When, as here, a party may no longer amend its pleading as a matter of course under Federal Rule of Civil Procedure 15(a)(1), amendment is allowed "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).  "The court should freely give leave [to amend pleadings] when justice so requires." *Id.*[3]  In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).  The court may only deny leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Practically speaking,

---

[3] The court declines Union Pacific's request to apply the "reverse presumption" standard recognized in *The Tool Box, Inc. v. Ogden City Corp.* as applicable in cases "where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed." 419 F.3d 1084, 1087 (10th Cir. 2005) ("Moreover, even though Rule 15(a) states that 'leave [to amend] shall be freely given when justice so requires,' this presumption is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed.").  In this case, judgment has not been entered and the case has not been dismissed. But even if the presumption were reversed for plaintiffs' previously pled claims, the court would find that plaintiffs have demonstrated that amendment is warranted to assert their wholly new claims.

the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted.  *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (in the absence of such a showing, amendment should be allowed).  As mentioned above, Union Pacific opposes amendment on the grounds of futility and undue prejudice.  Whether to grant leave to amend lies within the district court's discretion.  *Warnick*, 895 F.3d at 755.

## III.    FUTILITY

Union Pacific first opposes plaintiffs' proposed amendments as futile.   "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).   In this context, the court considers whether the amended complaint could withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.  *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases).  To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In analyzing whether dismissal is appropriate, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

### A.    Re-Assertion of Dismissed Claims

Before addressing the proposed claims individually, Union Pacific makes a broader legal argument that plaintiffs may not now re-assert claims that the court previously dismissed.  Union Pacific asserts that the "proper procedure for seeking leave to reassert a dismissed claim is to file a motion for reconsideration of the dismissal order."  (ECF 50, at 2.)  Union Pacific relies on *Walker v. Corizon Health, Inc.*, No. 17-2601-DDC-KGG, 2020 WL 2473706, at *6 (D. Kan. May

13, 2020), as support for its position that a plaintiff may not re-assert a dismissed claim.  The court in *Walker* acknowledged, however, that it "found no authority from the Tenth Circuit on this narrow issue."  *Id.*  Rather than conduct a legal analysis of the question, the *Walker* court noted that the plaintiffs therein never submitted a reply addressing this argument and declined to "make arguments for plaintiffs where they've chosen not to submit a Reply."  *Id.* at 7.  Only then, with no authority or argument to the contrary, did the court in *Walker* agree with the defendant's argument that the plaintiff could not reassert the dismissed claim.  *Id.*  Similarly, the two cases Union Pacific cites in string citations for support do not directly address this issue.  *See Lowery v. Flynn*, No. 20-3278-TC-ADM, 2021 WL 3023879, at *1 n.1 (D. Kan. May 10, 2021) (declining in a footnote to consider a request to re-add a defendant to the case because the request was made in a response to a show-cause order, not by way of separate motion); *Horocofsky v. City of Lawrence*, No. 20-2529-EFM, 2022 WL 2802316, at *4 (D. Kan. July 18, 2022) (ruling motion to amend on its merits, but, in considering request for attorney fees, noting simply that the defendant "argues (correctly) that proper procedure called for Plaintiff to first obtain reconsideration before seeking leave to amend").

The court does not disagree with Union Pacific that plaintiffs could have sought reconsideration of Judge Melgren's Memorandum and Order dismissing plaintiffs' claims for negligent storage, nuisance, trespass, and unjust enrichment, and that doing so probably would have been a more efficient approach.  However, perhaps because plaintiffs requested leave to amend in their response to the motion to dismiss, Judge Melgren appears to have left the door open for plaintiffs to seek leave to file an amended complaint alleging facts that more adequately support

their positions.[4] *See Black*, 2024 WL 1604620, at *7. Certainly, Judge Melgren's dismissal order did not expressly state that granting leave to amend would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("[T]he district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint."). Thus, the court finds it unlikely that plaintiffs are completely barred from filing their motion for leave to amend to, in part, re-assert dismissed claims. *See* 27A FED. PROC., L. ED. § 62:284 ("Unless the court's dismissal order expressly states or clearly indicates the court's intention to dismiss the entire action, the plaintiff may seek leave to amend under Fed. R. Civ. P. 15 even though the complaint has been dismissed." (internal citations omitted)); *Haye v. Collection Pros., Inc.,* No. 20-CV-153-NDF, 2021 WL 2176478, at *10 (D. Wyo. Jan. 22, 2021) (dismissing complaint with prejudice but granting leave to amend). *See also Flinn v. C Pepper Logistics LLC*, No. 22-2215-JAR-KGG, 2021 WL 97159, at *3 (D. Kan. Jan. 11, 2021) ("To be sure, it would have been more efficient for Flinn's motion for leave to amend to accompany his opposition to the motion to dismiss . . . [but] nothing in the federal rules prohibits a party from moving for leave to amend after a dispositive motion is briefed."). In the end, however, the procedural question is academic and need not be definitively decided. This is because the court determines below that, as a substantive matter, it would be futile to grant plaintiffs leave to reassert their previously pled and dismissed claims for negligent storage,[5] permanent nuisance, permanent trespass, and unjust enrichment.

---

[4] This further distinguishes this case from *Horocofsky*, where the plaintiff did not request leave to amend her complaint in response to a motion to dismiss. 2022 WL 2802316, at *3-*4.

[5] The court does permit plaintiffs to again plead a negligence claim, but it is for negligent remediation of the spill, not for negligence based on the spill itself, as pled in the original complaint.

The court further notes that it applies the law of the case doctrine.  "When a court enunciates a rule of law in the course of a given case, the law of the case doctrine generally requires the court to adhere to the rule throughout the proceedings."  *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).  "Under the law of the case doctrine, the mere filing of an amended complaint does not entitle plaintiff to relitigate her claims that were previously dismissed absent new factual allegations." *Doe v. New York City Dep't of Educ.*, 669 F. Supp. 3d 160 (E.D.N.Y. 2023).  *See also Ute Indian Tribe of the Uintah & Ouray Rsrv. v. U.S. Dep't of the Interior*, No. 2:21-cv-00573, 2022 WL 3585771, at *5 (D. Utah Aug. 22, 2022) (considering whether leave to amend should be granted where the plaintiff attempted "to correct pleading deficiencies identified by the . . . district court").  The court will apply the law of the case doctrine as it addresses plaintiffs' proposed claims on an individualized basis below.

### B.    Fraudulent Concealment

Plaintiffs' motion for leave to file an amended complaint first seeks to assert a new claim for fraudulent concealment.

> Under Kansas law, to establish fraudulent concealment, or 'fraud by silence,' the plaintiff must prove . . . (1) the defendant had knowledge of material information the plaintiff did not have and could not have discovered through the exercise of reasonable diligence; (2) the defendant had a duty to communicate that information to the plaintiff; (3) the defendant deliberately failed to communicate the information to the plaintiff; (4) the plaintiff justifiably relied on the defendant to communicate the information; and (5) the plaintiff was injured by the defendant's failure to communicate the information.

*Burton v. R.J. Reynolds Tobacco Co*., 397 F.3d 906, 910 (10th Cir. 2005) (citing *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 932 (Kan 1999)).  Plaintiffs' proposed claim asserts that Union Pacific did not communicate to plaintiffs that it had leaked carcinogenic chemicals into the soil and groundwater and that those chemicals migrated to the Class Area.  (ECF

49-1, at 33.)  Plaintiffs plead that Union Pacific had a duty to communicate such information based on one or more of the following: (1) a provision in the Kansas Discharge Statute requiring a defendant to "promptly correct the release"; (2) Union Pacific's consent order with KDHE requiring Union Pacific to contact community members to access their properties and investigate/remediate the contamination; (3) the common law principle that an actor who creates a hazardous condition has a duty to use reasonable care to warn others and correct it; and (4) Union Pacific's own Environmental Policy.  (ECF 49-1, at 34.)

Union Pacific argues that allowing plaintiffs to assert this new claim would be futile, based on holdings Judge Melgren reached in the April 12 Memorandum and Order.  Although plaintiffs did not assert a separate fraudulent concealment *claim* in their original complaint, they relied on the fraudulent concealment *doctrine* as a shield to Union Pacific's argument that their tort claims were time barred.  Judge Melgren, in addressing whether the *doctrine* of fraudulent concealment tolled the statute of limitations and statute of repose applicable to plaintiffs' tort claims, reached two overarching conclusions: (1) fraudulent concealment can only toll the statute of repose for claims sounding in fraud (not tort); and (2) a defendant's duty to speak only arises where there is either (a) a fiduciary or confidential relationship between the parties or (b) the defendant took an affirmative action designed to prevent discovery of the information.  *Black*, 2024 WL 1604620, at *4.  Judge Melgren noted that plaintiffs' complaint did not allege either a relationship or an affirmative misrepresentation, and as such failed to support the "duty to speak" element of the fraudulent concealment doctrine.  *Id.*

Plaintiffs' proposed amended complaint now seeks to add a factual allegation that Union Pacific made an affirmative act of concealment in 2006 when it informed KDHE that there was no risk of vapor intrusion into the Class Area.  (ECF 49-1, at 13.)  With this factual allegation added,

plaintiffs appear to be addressing Judge Melgren's expressed concern that an affirmative act (where there is no relationship) must be pled to satisfy the duty element of the fraudulent concealment doctrine.  Plaintiffs had included this factual allegation in their response to the motion to dismiss, but Judge Melgren declined to consider it because "this fact does not appear in Plaintiff's Complaint."  *Black*, 2024 WL 1604620, at *4 n.23.  The court does not find it futile to permit plaintiffs to add this factual allegation in an Amended Complaint to address a pleading deficiency that Judge Melgen identified.[6]  Below, the court will address the applicability of the fraudulent concealment doctrine, considered in light of this new allegation, to plaintiffs' tort claims.

Plaintiffs further seek to add allegations that things *other than* a relationship or affirmative misrepresentation (such as the KDHE consent order and the Kansas Discharge Statute) created a duty on Union Pacific's part to inform plaintiffs about the chemical hazards.  (*See* ECF 49, at 12-16.)  Such allegations directly contradict Judge Melgren's holding to the contrary, at least as applicable to the question of whether the fraudulent concealment doctrine could toll the statute of limitation and statute of repose applicable to plaintiffs' tort claims.  *See Black*, 2024 WL 1604620, at *4.[7]  As noted above, plaintiffs did not seek review of Judge Melgren's Memorandum and Order, so such holding is the law of the case.  *See McIntyre v. Unified Gov't of Wyandotte Cnty. & Kansas*

---

[6] This addition does not change Judge Melgren's legal conclusion that fraudulent concealment does not toll the statue of repose for tort-based claims, which is now the law of the case.  *Black*, 2024 WL 1604620, at *4.  Plaintiffs' argument to the contrary in their motion for leave to amend (ECF 49, at 11-12), rather than in a motion for reconsideration of the Memorandum and Order, comes too late.

[7] Indeed, plaintiffs' response to the motion to dismiss asserted that the Kansas Discharge Statute and the KDHE consent order imposed on Union Pacific a duty to speak that tolled the statutes of limitation and repose.  (ECF 18, at 17-18.)  Judge Melgren did not adopt this argument and instead ruled, in the tolling context, that a duty is created by a relationship or an affirmative misrepresentation.

*City, Kans.,* No. 18-2545-KHV, 2022 WL 2337735, at *3 (D. Kan. June 28, 2022) ("Defendants did not file a timely motion to reconsider the Court's order on their motions to dismiss, so the rulings in that order constitute the law of the case.").  The court cannot circumvent that ruling via a motion for leave to file an amended pleading.  Because plaintiffs are bound by Judge Melgren's prior ruling in this regard (unless and until reconsideration is sought and granted), it would be futile to allow plaintiffs to now add such allegations in support of their argument for tolling the limitations period applicable to their tort claims.

Whether plaintiffs should be given leave to add a separate fraudulent concealment *claim* is a closer question.  The Memorandum and Order did not address what types of things could give rise to a duty necessary to support a fraudulent concealment claim, and the parties do not discuss whether the legal standards applicable to such a claim vary from the legal standards applicable to the fraudulent concealment doctrine considered for equitable tolling.  Plaintiffs' proposed fraudulent concealment claim asserts that a duty existed by means of (1) a provision in the Kansas Discharge Statute; (2) Union Pacific's consent order entered with the KDHE; (3) the common law principle that an actor who creates a hazardous condition has a duty to use reasonable care to warn others and correct it; and/or (4) Union Pacific's own Environmental Policy.  (ECF 49-1 at 15-16, 34.)  And the proposed amended complaint includes a number of new factual allegations discussing Union Pacific's Environmental Policy (ECF 49-1, at 11-12), the Kansas Discharge Statute (*id.* at 15), the KDHE consent order (*id.* at 15-16), and the duty to warn (*id.* at 16).  As plaintiffs note, the Kansas Supreme Court has stated that "to prove fraudulent concealment, a plaintiff must establish that the party concealing facts was under a legal or equitable duty to communicate those facts to the plaintiff."  *Alires v. McGehee*, 85 P.3d 1191, 1199 (2004).  Union Pacific has cited no case holding that such a duty could *not* arise from a statute, creating a hazard, entering a contract

for a third-party beneficiary, or a company policy.[8]  Thus, Union Pacific has not demonstrated that granting plaintiffs leave to add a fraudulent concealment claim premised on these alleged duties would be clearly futile.  On the current record, the court cannot say that plaintiffs' proposed fraudulent concealment claim is clearly futile.  Although it may well be subject to dismissal on a fully developed and briefed motion to dismiss, the court will permit plaintiffs to plead the claim.

### C.    Negligence

Plaintiffs next seek to re-assert a negligence claim.  Plaintiffs allege Union Pacific owed them a duty to use reasonable care in using, handling, storing, containing, releasing, and remediating Site contaminants that it knew or should have known could result in damage and injury to those in the Class Area.  (ECF 49-1, at 23-24.)  In Judge Melgren's April 12 Memorandum and Order, he found that because Union Pacific "used, handled, stored, disposed, released, and discharged the alleged substances in the 1970s or 1980s . . . the 'acts' of which Plaintiffs complain occurred well over 10 years ago, triggering the statute of repose." *Black*, 2024 WL 1604620, at *5 (citing KAN. STAT. ANN. § 60-513(b)).  Applying the ten-year statute of repose, the court held that plaintiffs were "barred from asserting any negligence claim based on Defendant's acts in spilling the carcinogenic chemicals" decades ago. *Id.*  As to plaintiffs' ongoing negligent remediation theory, the court acknowledged that there is case law support for the theory that a defendant who undertakes remediation services has a "duty to carry out those services with

---

[8] Union Pacific argues that none of the cases plaintiffs cite in support of these proposed additions "involved claims that a statute of limitations or statute of repose was tolled due to fraudulent concealment and none of them actually imposed a duty to speak." (ECF 50, at 5-6.)  As noted above, however, the court is not permitting these proposed new allegations for the purpose of supporting plaintiffs' tolling arguments.  Here, the court is deciding only whether it would be futile to allow plaintiff to plead these allegations as part of a separate fraud claim.  This was not at issue in Union Pacific's motion to dismiss, and Judge Melgren did not expressly address whether, for example, the KDHE consent order or the Kansas Discharge Statute created a duty to speak.

reasonable care" but found that "Plaintiffs fail[ed] to allege that Defendant voluntarily undertook remedial services thereby creating a duty to exercise reasonable care in doing so." *Id.* (citing *City of Neodesha v. BP Corp. N. Am.*, 334 P.3d 830, 845 (Kan App. 2014)).

Plaintiffs' proposed amended complaint attempts to address these two identified barriers. First, as to the allegedly negligent storage, spill, and release of the chemicals, plaintiffs seek to add factual allegations that would support a finding that the statute of repose was tolled by Union Pacific's affirmative, fraudulent misrepresentation. *See supra* at 9-10. Specifically, plaintiffs' proposed amended complaint includes allegations that (1) in 2006, Union Pacific fraudulently told KDHE that there was no risk of vapor intrusion in the Class Area, and (2) this active concealment delayed KDHE's "efforts to inform the public about the contamination" and prevented plaintiffs from discovering facts that would give rise to a claim against Union Pacific. (ECF 49, at 17; ECF 49-1, at 13-14.) As noted above, the court grants plaintiffs leave to assert these fraud allegations. However, also as recounted above, these new allegations do not affect Judge Melgren's holding that plaintiffs' "tort claims based on Defendant spilling hazardous chemicals do *not* sound in fraud," and that "Kansas courts only toll the statute of repose based on fraudulent concealment for claims sounding in fraud." *Black*, 2024 WL 1604620, at *4 (emphasis in original). *See also supra* note 6. Given this law of the case, plaintiffs' tort-based negligence claim arising from Union Pacific's allegedly negligent storage, spill, and release of the chemicals is barred by the statute of repose for the reasons stated in Judge Melgren's April Memorandum and Order. Because it would be futile to allow plaintiffs to reassert that claim in the proposed amended complaint, the court recommends that Judge Melgren deny plaintiffs' motion to reassert a negligence theory based on Union Pacific's storage, spill, and release of the chemicals.

Second, as to the new negligent remediation theory, plaintiffs seek to plead that Union Pacific voluntarily undertook to remediate the contamination caused by the spill and hired professional consultants for assistance. (ECF 49, at 8.) The proposed amended complaint states that Union Pacific hired The Forrester Group in 2002 and hired Arcadis in 2011 or 2012, both to assist with remediation services. (ECF 49-1, at 13-14.) According to plaintiffs, prior to 2023, "[Union Pacific] and Arcadis were still claiming to conduct feasibility studies of how to remediate the plume but wasted time and negligently failed to meaningfully remediate the plume while conducting endless studies and investigations." (*Id.* at 14.) Plaintiffs seek to plead that Union Pacific was negligent in "[s]pending nearly 20 years 'studying' the problem and failing to test every home above the plume as part of negligent remediation." (ECF 49-1, at 24.) Thus, plaintiffs' proposed allegations directly address Judge Melgren's observation that the defendant in *City of Neodesha* "undertook professional remediation services, and thus had a duty to carry out those services with reasonable care" but that plaintiffs' complaint "fail[ed] to allege that Defendant voluntarily undertook remedial services thereby creating a duty to exercise reasonable care in doing so." *Black*, 2024 WL 1604620, at *5. The court finds that it is not futile to allow plaintiffs to address the pleading deficiency Judge Melgren identified. The court disagrees with Union Pacific's argument that these new allegations "still amount to nothing more than a claim that Union Pacific has not remedied the harm caused by the original alleged act of negligence." (ECF 50, at 8.) Rather, the court finds that plaintiffs have adequately pled a claim for negligent ongoing remediation.[9] The court grants plaintiffs' motion to for leave to file an amended complaint asserting a negligent, ongoing remediation claim, as well as facts in support.

---

[9] Because Union Pacific has not opposed the revised negligent remediation claim based on the statute of repose, the court does not now decide whether the statute of repose would bar the claim. The court notes, however, that plaintiffs have cited case law suggesting it would not. (*See* ECF

**D.      Permanent Trespass and Private Permanent Nuisance**

Plaintiffs' proposed amended complaint includes claims for "permanent trespass" and "private permanent nuisance" that are identical to the "trespass" and "private nuisance" claims, respectively, in their original complaint.  In Judge Melgren's April Memorandum and Order, he dismissed both claims as barred by the statute of repose in KAN. STAT. ANN. § 60-513(b).  As to the trespass claim, Judge Melgren held that the "last act" leading to the claim "occurred in 2003 when Defendants allowed the TCE to infest Plaintiffs' property" and, as such, the ten-year statute of repose gave Union Pacific immunity from liability arising from the trespass.  *Black*, 2024 WL 1604620, at *9.  Similarly, as to the private permanent nuisance claim, Judge Melgren held that because Union Pacific's "act in spilling TCE and other hazardous materials occurred decades ago," the statute of repose barred plaintiffs from asserting a private nuisance action seeking permanent damages.  *Id.* at *6.

Plaintiffs aim to get around these holdings by arguing their proposed new affirmative-fraudulent-misrepresentation allegations toll the running of the statute of repose for these claims.  But, here again, plaintiffs are bound by Judge Melgren's ruling that plaintiffs' trespass and nuisance claims sound in tort—not fraud—and that fraudulent concealment can only toll the statute of repose for fraud-based claims.  *Id.* at *4.  Thus, the court finds it would be futile to allow plaintiffs to reassert their permanent trespass and private permanent nuisance claims and recommends that Judge Melgren deny plaintiffs' motion in this respect.

---

49, at 15 (citing *Grey v. City of Topeka*, 2018 WL 1352506, at *7 (Kan. Ct. App. March 16, 2018) (holding city's duty to maintain bridge and warn of hazardous condition was continuing and not barred by statute of repose, despite the hazardous condition being created more than ten years earlier)).)

E.      **Continuing Nuisance (in the alternative)**

In the alternative to plaintiffs' permanent nuisance claim, they seek to assert a new claim for continuing nuisance. (ECF 49-1, at 28-31.) Judge Melgren noted that in plaintiffs' response to Union Pacific's motion to dismiss, plaintiffs attempted to "avoid the statute of repose by characterizing the chemical spill as a 'continuing nuisance' with 'temporary damages' instead of a permanent nuisance," and by seeking leave to amend their complaint to add a temporary nuisance claim. *Black*, 2024 WL 1604620, at *6-7. He denied plaintiffs' request for leave to amend as perfunctory, indicating that plaintiffs should instead make the request via a Rule 15 motion. *Id.* at *7. Plaintiffs appear to have taken that suggestion to heart in now seeking to bring a "continuing" nuisance claim to avoid the statute-of-repose bar. A "continuing nuisance" is one that can possibly be abated. *See Colt Energy, Inc. v. S. Star Cent. Gas Pipeline, Inc*., No. 5:20-CV-04059-HLT, 2022 WL 1288482, at *5 (D. Kan. Apr. 29, 2022) (citing *Isnard v. City of Coffeyville*, 917 P.2d 882, 887 (1996)), *aff'd*, No. 22-3099, 2023 WL 5126892 (10th Cir. Aug. 10, 2023). Thus, a plaintiff claiming continuing nuisance may only seek and recover temporary damages "on the theory that the cause of the injury may and will be terminated." *Id.* (citing *Isnard*, 917 P.2d at 887). Because a continuing nuisance involves recurring or continuing injuries or wrongs, each injury creates a new cause of action. *Simon v. Neises*, 395 P.2d 308, 312 (Kan. 1964); *see also Henderson v. Talbott,* 266 P.2d 273, 279 (Kan 1954) ("Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action." (quoting *Kansas Pac. Ry. Co. v. Mihlman*, 17 Kan. 224, 231 (Kan. 1876))).

Plaintiffs' proposed new continuing private nuisance claim alleges that the Site is still contaminated and continues to discharge contaminants that continue to harm plaintiffs. Plaintiffs

state that Union Pacific's ongoing failure to properly investigate, mitigate, and remediate the hazardous contamination has created a continuous nuisance causing plaintiffs to currently suffer damages to their health, as well as economic losses such as the cost of remediation and property damage.  (ECF 49-1, at 28-31.)  Union Pacific asserts that the addition of this proposed new claim would be futile because Union Pacific spilled the hazardous chemicals decades ago, despite plaintiffs' allegations of continuous migration of the contaminants.  (ECF 50, at 10 (citing *Mechler v. United States*, No. 12-1183-EFM, 2013 WL 3989640, at *1 (D. Kan. Aug. 2, 2013)).)  To be sure, the statute of repose applicable to a nuisance claim "runs from an act of a defendant."  *Joseph v. Stephens & Johnson Operating Co*., No. 10-1222-SAC, 2011 WL 4496624, at *3 (D. Kan. Sept. 27, 2011).  But plaintiffs' proposed continuing nuisance claim alleges that Union Pacific knows about the continued migration of contaminants onto plaintiffs' land, a nuisance that Union Pacific could abate, but that Union Pacific continues to fail to properly investigate and remediate contaminants from the Site.  Thus, plaintiffs have alleged continued action (or conscious continued inaction) by Union Pacific.  *See Henderson*, 266 P.2d at 279 ("Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action." (citation omitted)); *Simon,* 395 P.2d at 312–13 ("[W]here one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action." (citation omitted)).  *See also N. Nat. Gas Co. v. L.D. Drilling, Inc*., No. 08-1405-WEB, 2009 WL 3739735, at *10 (D. Kan. Nov. 6, 2009) (recognizing the same).

Viewed in the light most favorable to plaintiffs, the court finds that plaintiffs' proposed continuing nuisance claim alleges a plausible claim for relief.  Accordingly, the court grants plaintiffs' motion to the extent it seeks to add this claim.

F.       **Continuing Trespass (in the alternative)**

In the alternative to plaintiffs' permanent trespass claim, they seek to assert a new claim for continuing trespass.  (ECF 49-1, at 32-33.)  Union Pacific argues that plaintiffs' proposed continuing trespass claim is just "a repackaging of their original trespass claim and is subject to dismissal on the same basis," i.e., under the statute of repose.  (ECF 50, at 9.)  In dismissing plaintiffs' *permanent* trespass claim, Judge Melgren held that the chemicals' entrance onto plaintiffs' property constituted the unlawful act "sufficient to create a claim for trespass."  *Black*, 2024 WL 1604620, at *9.  He further noted that "cases applying Kansas law have held that that K.S.A. § 60-513(b) bars trespass actions when defendant's last act leading to the trespass occurred more than 10 years before."  *Id.*  Judge Melgren stated that Union Pacific's "last act occurred in 2003 when Defendants allowed the TCE to infest Plaintiffs' property."  *Id.*

Plaintiffs seek to get around this time bar by now pleading a *continuing* trespass claim.  To plead a continuous trespass action under Kansas law, a plaintiff may allege that a defendant intentionally allowed a contaminant to enter the plaintiff's property (the original trespassory act), and then permitted the contamination to remain.  *United Proteins, Inc. v. Farmland Indus., Inc.,* 915 P.2d 80, 83 (Kan. 1996) (citing RESTATEMENT (SECOND) OF TORTS § 161 (1965) and PROSSER & KEETON, LAW OF TORTS § 13, at 83 (5th ed. 1984)).  *See also Miller v. Cudahy Co.,* 858 F.2d 1449, 1454 (10th Cir. 1988) ("Under Kansas law, the plaintiff has the option of suing for either permanent or temporary damages. . . . If the injury or wrong is classified as temporary, the limitation period starts to run only when the plaintiff's land or crops are actually harmed, and for purposes of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent.").  The RESTATEMENT (SECOND) OF TORTS, which the Kansas Supreme Court relied upon in *United Proteins*, explains, "The actor's failure to remove from land

19

in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and . . . confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass." RESTATEMENT (SECOND) OF TORTS § 161 (1965).

Plaintiffs' proposed continuing trespass claim asserts that Union Pacific intentionally used, disposed of, and stored chemicals that directly caused the migration of contamination onto plaintiffs' property (the original trespass), and that Union Pacific has not stopped the migration (that, in fact, it is ongoing) or remediated the plume. (ECF 49-1, at 14, 32-33.) Plaintiffs allege that, as a result, uninvited and unwanted chemicals are still flowing from Union Pacific's property onto plaintiffs' property, that chemicals remain on plaintiffs' property, and that plaintiffs are suffering continuing injuries as a result. Given the liberal standards applicable when considering leave to amend, the court finds that plaintiffs have proposed a plausible continuing trespass claim under Kansas law. Their motion to amend is granted to the extent that it seeks to assert this claim.

### G.    Unjust Enrichment

Finally, plaintiffs seek to re-assert an unjust enrichment claim identical to the claim Judge Melgren dismissed as untimely in his April 12 Memorandum and Order. Judge Melgren ruled that "[u]nder Kansas law, unjust enrichment is characterized as an implied contract subject to the three-year statute of limitations contained within K.S.A. § 60-512(1)." *Black*, 2024 WL 1604620, at *11. Applying this rule, he held that plaintiffs' unjust enrichment claim accrued by 2003 when Union Pacific knew of the contamination in the Class Area, such that the "three-year statute of limitations has long expired." *Id.* He further held that the fraudulent concealment

doctrine/discovery rule does not apply to toll the statute of limitations for unjust enrichment claims. *Id.* and *id.* at n.72 (noting that Kansas courts have not discussed applying the discovery rule to unjust enrichment claims).

Plaintiffs argue in their motion for leave to amend that, actually, unjust enrichment claims are governed by the statute of limitations in KAN. STAT. ANN. § 60-513(a) and, as such, the discovery rule may apply to unjust enrichment claims and toll the running of the statute of limitations. Plaintiffs base this argument on an April 5 Kansas Supreme Court decision, *Murray v. Miracorp, Inc.*, 545 P.3d 1009 (Kan. 2024). They assert that, "[g]iven *Murray*, the discovery rule clearly applies to unjust enrichment." (ECF 49, at 18.) In essence, plaintiffs challenge Judge Melgren's conclusion that the discovery rule does not apply to unjust enrichment claims and his statement that no Kansas court had discussed the matter. Thus, plaintiffs contend that they should be able to assert their original unjust enrichment claim.

The problem with plaintiffs' argument is that it is foreclosed by the law of the case doctrine. As discussed in Section III.A, *supra*, when a court enunciates a rule of law, the court must adhere to that rule throughout the proceedings. The procedural path for plaintiffs to challenge a legal rule set out by Judge Melgen in his April 12 Memorandum and Order would have been to file a motion to reconsider that order, *see* D. KAN. RULE 7.3, or seek relief from that order via some other procedural vehicle. But as things currently stand, plaintiffs' unjust enrichment claims have been dismissed from the case as legally barred. Unlike plaintiffs' re-assertion of their claims for negligence, permanent nuisance, and permanent trespass, plaintiffs have not pled new factual allegations to support their unjust enrichment claim; they simply argue that Judge Melgren was wrong on the law. Because Judge Melgren's legal conclusion on plaintiffs' unjust enrichment

claim still stands, however, it would be futile for the court to allow plaintiffs to replead the claim. Plaintiffs' motion for leave to amend should be denied in this respect.

## IV.    PREJUDICE TO UNION PACIFIC

In addition to futility, Union Pacific asserts that the court should deny plaintiffs leave to amend their complaint because such amendment would prejudice Union Pacific.  Specifically, Union Pacific states that it "would be prejudiced if it were required to file another motion to dismiss and engage in another round of briefing because of Plaintiffs' delay in seeking to amend their claims." (ECF 50, at 14.)  Union Pacific appears to be overselling its alleged prejudice.

First, Union Pacific is not correct in its assertion that plaintiffs "waited until all briefing was concluded and the Court had issued a lengthy and detailed ruling on Union Pacific's motion to dismiss and only then sought leave to amend in response to the Court's Order." (*Id.* at 12.) Plaintiffs included a section in their response to Union Pacific's motion to dismiss titled, "Plaintiffs Should be Granted Leave to Amend the Complaint." (ECF 18, at 25.)  Therein, plaintiffs set out the legal standard for amendment and argued, "[i]f the Court is inclined to grant Defendant's motion in whole or part, Plaintiff should be given leave to amend," noting that they could "add facts to bolster or clarify their claims." (*Id.*)  And Judge Melgren's order implicitly acknowledged the likelihood that plaintiffs would file a motion seeking leave to amend their complaint.  Plaintiffs then filed their motion for leave to amend by the deadline established in the Scheduling Order. The court does not find plaintiffs' motion untimely.

Second, the court is unpersuaded that Union Pacific will be unduly prejudiced by filing the amended claims that the court is allowing.  "While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants." *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018).  *See*

*also Endecott v. Com. Floorworks, Inc.*, No. 16-2190-JTM, 2017 WL 1650814, at *5 (D. Kan. May 2, 2017) (same).  Union Pacific argues that it will be prejudiced to the extent that the time it spent briefing its motion to dismiss will have been "wasted" if plaintiffs are permitted to alter their complaint in response to Judge Melgren's Memorandum and Order.  (ECF 50, at 13 (quoting *Horocofsky,* 2022 WL 2802316, at *4).)  But the court above has denied plaintiffs' request to re-assert the claims on which Union Pacific sought—and was granted—dismissal.  Union Pacific's argument is not applicable to plaintiffs' assertion of new claims.  Class certification discovery does not end until April 25, 2025, so Union Pacific still has plenty of time to conduct discovery on plaintiffs' new claims.  (ECF 36.)  Even if Union Pacific decides to file a partial motion to dismiss plaintiffs' amended complaint, Union Pacific has not demonstrated that this works an injustice on it.  In the end, the court simply does not find any prejudice to Union Pacific to be "undue," particularly where it will be outweighed by the benefit of allowing all of plaintiffs' claims to be determined in a single action.

## V.     CONCLUSION

The court, of course, cannot determine from the face of the proposed amended complaint whether plaintiffs will be able to substantiate the new claims the court here permits them to plead. "But 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks and citations omitted)).  Thus, "given the low threshold for amendment," the court grants plaintiffs leave to amend their complaint to assert new claims for negligent remediation, continuing nuisance, continuing trespass, and fraudulent concealment (as well as the Kansas Discharge Statute claim that Judge Melgren did not

dismiss) and related factual allegations.  *See Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020) (vacating denial of leave to amend).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File an Amended Complaint (ECF 48) is granted to the extent plaintiffs seek leave to assert new claims for negligent remediation, continuing nuisance, continuing trespass, and fraudulent concealment, as well as factual allegations related to the same.  Plaintiffs must file their First Amended Complaint (including only these claims and their remaining Kansas Discharge Statute claim), as a separate docket entry within **5 calendar days** from the date of this order.

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' Motion for Leave to File an Amended Complaint (ECF 48) be denied to the extent plaintiffs seek leave to reassert claims for negligent storage/spill of chemicals, permanent nuisance, permanent trespass, and unjust enrichment.

**IT IS SO ORDERED.**

Dated August 8, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
