## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FAYE BLACK, et al.,

          *Plaintiffs,*

v.

                                     Case No. 23-1218-EFM-ADM

UNION PACIFIC RAILROAD COMPANY,

          *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Union Pacific Railroad Company's Partial Motion to Dismiss Counts I–IV of Plaintiffs Faye Black and Jeannine Tolson's Amended Complaint (Doc. 69). Union Pacific asserts that Counts I–III, negligent remediation, continuing nuisance, and continuing trespass, are barred by the statute of repose and that Plaintiffs' new fraudulent concealment claim, Count IV, is not sufficiently pled. Plaintiffs respond that the Amended Counts I–III avoid the statute of repose because they have alleged facts that place Union Pacific's acts within the last 10 years. Further, they assert that Union Pacific's silence regarding spills of toxic chemicals and misrepresentation to the Kansas Department of Health and Environment ("KDHE") support their fraudulent concealment claim. For the reasons stated herein, the Court denies Union Pacific's motion to dismiss related to Counts I–III and grants the motion to dismiss related to Count IV.

## I.      Factual and Procedural Background[1]

Plaintiffs bring this putative class action lawsuit alleging that Union Pacific contaminated their properties, exposing Plaintiffs and others similarly situated to toxic chemicals.

Union Pacific is a railroad company, incorporated in Delaware, with its principal offices in Omaha, Nebraska. Union Pacific operates an industrial railroad site known as the "29th and Grove Environmental Site" in Wichita, Kansas ("the Site"). In the 1970s, 1980s, or earlier, there were spills of toxic chemicals at the Site. The spills contaminated the soil, groundwater, and air at the Site. The contaminants include toxic and carcinogenic chemicals like trichloroethylene ("TCE"); 1,4-dioxane; and others.

The contamination migrated from the Site, extending roughly three miles south and several city blocks laterally into the soil and groundwater. The contamination and migration continue to this day. Plaintiffs and potential class members are persons who own residential properties within the area of contamination.

Union Pacific has been aware of the contamination at the Site, the contaminants' migration from the Site, and the associated health risks of the contamination. However, Union Pacific has remained silent and concealed facts about the contamination.

In 2002, Union Pacific entered into a consent order with the KDHE to investigate the contamination and potential remediation options. That same year, Union Pacific hired the Forrester Group to provide environmental services on this project. In 2010 and 2011, Union Pacific excavated some, but not all, of the contaminated soil from the Site. In 2011 or 2012, Union Pacific hired Arcadis as the primary consultant on the project. As recently as 2023, Arcadis was claiming to conduct feasibility studies of how to remediate the plume. In 2006, Union Pacific

---

[1] The facts are taken from Plaintiffs' Amended Complaint and are accepted as true for purposes of this Order.

misrepresented to KDHE that there was no risk of vapor intrusion within the class area. Vapor intrusion occurs when chemical vapors migrate upward from contaminated soil or groundwater through building foundations and floors and into the indoor air.

Plaintiffs first learned of the contamination and health hazards in the Fall of 2022 after KDHE held a public meeting about the contaminated area. KDHE warned of health risks associated with exposure to well water through ingestion or dermal contact. KDHE also warned of potential vapor intrusion into residences. Further, KDHE warned that TCE exposure is linked to a variety of cancers and other illnesses. As the general public became aware of the health hazards in the contaminated area, Plaintiffs' property values decreased.

On October 10, 2023, Plaintiffs filed this lawsuit bringing counts of negligence, private nuisance; trespass; violation of the Kansas Discharge Statute, K.S.A. § 65-6203; and unjust enrichment. Union Pacific filed a motion to dismiss, which this Court granted as to all of Plaintiffs' claims except the violation of the Kansas Discharge Statute. In doing so, the Court found that the statute of repose barred Plaintiffs' negligence, private nuisance, and trespass claims. Plaintiffs filed a motion to amend their Complaint. Upon the recommendation of Magistrate Judge Mitchell, this Court granted Plaintiffs the opportunity to amend their Complaint.

On August 13, 2024, Plaintiffs filed their Amended Complaint, asserting new claims of negligent remediation, private continuing nuisance, continuing trespass, and fraudulent concealment. Plaintiffs also maintain their claim related to violations of the Kansas Discharge Statute. On September 3, 2024, Union Pacific filed the present Motion to Dismiss. Plaintiff filed a timely response and Union Pacific a timely reply. The matters are now fully briefed and ripe for the Court's ruling.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8]

Kansas law sets out two time-based limitations on a defendant's tort liability. The first is a two-year statute of limitation, which begins to run when a claim accrues.[9] The second, a statute of

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] K.S.A. § 60-513(b); *O'Neill v. Dunham*, 41 Kan. App. 2d 540, 203 P.3d 68, 71 (2009).

repose, abolishes claims 10 years after the defendant's "act giving rise to the cause of action."[10] The statute of limitations is tied to recognition of injury, while the statute of repose is tied to the defendant's last act.[11]

### III.    Analysis

#### A.    Negligent Remediation

Union Pacific seeks dismissal of Count I for two reasons. First, Union Pacific asserts that Kansas law does not recognize a tort of negligent remediation. Second, Union Pacific argues that because Plaintiffs' negligent remediation claim does not substantially differ from Plaintiffs' original negligence claim, it too is barred by the statute of repose. Plaintiffs respond with several cases demonstrating that Kansas courts do recognize negligent remediation. Further, they assert that because Union Pacific has recently engaged in remediation efforts, the statute of repose is inapplicable. The Court finds that Plaintiffs have alleged a cognizable claim for negligent remediation; further, that claim is not barred by the statute of repose.

Kansas courts recognize the tort of negligent performance of services when one voluntarily undertakes "to render services to another which he should recognize as necessary for the protection of third persons."[12] This duty

> provides in part that one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if: (a) his failure to exercise reasonable care increases the risk of such harm; (b) he has undertaken to perform a duty owed by the other to the third person; or (c)

---

[10] K.S.A. § 60-513(b); *Harding v. K.C. Wall Prods., Inc.*, 250 Kan. 655, 831 P.2d 958, 967 (1992).

[11] *O'Neill*, 203 P.3d at 71.

[12] *McGee ex rel. McGee v. Chaflant*, 248 Kan. 434, 806 P.2d 980, 983 (1991).

the harm is suffered because of reliance of the other or the third person upon the undertaking.[13]

The Court previously dismissed Plaintiffs' negligence claim because, as originally alleged, Union Pacific's last negligent act was tied to spills at least three decades before Plaintiffs filed this suit. The Court distinguished *City of Neodesha v. BP Corp. N.A.*[14] from the allegations in Plaintiffs' original Complaint. In *City of Neodesha*, the defendant had undertaken remediation efforts and was under a duty to exercise reasonable care in carrying out those efforts.[15] In their original Complaint, Plaintiffs had not pled that Union Pacific had engaged in remediation efforts. Thus, when Plaintiffs pegged Union Pacific's last act of alleged negligence several decades before this suit, the 10-year statute of repose clearly extinguished Plaintiffs' claim. However, Plaintiffs' Amended Complaint includes new facts that bump Union Pacific's last act into the 10-year window. Union Pacific contends that Plaintiffs' new facts do not allege affirmative remediation efforts—rather, they merely establish that Union Pacific *failed* to remediate. The Court disagrees.

As alleged, Union Pacific hired the Forrester Group and Arcadis to study the contamination so that it could determine how to remediate the harm caused by the spills. In 2010 or 2011, Union Pacific excavated some contaminated soil from the Site, but not all of it. Arcadis continued to conduct feasibility studies to address the contamination in 2023. Thus, the Court finds that Union Pacific's "act" giving rise to Plaintiffs' negligent remediation claim was in 2023.

From these facts, it can be inferred that Union Pacific undertook to render services to Plaintiffs, and Union Pacific should have recognized these services as necessary to protect

---

[13] *N.T. v. Taco Bell Corp.*, 411 F. Supp. 3d 1192, 1196 (D. Kan. 2019) (quoting Restatement (Second) of Torts § 324A (1965)).

[14] 50 Kan. App. 2d 731, 334 P.3d 830 (2014).

[15] *Id.* at 845.

Plaintiffs. Plaintiffs specifically allege that Union Pacific's dilatory and incomplete efforts violate the duty—voluntarily undertaken—to exercise reasonable care in rendering services for Plaintiffs' benefit. As such, Plaintiffs' have stated a cognizable claim for negligent remediation. Further, that claim is not barred by the statute of repose.

## B.    Private Continuing Nuisance

Union Pacific seeks to dismiss Plaintiffs' private continuing nuisance claim, asserting that Plaintiffs' claim, even as amended, remains barred by the statute of repose. Plaintiffs argue that because Union Pacific has not removed the contamination and continues to release contaminants from the Site, their claim is well within the 10-year window. The Court finds that Plaintiffs have sufficiently alleged that Union Pacific continues to engage in wrongdoing, rendering the statute of repose inapplicable.

Kansas courts hold that "where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action."[16] "[T]he principle upon which one is charged as a continuing wrongdoer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury."[17]

Union Pacific's assertion that Plaintiffs' amended claim is functionally the same as their original claim is misguided. In the original Complaint, Plaintiffs alleged that the nuisance was permanent and not reasonably abatable. By now alleging that Union Pacific can abate and remove the contamination caused by the spills, Union Pacific's wrongdoing is tied to their "permit[ing] it to remain."[18] By permitting the contamination to remain when it has the right, duty, and ability to

---

[16] *Simon v. Neises*, 193 Kan. 343, 395 P.2d 308, 312 (1964).

[17] *Henderson v. Talbott*, 175 Kan. 615, 266 P.2d 273, 279 (1954) (quoting *Kan. Pac. Ry. Co. v. Mihlman*, 17 Kan. 224, 231 (1876)).

[18] *Simon*, 395 P.2d at 312.

remove it, Union Pacific continues to engage in wrongdoing. Thus, the "act" giving rise to Plaintiffs claim is Union Pacific's continuing failure to remove the contamination. Accordingly, the 10-year statute of repose does not bar Plaintiffs' private continuing nuisance claim.

## C.    Continuing Trespass

Union Pacific requests the Court find the statute of repose extinguishes Plaintiffs' trespass claim. Like in their argument for dismissal of Plaintiffs' continuing nuisance claim, Union Pacific asserts that Plaintiffs' continuing trespass claim merely reiterates their previously-dismissed trespass claim. However, Plaintiffs have amended their claim to reflect that Union Pacific's trespass is ongoing. The Court finds that the continuing nature of Plaintiffs' trespass claim makes the statute of repose inapplicable.

In Kansas, a continuing trespass claim arises when a defendant tortiously places a thing on another's land and fails to remove that thing.[19] To assert a continuing trespass claim, Plaintiffs must first show that the original trespass was intentional, meaning it "was purposeful, or that it was substantially certain to occur."[20] The time period to maintain an action runs concurrently with the time period that a defendant allows the thing to remain on another's land.[21]

Here, Plaintiffs allege that Union Pacific knew or should have known that it was substantially certain that the contaminants would enter Plaintiffs' property. Thus, Plaintiffs have sufficiently alleged that the migration of contaminants onto their properties constituted an intentional trespass. Further, Plaintiffs have alleged that the Site continues to be contaminated and

---

[19] *United Proteins, Inc., v. Farmland Indus., Inc.*, 259 Kan. 725, 915 P.2d 80, 83 (1996) (citations and quotations omitted).

[20] *Id.* at 84.

[21] *See id.* (citing Restatement (Second) of Torts § 161 (1963); Prosser and Keeton, Law of Torts § 13, p. 83 (5th ed. 1984)).

that the contaminants are presently migrating to their property. Finally, Plaintiffs allege that Union Pacific has not removed the contaminants from their property. Whether the Court considers the contaminants' present migration or Union Pacific's failure to remove the contaminants as the "act giving rise to the cause of action," because Plaintiffs allege that both are happening to this day, the statute of reposes' 10-year limitation is inapplicable.

## D.    Fraudulent Concealment

Union Pacific seeks dismissal of Plaintiffs' newly added fraudulent concealment claim. Plaintiffs assert several theories that they say give rise to Union Pacific's duty to warn Plaintiffs of the contaminants. Plaintiffs also point to Union Pacific's misrepresentation to KDHE about the risk of vapor intrusion to support their claim. The Court concludes that the duties cited by Plaintiffs do not support a viable fraudulent concealment claim. Moreover, because Plaintiffs were unaware of the misrepresentation to KDHE, they cannot rely on it to substantiate their claim.

A fraudulent concealment claim requires a showing that

(1) the defendant had knowledge of material information the plaintiff did not have and could not have discovered through the exercise of reasonable diligence; (2) the defendant had a duty to communicate that information to the plaintiff; (3) the defendant deliberately failed to communicate the information to the plaintiff; (4) the plaintiff justifiably relied on the defendant to communicate the information; and (5) the plaintiff was injured by the defendant's failure to communicate the information."[22]

With respect to the second element of a fraudulent concealment claim, Kansas courts have found a "duty to disclose" in only two situations: "certain kinds of disparate contractual relationships, as well as fiduciary relationships."[23] Recognizing that neither relationship fits here, Plaintiffs focus on establishing that Union Pacific otherwise owed Plaintiffs a duty to warn them

---

[22] *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 910 (10th Cir. 2005) (citing *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 978 P.2d 922, 935 (1999)).

[23] *Burton.*, 397 F.3d at 911 (citing *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 576 P.2d 674, 679 (1978)).

of the contaminants.[24] To do so, Plaintiffs point to (1) the Kansas Discharge Statute, (2) a general duty to warn when a defendant creates a hazard, (3) the consent order between Union Pacific and KDHE, and (4) Union Pacific's environmental policy.

But a showing of a fiduciary or contractual relationship is necessary to plausibly allege that Union Pacific's nondisclosure amounted to fraudulent concealment under Kansas law.[25] Although Plaintiffs' cited duties may be sufficient to sustain a negligence claim, they are insufficient to support a cognizable claim sounding in fraud.[26] Indeed, many of the cases Plaintiffs cite assert negligent failure to warn claims rather than fraudulent concealment claims.[27] And Kansas courts have been hesitant to allow plaintiffs to convert an action otherwise recognized as negligence into a claim for fraudulent concealment.[28] Here, because Plaintiffs have not shown the existence of a contractual or fiduciary relationship, the Court will not recognize this as a proper fraudulent concealment claim.[29]

---

[24] It appears that much of Plaintiffs' focus on a duty is meant to persuade this Court that it should apply the fraudulent concealment doctrine to toll the statute of repose for Plaintiffs' amended negligence, nuisance, and trespass claims. The Court declines to further engage this doctrine as it was sufficiently addressed in both the initial order to dismiss and Magistrate Judge Mitchell's Report and Recommendation. Additionally, the Court finds Plaintiffs' amended claims may proceed without application of this doctrine.

[25] See Burton, 397 F.3d at 913 ("Because a fiduciary relationship does not arise, claims that a cigarette manufacturer has not warned of known product dangers are generally not cognizable as fraudulent concealment claims under Kansas law. Rather, they are cognizable as failure to warn claims.").

[26] See Hamner v. BMY Combat Systems, 869 F. Supp. 888, 893 (D. Kan. 1994) ("It is the court's conclusion that any claim plaintiff may have regarding defendants' failure to notify him of a danger associated with the use of their products is properly stated as a claim for a breach of defendants' duty to warn.").

[27] See generally, e.g., Pennington ex rel. Pennington v. Wolfe, 262 F. Supp. 2d 1254 (D. Kan. 2003); Kirk v. Schaeffler Grp. USA, Inc., 887 F.3d 376 (8th Cir. 2018); York v. Northrop Grumman Guidance & Elecs. Co., Inc., 2022 WL 3971283 (W.D. Mo. Aug. 31, 2022).

[28] See Bonin v. Vannaman, 261 Kan. 199, 929 P.2d 754, 764 (declining to recognize a fraud by silence claim even when defendant's conduct met the elements because "the law has classified the cause of action created by this breach as a form of negligence . . . not as fraud").

[29] See Burton, 397 F.3d at 913 ("[W]e decline to recognize a theory of fiduciary duty and fraudulent concealment which is unlike any yet recognized by the Kansas courts. 'Federal court is not the place to press innovative theories of state law.'" (citing Villegas v. Princeton Farms, 893 F.2d 919, 925 (7th Cir. 1990))).

Next, Plaintiffs allege that Union Pacific's 2006 misrepresentation to KDHE that there was no risk of vapor intrusion supports their fraudulent concealment claim. But "[o]ne of the essential elements of actionable fraud is that the party to whom a misrepresentation is made must rely and act on the same to his detriment."[30] Here, Plaintiffs allege that Union Pacific made the misrepresentation to KDHE, not to Plaintiffs. And Plaintiffs acknowledge that they were not even aware of the misrepresentation until at least 2022. As such, Plaintiffs cannot show that they relied upon such a misrepresentation. Without facts to this effect, Plaintiffs do not meet the fourth element of a fraudulent concealment claim.[31]

Because Plaintiffs do not allege that Union Pacific owed Plaintiffs a fiduciary duty, or that they relied upon Union Pacific's misrepresentation, the Court finds that they have failed to plausibly state a claim for fraudulent concealment.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss (Doc. 69) is **DENIED** as to Counts I–III and **GRANTED** as to Count IV.

**IT IS SO ORDERED**.

Dated this 21st day of February, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[30] *Minn. Ave., Inc. v. Auto. Packagers, Inc.*, 211 Kan. 461, 507 P.2d 268, 272 (1973).

[31] *Id.* at 272 ("It cannot be said from this record that [plaintiff's representative] relied on his . . . conversation with [defendant's representative]").