## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FAYE BLACK and JEANNINE TOLSON,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

        v.

UNION PACIFIC RAILROAD COMPANY,

        Defendant.

Case No. 23-1218-EFM-ADM

### MEMORANDUM AND ORDER

Plaintiffs Faye Black and Jeannine Tolson (together, "plaintiffs") filed this putative class action for injunctive relief and damages allegedly caused by defendant Union Pacific Railroad Company's ("Union Pacific's") release of toxic chemicals that migrated (and allegedly continue to migrate) onto their properties. The matter is before the court on plaintiffs' motion to compel Union Pacific to produce documents involving public-relations consultants that Union Pacific has withheld as privileged and/or protected by the work-product doctrine. (ECF 133.) For the reasons explained below, the court rejects plaintiffs' request to order the documents produced on a wholesale/categorical basis, but after *in camera* review, finds that Union Pacific has applied the attorney-client privilege and work-product doctrine too broadly. The court orders Union Pacific to produce many documents improperly withheld. Accordingly, plaintiffs' motion is granted in part and denied in part, as more specifically set forth below.

## I.     BACKGROUND

The court previously summarized the facts giving rise to this case. *See Black v. Union Pac. R.R. Co.,* No. 23-1218-EFM-ADM, 2025 WL 579827, at *1 (D. Kan. Feb. 21, 2025). In brief, the

case arises out of Union Pacific's operation of an industrial railroad site known as the "29th and Grove Environmental Site" in Wichita, Kansas ("the Site"). In the 1970s and 1980s, Union Pacific spilled toxic chemicals at the Site that contaminated the soil, groundwater, and air. In 2002, Union Pacific entered a consent order with the Kansas Department of Health and Environment ("KDHE") to investigate the contamination and potential remediation options. In 2003, Union Pacific learned that hazardous chemicals had migrated from the Site to an area roughly three miles south and several city blocks wide. Plaintiffs and potential class members are persons who own residential properties within the contamination area. Plaintiffs first learned of the contamination in the fall of 2022, when the KDHE held a public meeting and warned of the potential health risks associated with the chemicals. Plaintiffs filed this lawsuit on October 10, 2023. They assert Kansas state-law claims of negligent remediation, private continuing nuisance, continuing trespass, and violation of the Kansas Discharge Statute, KAN. STAT. ANN. § 65-6203. (ECF 54.)

The case now is in the class-certification discovery phase. On January 6, 2025, Union Pacific served a privilege log asserting the attorney-client privilege and/or the work-product doctrine over approximately 250 documents that include third-party public-relations consultants Etched Communications ("Etched") and CML Collective (a local Wichita communications firm), as well as environmental consultant Arcadis. The parties initially exchanged letters regarding plaintiffs' position that Union Pacific's privilege claims were not supported, but they did not meet and confer on the issue until March 28. Union Pacific served a supplemental privilege log on April 1, which plaintiffs still found unsatisfactory. Plaintiffs now ask the court to overrule Union Pacific's attorney-client privilege and work-product protection objections to producing documents, and to compel Union Pacific to produce the documents listed on Union Pacific's privilege log. With Union Pacific's response, it submitted the withheld documents for *in camera*

review.  As explained below, after applying the relevant legal standards, the court concludes that Union Pacific incorrectly designated approximately 160 documents as privileged; Union Pacific must produce these documents and/or re-produce them with redactions.

## II.    ATTORNEY-CLIENT PRIVILEGE

The court begins by examining plaintiffs' challenge to Union Pacific's attorney-client-privilege assertions.  "[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  FED. R. EVID. 501; *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).  In this case, the court has diversity jurisdiction over the asserted Kansas common-law and statutory claims.  Therefore, Kansas law applies to the attorney-client privilege claims at issue.

In Kansas, the attorney-client privilege is codified at KAN. STAT. ANN. § 60-426.  Under the statute, with few exceptions, "communications . . . between a lawyer and his or her client in the course of that relationship and in professional confidence, are privileged."  *State v. Gonzalez*, 234 P.3d 1, 10 (Kan. 2010).  The term "communication" includes "advice given by the attorney in the course of representing the client and . . . disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship."  KAN. STAT. ANN. § 60-426(c)(2).  The privilege does not apply, however, "to every communication between attorney and client."  *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 690 (Kan. 2000).  "To be privileged, communications must be confidential and involve the requesting or giving of *legal* advice."  *Lawson v. Spirit AeroSystems, Inc.,* 410 F. Supp. 3d 1195, 1212 (D. Kan. 2019) (citing KAN. STAT. ANN. § 60-426) (emphasis added); *see also Cypress Media*, 997 P.2d at 689-90.  "Further, underlying facts do not become privileged merely because they are conveyed between attorney and client."  *TP ST Acquisition, LLC v. Lindsey*, No. 21-2020-JAR, 2022 WL 252001, at

*2 (D. Kan. Jan. 26, 2022) (quoting *Lawson*, 410 F. Supp. 3d at 1212, and applying Kansas law). The party asserting attorney-client privilege bears the burden to establish that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *Cypress Media*, 997 P.2d at 693. This burden includes showing the privilege has not been waived. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

Plaintiffs' arguments against the applicability of the attorney-client privilege to the public-relations documents are two-fold. First, plaintiffs argue Union Pacific waived privilege by including outside public-relations consultants in the communications. Second, plaintiffs argue the documents were not privileged to begin with because "they are about public relations and routine business issues, not predominantly about legal issues." (ECF 134, at 3.) The court addresses each argument, starting with the second given that a privilege first must exist before it can be waived.

### A.    Privilege Standard: Communications for the Purpose of Requesting or Receiving Legal Advice

The court turns first to plaintiffs' argument that the communications listed on Union Pacific's privilege log cannot be privileged because they relate to business and public-relations issues, not to predominantly legal advice. As plaintiffs note and the court discussed above, communications involving attorneys are only privileged when made in confidence for the purpose of giving or receiving *legal* advice. When an attorney is involved in communication to, from, or involving a client's public-relations' consultants, whether or not the communication is privileged depends on context. Attorney-client privilege does not attach to communications to, from, or copying an attorney that solely relate to public-relations or business advice. *See TP ST Acquisition,* 2022 WL 252001, at *2; *Burton v. R.J. Reynolds Tobacco Co*., 200 F.R.D. 661, 667, 669 (D. Kan. 2001). When a communication contains both legal advice and business or public-relations advice, the attorney-client privilege applies if the legal advice predominates over the business advice. *See*

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.,* 232 F.R.D. 669, 675 (D. Kan. 2005). Conversely, where the legal advice is "merely incidental" to the business or public-relations advice, there is no attorney-client privilege. *See Lawson v. Spirit AeroSystems, Inc*., No. 18-1100-EFM-ADM, 2020 WL 1643679, at *3 (D. Kan. Apr. 2, 2020) (applying Kansas law); *Burton*, 200 F.R.D. at 674. Finally, where the legal and business purposes of the communication are inextricably intertwined, the entire communication is privileged if the legal purpose outweighs the business purpose. *See Byrnes v. St. Catherine Hosp.,* No. 21-2086-DDC-ADM, 2023 WL 2734229, at *14 (D. Kan. Mar. 31, 2023); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,* 951 F. Supp. 679, 685–86 (W.D. Mich. 1996).

A "party may not cloak a document with a privilege by simply having . . . public relations matters handled by attorneys." *Burton*, 200 F.R.D. at 669. Similarly, documents produced by public-relations consultants are not protected by the attorney-client privilege or work-product doctrine if they predominantly relate to public-relations or public-image issues, rather than to the seeking or giving of legal advice. *Id.* at 667; *compare Lifevantage Corp. v. Domingo*, No. 2:13-cv-01037, 2015 WL 5714426, at *2 (D. Utah Sept. 29, 2015) ("Most courts agree . . . that basic public relations advice from a consultant hired by the corporate client is not within the privilege." (quotation omitted)), *with Bozorgi v. Cassava Sciences, Inc.*, No. 1:24-mc-91041-AK, 2024 WL 2874636, at *4 (D. Mass. May 9, 2024) (finding series of documents with public relations firm were privileged where public relations specialists' expertise was necessary and "integral to the attorneys' provision of effective legal advice," not merely to battle bad publicity). "[S]imply copying lawyers on emails between non-lawyer business representatives that deal primarily with business and/or marketing issues does not render the messages privileged." *In re EpiPen*

*(Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 5281604, at *1 (D. Kan. Oct. 24, 2018).

### B.    Privilege Application: No Categorical Ruling

Although plaintiffs acknowledge these legal standards, they go on to make categorical proclamations about how the standards apply that are so broad as to render them incorrect.  For example, plaintiffs promulgate that "PR consultant emails are not privileged because they involve public relations issues and are not predominantly seeking legal advice."  (ECF 134, at 7.)  It is true that *if* consultant emails predominantly involve public-relations issues, rather than legal advice, then they are not privileged.  But it is not accurate to state that *all* consultant emails fall into this category.  Certainly there may be (and in this case, are) emails from public-relations consultants that are sent to attorneys for the purpose of obtaining legal advice.  When companies involve public-relations consultants in communications "for predominantly legal purposes," the communications are privileged.  *See Pipeline Prods., Inc. v. Madison Cos., LLC,* No. 15-4890-KHV, 2019 WL 1900341, at *5 (D. Kan. Apr. 29, 2019) (applying Kansas law).

In another example, plaintiffs maintain that "in-house counsel commenting on [draft documents] is not a legal issue."  (ECF 134, at 8.)  According to plaintiffs, "[a]ll emails and draft documents described as submitted [to counsel] for 'review and comment' . . . should be produced."  (ECF 134, at 10.)  Again, plaintiffs describe the legal standard in a platitude that is far too broad and then ask the court to apply it on a categorical basis to a large swath documents.  It is true that sometimes a client might submit a draft communication to counsel for the purpose of obtaining counsel's opinion and advice on the public-relations aspect of the communication.  In such a scenario, the communication and draft document are not privileged.  But sometimes draft documents or communications are given to counsel for comment on the legal effects thereof or for

advice on changes that should be made for a legal purpose.  In this second scenario, the communication is privileged.  "Draft" communications must be considered on an individualized basis to determine into which pool they fall.  Given the nuances in how the legal standards apply, the court declines to determine privilege on a categorical basis.

### C.    Privilege Application: Targeted Review of Documents

Taking a more targeted approach to applying the proper attorney-client-privilege standards, the court has reviewed *in camera* all of the documents on Union Pacific's first privilege log that plaintiffs challenge as involving public-relations, rather than legal, advice.[1]  In so doing, the court has evaluated the full record—including the parties' arguments in their briefs, information on the privilege log, and the documents themselves—to determine whether Union Pacific has met its burden to establish the withheld communications were made in order to seek or render legal advice from an attorney acting in the attorney's capacity as legal advisor and, if so, to determine whether legal advice predominates the communication.  This is a context-specific determination, and the court provides the following, non-exhaustive list of examples as to how it has applied the privilege to various documents.

### Public-Relations Emails Not Requesting Advice from Attorney

In reviewing the withheld communications *in camera*, the court was left with a strong impression that a corporate culture existed at Union Pacific whereby members of Union Pacific's

---

[1] The court only reviewed documents on Union Pacific's original January 6, 2025 privilege log (UPPRIV0000014 to -489), not on Union Pacific's April 1 supplemental privilege log.  The parties have not met and conferred about documents identified on the supplemental log, so any issues solely related thereto are not ripe for review.  That being said, the court directs Union Pacific to apply the court's rulings in this memorandum and order to the documents listed on its supplemental log.  The court expects this will lead to Union Pacific withdrawing its privilege claims as to a great number of documents, producing the same, and revising its supplemental log to include only those documents it continues to withhold with certainty after careful application.

communications and media team copied Union Pacific's in-house legal team on nearly all emails in an attempt to insulate the emails from release.  These emails often involved emails amongst Union Pacific's outside public-relations firm, Etched Communications; Union Pacific's outside environmental-consulting firm, Arcadis; and members of Union Pacific's internal communications, public affairs, and site remediation departments strategizing about public messaging.  The emails often would involve numerous recipients and would copy one or more Union Pacific in-house attorneys, but did not ask for legal advice nor involve any topic of legal significance.  Rather, as one email from Kristen South, a Union Pacific Senior Director of Corporate Communications and Media Relations, bluntly put it, legal was copied "just to be safe" because she "wanted to keep it under privilege."  UPPRIV-0000374.  But as the court noted above, simply copying an attorney on a communication does not render the communication privileged. And copying an in-house attorney certainly does not create any *de facto* privilege because in-house counsel typically wears two hats—a business hat and a legal hat.  In many of the communications at issue, a Union Pacific in-house attorney was included in the group communication but rarely chimed in on the email thread and, even when he did, the input was sometimes non-legal in nature (*e.g.*, coordinating logistics for an event, etc.).  Thus, public-relations issues predominated while legal issues, if any, were merely incidental to the overall communication.

For example, UPPRIV-0000374 is an email string from March 2023.  The first email is from Arcadis to a number of people at Union Pacific asking if they had seen a Wichita community member's social-media post and related TV interview about an EPA statement and the upcoming release of the KDHE health study.  South forwarded the email to someone at Etched, copying Union Pacific in-house attorney Nicholas Bryan, asking that Etched review the email and be ready to discuss on a scheduled call.  Bryan then responds to South, "Do you need/want me on this call?"

To which South responds that his participation is optional. After another exchange in which Bryan expresses confusion as to why he was copied on the email to Etched, South states, "I wanted to keep it under privilege, just to be safe, and I recall you said you are getting this case." Unfortunately for Union Pacific, that is not how the attorney-client privilege works. The email string was not provided to counsel for the predominant purpose of seeking or obtaining legal advice. It involves Union Pacific planning its response to negative publicity. Accordingly, it is not protected by the attorney-client privilege. The court orders Union Pacific to produce UPPRIV-0000374 and similar emails related to public-image matters that do not seek legal advice.

### Communication-Strategy Documents

Union Pacific withheld a number of documents that pertain to its communication strategy and goals for engaging with the general public, elected officials, and the media, as well as the respective roles that Etched, CML Collective, Arcadis, the Union Pacific remediation team, the Union Pacific communications team, the Union Pacific public affairs team, and the Union Pacific legal team would have in implementing such strategy. For example, UPPRIV0000021 is a "Union Pacific Wichita Communication and Strategy Plan" discussing such things as Union Pacific's plan to engage with the community through "media relations," "digital social," "grassroots community engagement" and "public affairs and stakeholder relations"; as well as Union Pacific's "goals and objectives" to do such things as be transparent and demonstrate active commitment to the community. *See also* UPPRIV-0000018 to -20, UPPRIV-0000062 to -64, UPPRIV-0000354, UPPRIV-0000434, and UPPRIV-0000465. Neither these planning documents, nor the cover emails circulating them (which copy Union Pacific attorneys), seek or provide legal advice.

Nevertheless, Union Pacific argues they should be privileged because they "represent the cohesive planning of the Wichita project team regarding communicating with the public and

regulatory agencies in the context of environmental remediation and litigation," and the "legal team's participation in the project and these communications" is important because Union Pacific's "legal interests are at stake."  (ECF 141, at 5.)  Union Pacific's proposed blanket of protection spreads too far.  Union Pacific has presented no authority to support its claim that every communication copying an attorney when the client's legal interests are at stake is privileged. Rather, the law is that the "communication between a lawyer and client must relate to legal advice or strategy sought by the client."  *In re Grand Jury Proc.,* 616 F.3d 1172, 1182 (10th Cir. 2010). Attorney communications made during a lawsuit or administrative action pertaining only to varnishing a company's image, but not legal advice, are not privileged.  *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.,* 332 F.R.D. 131, 133 (S.D.N.Y. 2019) (holding communication strategy between in-house counsel and public-relations firm "to neutralize the climate of negative and often inaccurate media coverage in light of the legal and reputational risks facing the company," including talking points and media statements, related to "messaging" and not legal advice). Because Union Pacific's communication strategy—even though it involved attorneys—did not pertain to the seeking or giving of legal advice, related documents are not privileged.  The court orders Union Pacific to produce such documents.

### Draft Holding Statements

Relatedly, Union Pacific has asserted attorney-client privilege over draft holding statements, and emails circulating the same, prepared by Arcadis in anticipation of breaking news. These draft press releases relate to how Union Pacific would present (or "spin") a situation to the public.  Although they discuss events that could have a legal impact on Union Pacific—such as KDHE's corrective action decision ("CAD") and the results of KDHE's Wichita health study— Union Pacific has not demonstrated that the holding statements themselves have legal implications.

For example, UPPRIV-0000076 is an email from the Arcadis public affairs specialist to members of Union Pacific's public affairs, legal, communications, and environmental departments. It circulates "a draft holding statement for review, editing, and use when the CAD is signed." The original email notes that "[b]y adding a quote or two, this could easily become a full media statement." The draft statement itself discusses how Union Pacific strives to be a good neighbor and welcomes KDHE's cleanup plan. UPPRIV-0000073, UPPRIV-0000075, UPPRIV-0000079, UPPRIV-0000090, and UPPRIV-0000083 are responses from members of the Union Pacific team (but none from legal) suggesting edits. For example, in UPPRIV-00079, a member of Union Pacific's public affairs department suggests some wording changes on the draft, but states that he "defer[s] to our Comm's team for what ultimately works as a media statement."

In UPPRIV-0000082, the Arcadis consultant re-circulates an updated draft of the holding statement and includes a note to Union Pacific in-house attorney Rami Hanash that the statement is "ready for your review and input to make sure this is ready to go." This email certainly raises the possibility that Union Pacific was asking Hanash to review the statement to give legal, rather than public-relations, advice. But the burden was on Union Pacific to demonstrate the advice sought was legal. Union Pacific did not meet this burden. Rather, Union Pacific made only the conclusive statement that because *the CAD* has legal consequences "it was critical that counsel was involved in any statements made . . . in response to such plans." (ECF 141, at 8.) Union Pacific does not attempt to demonstrate that Union Pacific's *statement about* the CAD could have legal consequences. *Cf. Burton,* 200 F.R.D. at 669 (holding statements prepared by attorneys for CEO use at congressional hearings about smoking and health related only to public-image issues and did not reflect legal advice). Union Pacific also noted that the draft holding statements are labeled "Privileged & Confidential – Attorney Work Product – Prepared at Request of Counsel."

11

(ECF 141, at 8.)  But, of course, simply labeling a document as privileged does not make it so. Indeed, Arcadis appears to include this disclaimer on every email it sends, no matter the topic. Whether a document is *labeled* as privileged is not a factor in the test for whether it actually *is* privileged.  Union Pacific has not met its burden to demonstrate that it sought legal advice about draft holding statements.  The court sustains plaintiffs' challenges to Union Pacific's attorney-client-privilege assertion over these documents, and orders them produced.

### Direct Communications with Property Owners

Union Pacific also asserted attorney-client privilege over documents dated from September 2023 to May 2024 that pertain to its communications with property owners in the contaminated area.  These include draft letters and postcards to owners regarding groundwater-well testing and air sampling, draft "factsheets" and "frequently asked question" pamphlets to accompany the same, draft training materials and scripts for canvassers hired to talk to the owners, draft property-access agreements, and a decision matrix for communicating testing results to property owners. Union Pacific extends its privilege claim to email communications circulating and commenting on the same between Arcadis, Etched, and the Union Pacific communications, public affairs, and legal teams.

Where Union Pacific is seeking or receiving advice on these documents from its attorneys (as opposed to non-attorneys), that advice appears to be predominantly legal (rather than business or public-relations) advice.  For example, UPPRIV-0000014 (and the identical UPPRIV-0000213) is an email string that begins with an email from Arcadis addressed to Union Pacific's in-house attorney "and all," requesting review of a draft cover letter, draft factsheet, and draft access agreement to be provided owners of property in which Union Pacific sought to conduct air sampling.  The next email is from the attorney, commenting on the materials.  The final email in

the string is from South in Union Pacific's communications department, indicating the action Union Pacific is taking in response to the attorney's advice. These communications, as well as the draft documents themselves (e.g., UPPRIV-0000444), are privileged. The court denies plaintiffs' motion to the extent it seeks their production.

On the other hand, emails simply conveying the factual logistics of proposed communications, such as UPPRIV-0000301 and UPPRIV-0000302, which state when canvasser training would occur and who would draft the training outline, are not privileged because they do not request or convey legal advice. The same is true of meeting agendas that list the dates of upcoming sampling or mailing events. *See* UPPRIV-0000212, UPPRIV-0000224, UPPRIV-0000254, UPPRIV-0000357, UPPRIV-0000370 to -71, UPPRIV-0000375, and UPPRIV-0000464. The court orders Union Pacific to produce such logistical communications.

## Conclusion

In sum, having conducted an *in camera* review and applied the above-mentioned legal principles, the court finds that Union Pacific has met its burden to establish the communications identified on its privilege log were for the purpose of requesting or providing legal advice **other than** as to Privilege Log ID Nos. UPPRIV-0000018 to -23,  UPPRIV-0000038 to -39, UPPRIV-0000049, UPPRIV-0000057,  UPPRIV-0000060 to -61, UPPRIV-0000071, UPPRIV-0000073 to -77, UPPRIV-0000079 to -80, UPPRIV-0000082 to -84, UPPRIV-0000111 to -12, UPPRIV-0000114 to -17, UPPRIV-0000119, UPPRIV-0000127, UPPRIV-0000129, UPPRIV-0000134, UPPRIV-0000138 to -40, UPPRIV-0000142, UPPRIV-0000145, UPPRIV-0000147, UPPRIV-0000150, UPPRIV-0000159 to -60, UPPRIV-0000181 to -82, UPPRIV-0000184 to 85, UPPRIV-0000188,  UPPRIV-0000191,  UPPRIV-0000212,  UPPRIV-0000216,  UPPRIV-0000220, UPPRIV-0000224, UPPRIV-0000230 to -31, UPPRIV-0000234 to -45, UPPRIV-0000248 to -49,

UPPRIV-0000252, UPPRIV-0000254 to -56, UPPRIV-0000258 to -69, UPPRIV-0000273, UPPRIV-0000277, UPPRIV-0000280, UPPRIV-0000284, UPPRIV-0000286, UPPRIV-0000291, UPPRIV-0000294, UPPRIV-0000296, UPPRIV-0000301 to -03, UPPRIV-0000305 to -06, UPPRIV-0000308, UPPRIV-0000313, UPPRIV-0000330, UPPRIV-0000341, UPPRIV-0000354, UPPRIV-0000357 to -59, UPPRIV-0000362 to -63, UPPRIV-0000368, UPPRIV-0000370 to -71, UPPRIV-0000374 to -75, UPPRIV-0000392 to -99, UPPRIV-0000403 to -05, UPPRIV-0000407 to -09, UPPRIV-0000414 to -15, UPPRIV-0000417, UPPRIV-0000419, UPPRIV-0000421, UPPRIV-0000423, UPPRIV-0000431 to -34, UPPRIV-0000458 to -59  UPPRIV-0000461 to -65, UPPRIV-0000468, UPPRIV-0000473, UPPRIV-0000475 to -76, and UPPRIV-0000478.  As to the above-listed documents, Union Pacific's attorney-client-privilege objections are overruled, plaintiffs' motion to compel is granted, and Union Pacific is ordered to **produce** these documents.

In addition, the court finds that Union Pacific has supported its attorney-client-privilege objections only to *portions* of the following documents, which the court now orders Union Pacific to produce with the following **redactions**:

- UPPRIV-0000025: redact the "Legal" bullet point (and subpoint) under "Union Pacific Sections"

- UPPRIV-0000026: redact from the chart on the second page the row regarding "Legal"

- UPPRIV-0000035: redact the sentence in the email from Beth Whited beginning with "I just spoke with Jim"

- UPPRIV-0000045: redact the content of the email that was forwarded

- UPPRIV-0000054: redact from the second and third page the content of the two emails from Robert Blysma

- UPPRIV-0000183: redact on the first page the content of the email from Blysma; on the fourth page near the top, subparagraph (1) regarding Legal; and on the sixth page, the bullet point regarding "Legal" and subpoint (1)

- UPPRIV-0000222: redact from the second page the content of the email from Blysma

- UPPRIV-0000223: redact from the first page the content of the email from Blysma

- UPPRIV-0000233: redact the paragraph at the top of second page, starting with "Rami . . ."

- UPPRIV-0000314: redact from the first page the content of the email from Blysma

- UPPRIV-0000384: redact the sentence in the email from Beth Whited beginning with "I just spoke with Jim"

- UPPRIV-0000443: redact the sentence starting with "@RobertBlysma"

- UPPRIV-0000446: redact from the top of the second page until after the email from Hanash

### D.    Waiver: No Categorical Waiver Based on Consultant Involvement

The court now turns to plaintiffs' related argument that Union Pacific waived any attorney-client privilege that otherwise protected communications by copying outside public-relations consultants on emails.  Plaintiffs proclaim that "[c]opying third-parties from public relations firms like Etched Communications or CML Collective waived attorney-client privilege."  (ECF 134, at 4.)  The court again declines plaintiffs' invitation to take such a broad categorical approach to the public-relations communications.  As above, such an approach would contradict the law.

The general waiver rule is that when a client communicates with his or her attorney in the presence of a third party or voluntarily discloses privileged communications to a third party, the client waives the attorney-client privilege. *State ex rel. Stovall v. Meneley*, 22 P.3d 124, 141-42 (Kan. 2001).  Plaintiffs extrapolate from this general rule to the conclusion that, categorically, when Union Pacific involved a public-relations consultant in its confidential attorney communication, Union Pacific waived the privilege.  The fallacy in this argument is in not recognizing that companies like Union Pacific must act through authorized representatives.  *See* KAN. STAT. ANN. § 60-426(c)(1) (defining "client" to include "a corporation or other association that, directly or *through an authorized representative*" consults an attorney for the purpose of

15

securing legal advice) (emphasis added).  Courts in this district, applying Kansas privilege law and similar federal standards, have ruled that non-employee consultants can serve as the "client" facilitating legal advice on a company's behalf.  *See, e.g.*, *Pipeline Prods.*, 2019 WL 1900341, at *3 (holding that under KAN. STAT. ANN. § 60-426(c)(1)'s "plain terms," a corporation may authorize an independent consultant to secure legal advice on the corporation's behalf); *TP ST Acquisition*, 2022 WL 252001, at *4 (applying Kansas law and finding communications between an attorney and a consultant engaged to help client facilitate a business transaction were privileged);  *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *6 (D. Kan. June 13, 2017) (holding privilege not waived when three science consultants were copied on an email between client's employees and outside counsel); *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012) ("The presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses a commonality of interest with the client." (cleaned up)).  Thus, when an authorized public-relations consultant acts as a company's representative in communications necessary to provide the company legal advice, the consultant steps into the shoes of the client.  In other words, there is no third party in the picture to affect waiver; the communications are simply between a client (acting through a consultant) and its attorney.

By taking a broad, categorical approach to waiver, plaintiffs have misconstrued the law. The court will not overrule, on a wholesale basis, Union Pacific's attorney-client-privilege objections simply because a public-relations consultant is involved in the withheld communications.  Finally, to the extent plaintiffs intersperse their waiver argument with assertions that the communications primarily involved public-relations—rather than legal—matters, the court has considered those assertions above in its analysis of whether Union Pacific demonstrated the

communications were privileged to begin with.  The court does not order the production of any additional documents on the basis of waiver.

## III.  <u>Work-Product Protection</u>

The court next turns to plaintiffs' challenges to Union Pacific's work-product-based objections.  The court agrees with plaintiffs that Union Pacific has not met its burden to demonstrate the work-product doctrine applies to any of the communications at issue.

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).  Rule 26(b)(3) provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  FED. R. CIV. P. 26(b)(3).  "The work product standard has two components." *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).  First, "the document in question [must] be produced *because of* the anticipation of litigation, i.e., to prepare for litigation or for trial." *Id.* (emphasis added).  Second, the court analyzes whether the party's anticipation of litigation is reasonable. *Id.*  "The inchoate possibility, or even the likely chance of litigation, does not give rise to work product." *Id.*  Rather, "the threat of litigation must be 'real and imminent.'" *Id.*  Like the attorney-client privilege, the party asserting work-product protection bears the burden to demonstrate that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).  The party withholding documents as protected work product must produce a privilege log that demonstrates the elements of the privilege exist. *See*

*Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072, at *7 (D. Kan. Feb. 3, 2004).

Here, Union Pacific's privilege log does not describe any withheld document as being prepared in anticipation of litigation or trial. At most, the log descriptions mention "legal review." This is insufficient to establish that the primary motivating purpose behind the creation of the referenced documents was to prepare for imminent litigation or trial. *See Williams v. Sprint/United Mgmt. Co.,* 245 F.R.D. 660, 669 (D. Kan. 2007); *Johnson v. Kraft Foods N. Am., Inc.,* No. 05-2093-JWL-DJW, 2007 WL 2219278, at *6 (D. Kan. July 30, 2007) ("[T]he Court notes that there simply is no information in the privilege log (or in the briefing associated with this Motion) to establish that the purpose of the meeting between Legal and Human Resources was to discuss litigation or anticipated litigation."); *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.,* No. 05-2433-JWL-DJW, 2007 WL 1347754, at *5 (D. Kan. May 8, 2007) (holding "blanket claim that documents were prepared in anticipation of litigation is insufficient to establish work product protection" where responding party "failed to establish the documents in question were created, collected or considered under a real and imminent threat of actually litigating [a] claim"); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc*., No. 05CV2192-JWL-DJW, 2008 WL 2548129, at *6-*7 (D. Kan. June 23, 2008) (overruling work-product objection because plaintiff, in its privilege log, relied only on conclusory assertions that the documents were created in anticipation of litigation and did not provide sufficient information for the court to determine whether the elements of privilege were satisfied). Nor did Union Pacific file an affidavit or any other evidence in response to plaintiffs' motion to compel that would establish the motivating purpose behind the preparation of the documents. Thus, Union Pacific has not met its burden to establish the work-product doctrine applies.

The court therefore overrules Union Pacific's work-product objections to producing documents. Of course, to the extent the court has found certain documents protected by the attorney-client privilege, Union Pacific need not produce them. But any documents not subject to the attorney-client privilege (as set forth in the Section II(C) Conclusion above) are not saved from production by Union Pacific's unsupported work-product objection, and Union Pacific must produce them. Plaintiffs' motion is granted in this regard.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel (ECF 133) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that Union Pacific must produce the documents set forth in the Section II(C) Conclusion to plaintiffs by **October 7, 2025**.

Dated September 29, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge