**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| FAYE BLACK, et. al, | |
| Plaintiffs, | |
| v. | Case No. 6:23-cv-1218-EFM-ADM |
| UNION PACIFIC RAILROAD COMPANY, | (Oral Argument Requested) |
| Defendant. | |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT WITNESSES PRESENTED IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Defendant Union Pacific Railroad Company ("Union Pacific") respectfully moves to exclude under Fed. R. Evid. 702 the opinions of Plaintiffs' designated experts Dr. W. Richard Laton, Dr. Mark Kram, Frank S. Anastasi, P.G., Thomas E. Hatton, and Dr. Jeffrey E. Zabel from consideration in support of Plaintiffs' anticipated Motion for Class Certification, for the reasons identified below and further explained in separate memoranda addressing each of the five expert witnesses:

1. Plaintiffs Faye Black and Jeannine Tolson bring this action on behalf of themselves and a putative class, alleging that trichloroethylene ("TCE") contamination associated with property now owned by Union Pacific has migrated in groundwater under their homes in Wichita ("the 29th and Grove Site") and resulted in an alleged need to mitigate potential vapor intrusion and diminished property value. Amended Complaint ("Compl."), Dkt. 54, ¶ 1.

1

2. Pursuant to a 2002 consent order, Union Pacific has been working with the Kansas Department of Health and Environment ("KDHE") to address TCE at the 29th and Grove Site. KDHE has overseen and approved various remedial actions at the Site.

3. To certify a class action pursuant to Fed. R. Civ. P. 23, Plaintiffs must prove that the proposed class should be certified by satisfying all requirements of Rule 23(a) and at least one provision of Rule 23(b). *See, e.g.*, *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1173 (10th Cir. 2023). Part of the class certification inquiry under Rule 23(a) is whether "the representative plaintiff[s] possess the same interests and suffer the same injuries as the proposed class members." *Eatinger v. BP America Prod. Co.*, 271 F.R.D. 253, 259-60 (D. Kan. 2010). In addition, to certify a class for monetary damages under Rule 23(b)(3), Plaintiffs must demonstrate that "common questions subject to generalized, class[-]wide proof predominate over individual questions." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 838 (10th Cir. 2023). This evaluation includes whether damages can be established for class members on a class-wide basis. *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 166 (D. Kan. 1996) (where computation of damages will require separate mini-trials, individualized damage determination predominates over common issues).

4. Plaintiffs are required to file their motion for class certification by September 30, 2025. Dkt. 162. On June 13, 2025, Plaintiffs designated five expert witnesses in support of class certification:

    a. Dr. W. Richard Laton (hydrogeology). Dr. Laton submitted a report dated June 13, 2025, in which he presents his characterization of the location of residential properties relative to alleged groundwater plumes of TCE exceeding certain specific concentrations. He was deposed on August 29, 2025;

    b. Dr. Mark Kram (vapor intrusion). Dr. Kram submitted a report dated June 13, 2025, in which he provides various opinions relating to alleged vapor intrusion risks and recommends preemptive mitigation for all residential properties within the proposed class area. He was deposed on August 28, 2025;

    c. Frank S. Anastasi, P.G. (groundwater contamination). Mr. Anastasi submitted a report dated June 12, 2025, in which he provides his characterization of the bounds of the appropriate class area and Union Pacific's remediation efforts. He was deposed on August 26, 2025;

    d. Thomas E. Hatton (vapor intrusion mitigation cost estimation). Mr. Hatton submitted a report dated May 2, 2025, in which he provides rough estimates of the projected costs to design and install certain types of vapor intrusion mitigation systems at certain types of residential properties. Mr. Hatton was deposed on August 25, 2025; and

    e. Dr. Jeffrey E. Zabel (real estate market value). Dr. Zabel submitted a report dated June 13, 2025, in which he asserts that diminution in value may have occurred within the proposed class area. He was deposed on August 21, 2025.

5. Union Pacific understands that Plaintiffs offer the testimony of these proposed expert witnesses—which is interrelated to one another as explained below—in support of Plaintiffs' efforts to meet their class certification burden under Rule 23.[1][2]

---

[1] Plaintiffs have not yet filed their class certification motion prior to this filing, as the deadline for both sets of briefing is September 30, 2025. Dkt. 162.

[2] Several of the opinions and other statements offered by Plaintiffs' proposed expert witnesses relate to alleged acts and omissions by Union Pacific that are more appropriately addressed in any future merits phase. UP disputes this merits testimony, but because those conclusions are not relevant to class certification, UP has not submitted opposing expert testimony and does not address those merits opinions in this Motion. UP will substantiate its disputes with any merits opinions if necessary after the class certification phase.

6. In recognition of their burden to demonstrate that all applicable requirements of Rule 23 have been satisfied, Plaintiffs have generally alleged that all persons who have owned residential properties since November 2022 within their proposed class area have suffered a common injury and are entitled to common mitigation or damages. The following expert testimony appears to be directed to Plaintiffs' common injury allegations and proposed definition of the class area, including the alleged risk screening level for TCE in groundwater and indoor air, identification of residential properties allegedly at risk associated with those levels, and a new proposed definition and scope of a class area (compared with the class area initially defined in the Amended Complaint, ¶ 75) based on these identified properties ("Class Area"):

    a. Dr. Kram opines that any residential property that overlies groundwater with TCE measured at or above 1.2 ug/L faces a common "threat" from potential TCE vapor intrusion. Kram Dep. 111:3-7 ("[T]he implication is that all of these folks exceed a risk screening level. Therefore, they have that in common and they are at risk of potentially being exposed to vapor intrusion."). Dr. Kram relies entirely on Dr. Laton for purposes of assessing how many and which specific residential properties are allegedly within the geographic area overlying groundwater measured at or above 1.2 µg/L of TCE. Dr. Kram offers no independent opinion regarding the location of residential properties or associated concentrations. *See* Kram Dep. 179:2-18.

    b. For his part, Dr. Laton was instructed by Dr. Kram that the appropriate groundwater TCE concentration for determining vapor intrusion risks to indoor air was 1.2 µg/L. *See* Laton Dep. 14:19-22 (explaining that the 1.2 µg/L value was "provided to [Dr. Laton] by Dr. Kram as a lower limit for what [Dr. Kram] wanted mapped"). Dr.

4

       Laton then developed contours primarily using historical maximum groundwater sampling results to map a geographic area that he opined represented an area overlying groundwater TCE concentrations of 1.2 µg/L. Dr. Laton offers no independent opinion regarding the applicability of the risk level utilized by Dr. Kram. *See* Laton Dep. 15:10-14 (emphasizing that the selection of the 1.2 µg/L concentration threshold "was outside [his] scope for this particular project").

   c.  Mr. Anastasi purported to describe the entire area identified by Dr. Laton as overlying groundwater TCE concentrations of 1.2 µg/L as "contaminated" and making up the "Class Area" for purposes of class certification. *See* Anastasi Report 15. Mr. Anastasi uniformly identified properties as "contaminated" and within the Class Area even though the groundwater sampling data Dr. Laton relied on did not include measurements for all residential properties or even some large areas within the contour, and many testing results Dr. Laton relied on to include homes within the contour did not actually detect TCE. *See* Anastasi Dep. 112:13-16 (discussing Dr. Laton's treatment of "non-detect" groundwater measurements).

7.    The following expert testimony appears to be directed to Plaintiffs' allegations regarding class-wide relief or damages, including the appropriateness of preemptive vapor intrusion mitigation, the estimated cost of such mitigation, and any diminution in property values:

   a.  Mr. Hatton conducted a limited inspection of the two named Plaintiffs' homes and developed a "rough" estimate of design and installation costs for a presumed mitigation approach using sub-slab depressurization. Hatton Dep. 66:6-14. Mr. Hatton then suggested that his estimates of these two homes could be extrapolated to other houses of similar construction type (but not all residential units) in what he

    understood to be the class area, asserting that the named Plaintiffs' homes were "representative" of other similarly constructed homes based on a "drive-by" neighborhood survey with no consideration of specific property characteristics. *See* Hatton Report 5; Hatton Dep. 76:3-9.

b. Dr. Kram asserts that all properties overlying 1.2 µg/L as identified by Dr. Laton should be subject to "preemptive mitigation" through installation of a sub-slab depressurization vapor intrusion mitigation system. Kram Report 2; *see also* Kram Dep. 166:17-19 ("[I]t's my opinion that instead of evaluating all those homes, go right to mitigation."). Dr. Kram relies on a third-party estimate providing a preliminary, high-level mitigation budget for ten generic residential properties, without any consideration of property-specific characteristics, and opines that those estimates can be extrapolated to all 2,319 properties identified by Dr. Laton, with the total "preemptive mitigation" cost exceeding $500 million. *See* Kram Report Table 2, 85; *see also* Kram Dep. 173:24-25 (acknowledging that third-party preliminary budget was merely "a projection based on what they might anticipate implementing"). Dr. Kram states that he did not use cost estimates provided by Mr. Hatton in developing Kram's cost estimates, but instead referenced Hatton's estimates as a "cross-check." Kram Dep. 107:9-11; *id.* at 175:4-7 ("So in the end, [Mr. Hatton's] numbers served as a sort of cross check.").

c. Dr. Zabel was asked "to provide an opinion regarding appropriate estimates of market value for proposed class member properties in this matter," Zabel Report 1, but did not actually calculate any alleged damages for any property (including those owned by the two named Plaintiffs) and did not explain how he will apply any

6

valuation methods to establish class-wide damages.  *See* Zabel Dep. 93:11-14 (acknowledging he did not prepare a valuation model for this case).

8. Plaintiffs, as the party propounding the expert testimony, must demonstrate that the expert testimony is reliable and relevant (*i.e.,* that it is helpful to the trier of fact) with respect to class certification issues.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Plaintiffs have failed to meet that burden for each of their five designated experts, both because the testimony fails to meet the requirements of Rule 702 and to the extent that certain of the experts' opinions are based on other experts' testimony that also fails to meet the requirements of Rule702.

9. For the reasons stated above and further explained in the individual memoranda for each proposed expert, Union Pacific respectfully requests that the Court exclude, and not consider, the opinions and testimony of each of Plaintiffs' proposed experts (Laton, Kram, Anastasi, Hatton, and Zabel), including opinions and testimony reflected in their expert reports, in their depositions, or otherwise offered in support of Plaintiffs' anticipated motion for class certification.  This motion is accompanied by Exhibits 1-25, which include the expert reports and depositions of Plaintiffs' expert witnesses.

Dated: September 30, 2025

Respectfully submitted,

KNIGHT NICASTRO MACKAY, LLC

By: */s/ Erik H. Nelson*
Erik H. Nelson
Kansas Bar No. 24909
nelson@knightnicastro.com
304 W. 10th Street
Kansas City, MO 64105
(816) 396-0161
(816) 396-6233 (fax)

8

          BAKER BOTTS L.L.P.

              Kevin T. Jacobs (lead attorney)
              Texas Bar No. 24012893
              kevin.jacobs@bakerbotts.com
              Hannah Roskey
              Texas Bar No. 24118237
              hannah.roskey@bakerbotts.com
              910 Louisiana Street
              Houston, Texas 77002
              (713) 229-1947
              (713) 229-7847 (fax)

              Kent Mayo (lead attorney)
              Washington, D.C. Bar No. 452842
              kent.mayo@bakerbotts.com
              Martha Thomsen
              Washington, D.C. Bar No. 1016402
              martha.thomsen@bakerbotts.com
              700 K Street, N.W.
              Washington, D.C. 20001
              (202) 639-7700
              (202) 639-7890 (fax)

          SHOOK, HARDY & BACON LLP

              Robert R. Simpson
              Connecticut Bar No. 409048
              rsimpson@shb.com
              City Place I
              Hartford, CT 06103
              (850) 515-8901
              (850) 515-8911 (fax)

              *Attorneys for Defendant*
              *Union Pacific Railroad Company*

## **CERTIFICATE OF SERVICE**

This is to certify that on this 30th day of September, 2025, I caused a copy of the foregoing to be served upon all parties via email.

*/s/ Erik H. Nelson*
Erik H. Nelson
