IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FAYE BLACK, et. al, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | Case No. 6:23-cv-1218-EFM-ADM <br><br> (Oral Argument Requested) |

**UNION PACIFIC RAILROAD COMPANY'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE EXPERT TESTIMONY OF MARK KRAM, Ph.D**

## I.   ARGUMENT

The expert admissibility burden in this Circuit is clear: "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible" under Rule 702. *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Plaintiff does not carry that burden. Plaintiff attempts to recast regulatory screening tools as liability-driving risk thresholds and to excuse Dr. Kram's failure to perform site-specific analysis, instead of demonstrating (1) reliable scientific methods, (2) reliable application of those methods, and (3) relevance to the certification issues in dispute.

Dr. Kram's core opinion on risk and mitigation is subject to multiple disqualifying flaws in the methodology and assumptions under Rule 702. To summarize, Dr. Kram's methodology:

- depends on a "conservative" *groundwater* screening level (1.2 µg/L) that its promulgator, the EPA, states is not a response or action level;

- presumes that alleged exceedances of Dr. Kram's self-selected screening level of 1.2 ug/L for *groundwater* can be deemed, via application of an attenuation factor, to establish potential exposure and unacceptable risk of harm to all class members from *vapor intrusion*, and that, therefore, vapor intrusion mitigation should be *preemptively* required at all homes without *any* individual indoor air sampling results evidencing actual exposure or risk requiring mitigation and despite test results indicating a lack of such risk;

- uses his chosen attenuation factor to allege risk even though EPA cautions that such factors cannot be used to predict indoor air conditions at individual buildings; and

- improperly adopts Dr. Laton's plume map (which does not show current conditions) without independently validating it.

Accordingly, Dr. Kram's opinions are unreliable and irrelevant and should be excluded.

### A.   Dr. Kram's "Risk" Methodology Is Unreliable Because He Relies Solely on Regulatory Groundwater Screening Levels to Presume Unacceptable Potential Vapor Intrusion Health Risks and Uniform Preemptive Mitigation.

Dr. Kram's "methodology" *presumes* that *unacceptable* vapor intrusion health risks exist

based solely on alleged exceedances of his chosen screening level[1] for *groundwater*, without any evidence of *actual indoor air exceedances*. *See* Pl's. Response in Opposition to Motion to Exclude Kram ("Resp.") 8, 10 (Dkt. 199). Dr. Kram relies on an indoor screening level of 0.48 μg/m$^3$—which is designed to indicate a "one per million lifetime cancer risk"—to justify preemptive mitigation across the entire proposed class area.[2] Plaintiff fails to demonstrate how this approach can reliably determine risk of *classwide exposure to unacceptable levels of vapor intrusion*.

First, Dr. Kram's presumption that exceedance of the 1.2 μg/L groundwater screening level can be translated directly to unacceptable health risks to proposed class members is not supported by his cited guidance. EPA expressly states that the risk screening levels used by Dr. Kram should not be used as response action or cleanup levels, even for groundwater. *See* USEPA, OSWER Technical Guide ("OSWER Guide") 106 (Dkt. 187-18).[3] In other words, screening levels are set conservatively for public health protection, so a site-specific exceedance does not demonstrate a level of risk requiring a mitigation response. Courts in this Circuit have recognized this critical gap between regulatory screening levels and actual risk of harm required for tort liability:

> Regulatory screening levels, action levels, and standards do not identify real or actual risks to human health. Rather, these regulations are designed to protect the public health by identifying the level of chemical exposure at which there is no threat of harm with a large margin of error. ***Exceedance of regulatory screening levels, action levels, or standards therefore does not demonstrate a real or actual risk to human health.***

*Hall v. ConocoPhillips*, 248 F. Supp. 3d 1177, 1186 (W.D. Okla. 2017) (emphasis added), *aff'd*

---

[1] Dr. Kram relies on EPA screening levels rather than the applicable Kansas risk standards that have been used at the Site in accordance with industry standard and KDHE approval. *See* Mot. to Exclude Dr. Kram 5-8 (Dkt. 191).

[2] The EPA screening level of 0.48 μg/m$^3$ is based on an attenuation factor of 1E-06, which EPA recognizes as a "conservative generic value" and corresponds to a "one-per million lifetime cancer risk." OSWER Guide 99, 112 (Dkt. 187-18).

[3] *See also* U.S. EPA, REGIONAL SCREENING LEVELS, https://www.epa.gov/risk/regional-screening-levels-rsls (last accessed Sept. 30, 2025) ("The [risk screening levels] are not cleanup standards and should not be used as cleanup levels.").

*sub nom. Hall v. Conoco Inc.*, 886 F.3d 1308 (10th Cir. 2018) (quoting *Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colo. v. Brown Group Retail, Inc.*, 768 F. Supp. 2d 1092, 1105 (D. Colo. 2011)).

Second, Dr. Kram's reliance on *groundwater* screening levels to assert unacceptable indoor air health risks from potential *vapor intrusion* further widens his analytical gap. The proposed class members have not alleged any harm from exposure to groundwater. Thus, before a proposed class member could have any actual exposure risk, any TCE in groundwater must (1) volatize (2) migrate through the both the subsurface soil and any foundation or crawl space and (3) ultimately reach the indoor air in a living space. Rather than investigate those pathways, which vary widely based on soil conditions and property characteristics, *see* UP's Class Certification Response 16-18 (Dkt. 200), Dr. Kram relies solely on EPA's generic "attenuation factors" to "relate measured subsurface concentrations to potential indoor air levels." Resp. 3. These attenuation factors are a regulatory proxy for the potential movement of TCE from groundwater to indoor air, but like screening levels, are set using conservative assumptions. Accordingly, these factors cannot reliably support Dr. Kram's presumption, based solely on assumed groundwater concentrations, of *actual* exposure or unacceptable potential vapor intrusion health risks in tort litigation. *See Coleman v. Union Carbide Corp.*, 2013 WL 5461855, at *24 (S.D.W. Va. Sept. 30, 2013) (finding expert testimony based on regulatory standards unreliable for determining whether a class of individuals suffered significant exposure to a proven hazardous substance).

Third, Dr. Kram's uniform presumption of unacceptable vapor intrusion health risks is contrary to the actual indoor air sampling data for the proposed class area. During 2023-2025, Union Pacific's consultant Arcadis requested access to test indoor air for over 400 residences in the area located above the highest groundwater concentrations for TCE (which substantially exceeded 1.2 µg/L). *See* Arcadis VI Report at tbl. 4 (Dkt. 200-10); Bob Kick Decl. ¶ 7 (Dkt. 200-

3

3). Only 24 residences granted access for testing, which was completed using KDHE-approved procedures: 23 of 24 registered non-detect results and/or results below KDHE's risk level for TCE in indoor air of 2.09 µg/m$^3$, and the remaining home detected only low levels in a non-living storage space. Dkt. 200-10 at tbl. 4. Indeed, the indoor air at eleven of these homes was measured below the even lower TCE level proposed by Plaintiff of 0.48 µg/m$^3$. *Id.* These results underscore the lack of reliability in Dr. Kram's presumed risk "methodology." *See Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (affirming exclusion of expert testimony as unreliable based on "analytical gap in [experts'] theory of causation").[4]

Fourth, Dr. Kram's follow-on conclusion that uniform "preemptive mitigation" should be implemented classwide "to protect occupants from continued exposure," Resp. 4, is similarly flawed. Plaintiff incorrectly asserts that EPA's OSWER Guide supports preemptive mitigation, *see id*. at 15, but EPA did not develop that Guide to inform tort litigation damage theories or valuations under Kansas common law or statute. And Plaintiff cites only to language that includes a threshold condition that "[i]ndoor air has been sampled and analyzed for a few homes and found to exhibit concentrations that pose an unacceptable human health risk." OSWER Guide 138 (Dkt. 187-18). Here, Plaintiff has shown no evidence of actual concentrations posing unacceptable risks in the proposed class area. Moreover, Dr. Kram identified no comparable instances where preemptive mitigation was undertaken across thousands of homes without testing to confirm actual vapor intrusion risk. *See* Kram Dep. 168:22-169:12 (Dkt.187-7).[5] Dr. Kram's attempt to do so here

---

[4] Plaintiff asks this Court to ignore these case-specific flaws because Dr. Kram's testimony was admitted in a separate case in California. *See* Resp. 5 (citing *Behar v. Northrop Grumman Corp.*, 2024 WL 4004052 (C.D. Cal. July 1, 2024)). However, the Tenth Circuit has clearly stated that a party cannot "assume that his expert's testimony would be admitted because other courts had allowed it in" and must "carry his burden of demonstrating [] admissibility … in this particular case." *U.S. v. Nacchio*, 555 F.3d at 1258. Plaintiff made no such showing here.

[5] Plaintiff's, and Dr. Kram's, reference to "the real-world RACER program" is inapposite here. As Plaintiff concedes, that voluntary program was "outside the context of litigation" and required property-specific groundwater or soil vapor sampling results for each home that do not exist here. *See* Resp. 16.

4

based solely on the series of unsupported presumptions described above is wholly unreliable. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) ("[A]ny step that renders the expert's analysis unreliable … renders the expert's testimony inadmissible.").

### B. Dr. Kram Improperly Adopted Dr. Laton's Flawed Map.

Plaintiff relies on Dr. Kram's opinions to claim that unacceptable potential vapor intrusion risk *currently* exists classwide, meaning he must be able to identify the *current* presence of TCE in groundwater above 1.2 µg/L below specific homes. Rather than conducting his own analysis, Dr. Kram "simply accepted" Dr. Laton's plume map. Resp. 11. However, Dr. Kram did not verify Dr. Laton's "historic-maximum" methodology, Kram Dep. 111:13-23, and misunderstands it to the extent he claims it reflects *current* groundwater concentrations. *See* Mot. to Exclude Dr. Laton (Dkt. 190). Dr. Laton's exclusion would necessarily preclude Dr. Kram, but even if Dr. Laton survives, Dr. Kram's failure to verify Dr. Laton's opinion further renders Dr. Kram's own approach unreliable and inadmissible. *See Assessment Techs. Inst., LLC v. Parkes*, 2021 WL 2530977, at *5 (D. Kan. June 21, 2021) (citations omitted) (stating that an expert cannot rely on another expert's opinion if they are "unfamiliar with the methods and reasons" underlying the opinion).

### C. Dr. Kram's Opinions on Mitigation Costs Are Irrelevant.

Plaintiff confirms she "did not seek to certify the damages in this case pursuant to Dr. Kram's cost estimate." Resp. 18. Accordingly, and without further analysis, Dr. Kram's opinions on mitigation costs should be excluded as irrelevant to the class certification inquiry.

### II. CONCLUSION

Union Pacific respectfully requests that the Court exclude the opinions of Dr. Mark Kram.

5

Dated: November 25, 2025                    Respectfully submitted,

                                                                 KNIGHT NICASTRO MACKAY, LLC

                                                                 By: */s/ Erik H. Nelson*
                                                                      Erik H. Nelson
                                                                      Kansas Bar No. 24909
                                                                     nelson@knightnicastro.com
                                                                     304 W. 10th Street
                                                                     Kansas City, MO 64105
                                                                     (816) 396-0161
                                                                     (816) 396-6233 (fax)

                                                BAKER BOTTS L.L.P.

                                                                     Kevin T. Jacobs (lead attorney)
                                                                     Texas Bar No. 24012893
                                                                     kevin.jacobs@bakerbotts.com
                                                                     Hannah Roskey
                                                                     Texas Bar No. 24118237
                                                                     hannah.roskey@bakerbotts.com
                                                                     910 Louisiana Street
                                                                     Houston, Texas 77002
                                                                     (713) 229-1947
                                                                     (713) 229-7847 (fax)

                                                                     Kent Mayo (lead attorney)
                                                                   Washington, D.C. Bar No. 452842
                                                                   kent.mayo@bakerbotts.com
                                                                   Martha Thomsen
                                                                   Washington, D.C. Bar No. 1016402
                                                                   martha.thomsen@bakerbotts.com
                                                                   700 K Street, N.W.
                                                                   Washington, D.C. 20001
                                                                   (202) 639-7700
                                                                   (202) 639-7890 (fax)

SHOOK, HARDY & BACON LLP

Robert R. Simpson
Connecticut Bar No. 409048
rsimpson@shb.com
City Place I
Hartford, CT 06103
(850) 515-8901
(850) 515-8911 (fax)

*Attorneys for Defendant*
*Union Pacific Railroad Company*

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of November, 2025, I caused a copy of the foregoing to be served upon all parties via the Court's electronic filing system.

*/s/ Erik H. Nelson*
Erik H. Nelson
