IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FAYE BLACK, et. al, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | Case No. 6:23-cv-1218-EFM-ADM <br><br> (Oral Argument Requested) |

**UNION PACIFIC RAILROAD COMPANY'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE EXPERT TESTIMONY OF DR. W. RICHARD LATON**

## I. ARGUMENT

Plaintiff relies on Dr. Laton's report and his 1.2 µg/L trichloroethylene ("TCE") contour as a "proposed class area" map purportedly representing current TCE groundwater concentrations. Class Cert. Mot. 1 (Dkt. 184). But Dr. Laton's data and methodology suffer from fundamental *Daubert* defects that Plaintiff's response cannot cure simply by (mis)characterizing his analysis as "scientifically conservative." Dr. Laton's methodology contains compounding errors—(1) incorporating contamination from other sources, (2) treating non-detect results as proof of contamination, (3) relying on historic maximums unrelated to present conditions, and (4) ignoring well depth and vertical variability—that untether his supposed 1.2 µg/L TCE contour from actual groundwater (or vapor intrusion) conditions. His approach incorporates data that should otherwise be excluded and extends the purported class area to encompass properties above groundwater where no TCE was ever actually detected. These errors render Dr. Laton's opinions unreliable and unhelpful to the Court, and Plaintiff has failed to demonstrate that his testimony meets the requirements of Federal Rule of Evidence 702. Dr. Laton's opinions must be excluded.

### A. Dr. Laton's approach wholly fails to address known alternative TCE sources.

Plaintiff's attempt to rehabilitate Dr. Laton's failure to address alternative sources of TCE in the vicinity of the 29th and Grove site (the "Site") falls woefully short. Plaintiff's Response in Opposition to Motion to Exclude Dr. Laton ("Resp.") 11-12 (Dkt. 196). Although Dr. Laton admits in both his report and his deposition that alternative sources of contamination exist,[1] he nevertheless attributed all TCE contamination within his contours to the Site without undertaking *any* analysis in his report to exclude the other sources. When asked at his deposition whether he excluded any data if it could have been attributable to another source, Dr. Laton testified that he

---

[1] Export Report of Dr. Laton ("Laton Rep.") 28 (Dkt. 200-32), Deposition Transcript of Dr. Laton ("Laton Dep.") 78:15-21 (Dkt. 187-9).

1

"did not exclude anything" and "used all the data, regardless." Laton Dep. 77:9-10, 134:21-23 (Dkt. 187-9).

Plaintiff belatedly attempts a post hoc, unsupported justification for Dr. Laton's glaring omission: that he stated in deposition that he excluded the dry cleaner sources because they predominantly released perchloroethylene ("PCE") and, although PCE degrades to TCE, such degradation would be "very, very, slow." Resp. 12 (Dkt. 196) (citing Laton Dep. 77-78 (Dkt. 187-9)). Nowhere does this explanation appear in his report; nowhere in his report or his deposition does he provide a citation or basis for this statement beyond asserting that "all the consultants" say degradation is slow. Laton Dep. 78:2-14 (Dkt. 187-9). *But when pressed in his deposition*, Dr. Laton acknowledged (1) "there's too many variables out there" that he had not assessed to determine if PCE could have degraded over a 30- to 40-year timeframe and (2) he "did not try to distinguish" the different sources but took the TCE "as is." *Id*. 78:20-25. That is, he assigned all TCE to the Site without undertaking any assessment of whether other sources—like the dry cleaners—were responsible for some or all of the TCE at individual properties within his contours. This omission is grounds for exclusion under Rule 702. *See e.g.*, *Roe v. FCA US LLC*, 42 F.4th 1175 (10th Cir. 2022) (clear "analytical gap" in causation theory warrants exclusion); *see also Michaels v. Avitech, Inc.*, 202 F.3d 746, 753-54 (5th Cir. 2000) (*Daubert* likely precludes testimony when expert "made no attempt to rule out the numerous other sources of contamination[.]").[2]

---

[2] Likewise, Plaintiff's assertion that Dr. Laton ruled out the nearby Superfund site directly contradicts how Dr. Laton actually used the data. Plaintiff asserts that Dr. Laton identified a "clear divide" between "two plumes along Chisholm Creek 'with a row of non-detects' separating them." Resp. 12 (Dkt. 196). But this sparse reasoning suffers from another fatal defect: *Dr. Laton treated these non-detect values as detections <u>and</u> assigned them to the Site*. *See* Laton Rep. fig. 22 (Dkt. 200-32) (showing that Dr. Laton drew the 1.2 μg/L contour out to the west along the line of the referenced non-detect results). Plaintiff cannot have it both ways: first asserting that a clear gap in TCE contamination exists <u>and</u> second treating an area with no evidence of TCE as contaminated by the Site. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citing *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir.1984)) (expert testimony should be excluded when based on contradictory assumptions).

2

### B. Dr. Laton's methodology is inherently flawed because he treats non-detect results, where no TCE was actually detected, as proof that TCE is present.

A "non-detect" result means that TCE was not detected in a sample above the laboratory reporting limit—in other words, there is no detection of TCE in that sample. Memorandum in Support of Motion to Exclude Dr. Laton ("Laton Memo") 12 (Dkt. 190). Dr. Laton, however, treats non-detect results as affirmative proof of contamination and included properties above groundwater with non-detect results (and that therefore have never registered any actual TCE contamination) within his contour. *Id.* 12-14. This contradictory methodology fails the reliability and relevance requirements under *Daubert* and Rule 702 thresholds. *See e.g.*, *Cochrane v. Schneider Nat. Carriers, Inc.*, 980 F. Supp. 374 (D. Kan. 1997) (rejecting expert testimony that was based on "unjustified assumptions" as unreliable and irrelevant).

Plaintiff argues that assigning a TCE value of half the detection limit to non-detect results for purposes of mapping the contours is a method "commonly used among hydrogeologists and backed by EPA" and was an "appropriate, conservative approach in this mapping context." Resp. 13 (Dkt. 196). To support this position, Plaintiff quotes U.S. Environmental Protection Agency ("EPA") 2009 guidance for the principle that "substituting half the RL [reporting limit] for each non-detect is not likely to substantially impact the results of statistical testing." EPA, *Statistical Analysis of Groundwater Monitoring Data at RCRA Facilities: Unified Guidance* (Mar. 2009) ("EPA Guidance") 6-36;[3] Resp. 13 (Dkt. 196).

But this guidance does not support Dr. Laton's interpretation in the context of his opinions. The document is intended to "offer[] guidance . . . in selecting, using, and interpreting appropriate statistical methods for evaluating data under . . . *groundwater monitoring regulations*." EPA Guidance 1-1 (emphasis added). Its purpose is to guide statistical analysis—and, in the case of

---

[3] *Available at* https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10055GQ.TXT.

non-detect values, to avoid "zeros" in *averaging calculations*. But Dr. Laton is not averaging—he is presuming an actual value at a physical location where there is no detection of TCE in a transparent attempt to advocate for an enlarged proposed class area. This use cannot be squared with the guidance, which also specifically warns against value substitution in a variety of circumstances, *id.* 6-36. Non-detect values certainly cannot be used to demonstrate specific concentration levels or potential vapor intrusion risks for specific residences.

### C. Dr. Laton's methodology is unreliable because he mapped the maximum concentrations of TCE without regard to data age or later remediation.

Plaintiff likewise fails to meet her burden to show that Dr. Laton's methodology based on use of historic maximum concentrations meets the requirements of Rule 702. Plaintiff's characterization of this methodology as a "conservative approach" necessary to account for "dynamic conditions," Resp. 9 (Dkt. 196), ignores Plaintiff's claimed purpose of Dr. Laton's contour, which is to show the area of *present* contamination that represents a *present* risk of vapor intrusion to support the purported class definition. Historic samples, from as early as 1991, cannot be used for this purpose and cannot prove current presence of TCE. By relying on only the highest values over time, Dr. Laton mixes sampling results collected from sampling events over thirty years and ignores the TCE remediation efforts that have lowered groundwater levels. Laton Rep. 10, 20-22 (Dkt. 200-32). The result is a "phantom plume" that is not representative of present concentration levels and does not constitute a methodologically sound basis to assess present risk and the proposed class. Laton Memo. 9-10 (Dkt. 190).

### D. Dr. Laton's methodology is unreliable because he weighs shallow and deep well samples equally even though vapor intrusion is a uniquely surface risk.

Dr. Laton does not account for well depth in his contours and instead "used all the data that was available to [him] regardless of depth." Laton Dep. 81:15-16 (Dkt. 187-9); Laton Memo. 10-11 (Dkt. 190). In her response, Plaintiff attempts to characterize data from wells at varying depths

4

as essential to "recognize[] the dynamic nature of the groundwater system underlying the class area" and based on a common practice by hydrogeologists to "use empirical thresholds such as EPA's Maximum Contaminant Level (MCL) based on empirical data as a mapping threshold for *groundwater pollution plume, regardless of date or depth*[.]" Resp. 9 (Dkt. 196), citing Laton Rep. 30-34 (Dkt. 200-32) (emphasis partially added).

Two significant methodological problems pervade this response: first, Dr. Laton does not actually provide any citation or basis that this approach is used by other hydrogeologists; he merely states that to "conservative[ly]" account for "variation[s]" he used all samples regardless of depth. *Id.* 33. Second, Dr. Laton's approach ignores the fact that vapor intrusion is a uniquely <u>surface</u> risk: the risk derives from TCE near the surface that might volatize and escape into indoor air. Compl., ¶¶ 24-26 (Dkt. 54). This is not a groundwater contamination case where drinking water wells that could be dropped at any depth would present a drinking water exposure route. By ignoring sample depth, Dr. Laton treats deep samples as if they pose an indoor air risk without any pathway analysis or demonstration of an actual connection or risk to indoor air.

### E. Dr. Laton's mapping is wholly dependent on Dr. Kram's opinion regarding the 1.2 µg/L TCE concentration threshold.

Dr. Laton admitted at his deposition that he relied entirely on Dr. Kram's opinion that 1.2 µg/L TCE concentration was the appropriate threshold to map the purported class area but had no independent basis for selecting that particular number. Laton Dep. 14:19-15:14 (Dkt. 187-9). If the Court grants the pending motion to exclude Dr. Kram's opinion regarding the 1.2 µg/L threshold, Dr. Laton's contour must necessarily be excluded as well as under Rule 702.

### II. CONCLUSION

Union Pacific respectfully requests that the Court exclude the opinions of Dr. Laton.

Dated: November 25, 2025                           Respectfully submitted,

                                                KNIGHT NICASTRO MACKAY, LLC

                                                By:  */s/ Erik H. Nelson*
                                                    Erik H. Nelson
                                                    Kansas Bar No. 24909
                                                    nelson@knightnicastro.com
                                                    304 W. 10th Street
                                                    Kansas City, MO 64105
                                                    (816) 396-0161
                                                    (816) 396-6233 (fax)

                                            BAKER BOTTS L.L.P.

                                                    Kevin T. Jacobs (lead attorney)
                                                    Texas Bar No. 24012893
                                                    kevin.jacobs@bakerbotts.com
                                                    Hannah Roskey
                                                    Texas Bar No. 24118237
                                                    hannah.roskey@bakerbotts.com
                                                    910 Louisiana Street
                                                    Houston, Texas 77002
                                                    (713) 229-1947
                                                    (713) 229-7847 (fax)

                                                    Kent Mayo (lead attorney)
                                                    Washington, D.C. Bar No. 452842
                                                    kent.mayo@bakerbotts.com
                                                    Martha Thomsen
                                                    Washington, D.C. Bar No. 1016402
                                                    martha.thomsen@bakerbotts.com
                                                    700 K Street, N.W.
                                                    Washington, D.C. 20001
                                                    (202) 639-7700
                                                    (202) 639-7890 (fax)

SHOOK, HARDY & BACON LLP

Robert R. Simpson
Connecticut Bar No. 409048
rsimpson@shb.com
City Place I
Hartford, CT 06103
(850) 515-8901
(850) 515-8911 (fax)

*Attorneys for Defendant*
*Union Pacific Railroad Company*

## **CERTIFICATE OF SERVICE**

      This is to certify that on this 25th day of November, 2025, I caused a copy of the foregoing to be served upon all parties via the Court's electronic filing system.

                                                        */s/ Erik H. Nelson*
                                                        Erik H. Nelson