**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

FAYE BLACK et al.,

           *Plaintiffs,*

v.

           Case No. 23-1218-EFM-GEB

UNION PACIFIC RAILROAD COMPANY,

           *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff Faye Black's Motion for Class Certification (Doc. 184) of her suit alleging that Defendant Union Pacific Railroad Company ("Union Pacific") has caused trichloroethylene ("TCE") to contaminate her and the proposed class members' properties. After the Court held a hearing on this matter, Plaintiff filed a Motion to Revise the Class Area (Doc. 217). For the reasons stated herein, the Court grants Plaintiff's Motion to Revise the Class Area, modifies the class definition, and grants Plaintiff's Motion for Class Certification subject to Plaintiff's revision and the Court's modification.

## I.      Factual and Procedural Background

The Court recently recited the facts of this case in an order on Union Pacific's *Daubert* motion and motion to dismiss. The facts relevant to those motions remain relevant here, so the Court quotes much of the factual background from its previous order.

> Plaintiff brings this putative class action alleging that Union Pacific contaminated her property, exposing her and others similarly situated to toxic chemicals. Union Pacific owns and operates an industrial railroad site near 29th North and Grove Streets in Wichita, Kansas (the "Site"). In 1994, the City of Wichita discovered [TCE] contamination in the groundwater near 21st North and Grove Streets. In 1995, the Kansas Department of Health and Environment

("KDHE") began investigating the TCE contamination, eventually confirming that Union Pacific's Site was the source of the contamination.

In 2002, Union Pacific entered a consent order with KDHE to investigate the contamination. In 2003, KDHE and Union Pacific learned that the groundwater contamination plume extended 2.7 miles south of the Site. Pursuant to the consent order, and overseen by KDHE, Union Pacific has engaged in investigations, studies, and remediation measures since at least 2005.

In September 2022, KDHE held its first public meeting to inform the community in Northeast Wichita about the contamination and public health risks. Plaintiff filed suit in October 2023 and seeks to certify a class of persons who own residential homes within an area overlying TCE-contaminated groundwater. After Plaintiff filed an Amended Complaint and Union Pacific filed a partial motion to dismiss, only four of Plaintiff's claims remain: negligent remediation, continuing nuisance, continuing trespass, and violation of Kansas's Discharge Statute, K.S.A. § 65-6203.

Plaintiff contends that the TCE contamination in the groundwater and soil beneath the PCA homes will volatize into vapor and enter the indoor air of the PCA homes via a process called vapor intrusion. Plaintiff maintains that this poses a health risk to her and the potential class members. Accordingly, Plaintiff requests damages measured, in large part, by the cost of installing vapor intrusion mitigation systems within the PCA homes. Plaintiff designated five experts to support her claims:

**Dr. Richard Laton:** Dr. Laton is a hydrologist, hydrogeologist, and environmental contamination expert. He used historic groundwater sampling data from tests conducted by Union Pacific and KDHE to map where the TCE groundwater contamination exceeds a value of 1.2 micrograms per liter ($\mu$g/L). Dr. Laton's plume map defines Plaintiff's proposed class area ("PCA").

**Mr. Frank Anastasi:** Mr. Anastasi is a hydrogeologist and . . . opines that Union Pacific's remediation measures have been negligent since 2003.

**Dr. Mark Kram:** Dr. Kram is a hydrogeochemist. He offers an opinion that connects the TCE groundwater contamination value of 1.2 $\mu$g/L to a risk of TCE vapor intrusion into the overlying homes at a value of 0.48 micrograms per cubic meter ($\mu$g/m$^3$). Based upon this risk, he opines that vapor intrusion mitigation systems should be installed at every home that overlies TCE groundwater contamination of 1.2 $\mu$g/L.

**Mr. Thomas Hatton:** Mr. Hatton is a technical expert in the field of vapor intrusion mitigation. He offers cost estimates for installing vapor intrusion mitigation systems within two types of homes he identified in the PCA: single-family, single-story ranch homes and single-family, two-story residences.[1]

On April 23–24, 2026, the Court held a hearing to address Union Pacific's motion to exclude Plaintiff's experts and Plaintiff's Motion to Certify Class. In its opposition to Plaintiff's

---

[1] *Black et al. v. Union Pacific R.R. Co.*, 2026 WL 1623090, at *1–2 (D. Kan. June 5, 2026).

Motion to Certify Class, Union Pacific raised the issue of standing. At the hearing, the Court invited the parties to brief the standing issue more fully. Further, the Court invited Plaintiff to revise its class definition based upon several issues identified with Dr. Laton's methodology in rendering a plume map. Plaintiff submitted a revised class area map and Union Pacific filed a motion to dismiss for lack of standing.

Subsequently, on June 5, 2026, the Court denied Union Pacific's motion to dismiss and granted in part and denied in part Union Pacific's motion to exclude. The Court concluded that it would consider the following opinions for the purposes of ruling on Plaintiff's Motion for Class Certification: "Dr. Laton's revised map; Dr. Kram's opinion, except as to the area of the PCA; Dr. Anastasi's opinion regarding Union Pacific's negligence in remediating the contamination; and Mr. Hatton's opinions."[2] Plaintiff's proposed class definition is as followed on the next page:

---

[2] *Id.* at *14.

Any and all persons that currently own any single-family home residential real property depicted by the area outlined in blue and identified in pink below representing groundwater contamination of 1.2 µg/L.[3]



## II.    Legal Standard

Fed. R. Civ. P. 23 governs the certification of class actions. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[4] In ruling on a motion for class certification, courts must accept the facts contained within the plaintiff's

---

[3] This is the Revised Class Area defined in Doc. 217.

[4] *DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1194 (10th. Cir. 2010) (citations and internal quotations omitted).

complaint as true.[5] Although "a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[6] Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[7] Any attempt by the party opposing class certification to litigate the merits of the claims must be disregarded.[8]

The burden is on the plaintiffs to make a prima facie case that the putative class meets Rule 23's requirements.[9] Taking the "substantive, non-conclusory allegations of the complaint as true,"[10] courts must conduct a "rigorous analysis" of a plaintiff's complaint to ensure it meets Rule 23's requirements.[11] Even so, "[c]ourts should err on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary."[12] As an initial step, Rule 23(a) requires the proposed representative plaintiffs to show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

---

[5] *Harlow v. Sprint Nextel Corp.*, 254 F.R.D. 418, 420 (D. Kan. 2008) (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir.1999)).

[6] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (further citations and quotations omitted).

[7] *Id.* at 466.

[8] *See id.* (quoting Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment. ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.")).

[9] *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

[10] *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (further citations omitted).

[11] *Id.* (further citations omitted).

[12] *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)) (further citations omitted).

the interests of the class." If the plaintiffs meet Rule 23(a)'s requirements, they must show that the class fits within one of the Rule 23(b) categories.[13] Plaintiff in this case proceeds under Rule 23(b)(3) which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### III.    Analysis

The Court will address each of the four Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy—and then turn to Rule 23(b)(3)'s requirements of predominance of common questions and the superiority of a class action.

### A.    Numerosity

"To show numerosity, 'there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement.'"[14] The Tenth Circuit considers the question of whether a class is "precise, objective, and presently ascertainable"[15] as a sub-requirement of the numerosity inquiry.[16] The Tenth Circuit, however, has not explicitly adopted a standard for assessing ascertainability; instead it allows district courts to look to other circuits' tests as part of their discretion in ruling on a motion to certify a class.[17] Plaintiff suggests the Seventh Circuit's test

---

[13] *See* Fed. R. Civ. P. 23(b).

[14] *Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023) (emphasis omitted) (quoting *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)).

[15] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 445 (D. Kan. 2006).

[16] *Evans*, 2023 WL 3262012, at *5.

[17] *Id.* at *8.

which requires a plaintiff to show ascertainability by "defining classes clearly and with objective criteria."[18] Union Pacific does not contest the use of this test, so the Court will apply it.

Plaintiff contends that her use of fixed, geographic boundaries is a sufficient method of defining the class. "Reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition." [19] Union Pacific does not contend that Plaintiff's use of a geographic boundary is insufficiently precise or objective to define the class. Rather, Union Pacific asserts that the underlying method used to draw the boundaries by Plaintiff's expert, Dr. Laton, is flawed which renders his geographic boundaries unsuitable. Specifically, Union Pacific argues that Dr. Laton's boundaries do not capture the *current* groundwater plume and instead captures a phantom contamination plume.

Union Pacific's argument relies on its *Daubert* motion which predated the hearing on these matters and Dr. Laton's revised map. In its order on Union Pacific's motion to exclude, the Court concluded that Dr. Laton's revised map addressed the phantom plume issues by using more recent data and by not mapping non-detect test results.[20] As such, Union Pacific's arguments here are moot. Union Pacific offers no other argument on the ascertainablility of the class. As such, the Court finds that Plaintiff's class definition uses objective criteria—namely fixed geographic boundaries—to define the proposed class clearly, satisfying the ascertainability requirement of class certification.

---

[18] *Id.* (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 672 (7th Cir. 2015)).

[19] *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538–39 (6th Cir. 2012) (quoting 5 Moore's Federal Practice § 23.21[3] (3d ed. 1997)).

[20] *See Black*, 2026 WL 1623090, at *6–9 for a detailed discussion of these matters.

Of significant note, however, Plaintiff conceded at the hearing that there may be homes within the PCA that have existing vapor intrusion barriers and that these homes should be excluded from the class. Plaintiff has not modified the class definition to reflect this concession. In accord with that concession, the Court modifies the class definition to exclude homes that have existing vapor barriers.

Regarding numerosity, "[c]ourts have found that classes as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action."[21] Here, Plaintiff asserts that there are 1,754 residential properties within the geographic area defining her class. This large number of potential class members is sufficient to establish the numerosity required to maintain a class action.

**B.    Commonality**

To show commonality, a plaintiff must show that her claims rely on a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[22] "A finding of commonality requires only a single question of law or fact common to the entire class."[23] "What matters to class certification . . . is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[24]

Plaintiff offers several common questions capable of classwide resolution: (a) whether Union Pacific's acts or omissions at the Site proximately caused TCE to be released and migrate

---

[21] *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504–05 (D. Kan. 2014) (internal quotation and citations omitted).

[22] *Sherman v. Trinity Teen Solutions*, 84 F.4th 1182, 1192 (10th Cir. 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

[23] *Id.* (quoting *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018)).

[24] *Wal-Mart*, 564 U.S. at 350 (citation omitted) (emphasis in original).

into, at, or around the PCA; (b) whether Union Pacific failed to exercise reasonable care in their storing, use, disposal, containment, investigation, and remediation of TCE; (c) whether TCE released from the Site migrated throughout the entire PCA; (d) whether properties within the PCA are contaminated with TCE; and (e) whether TCE contamination at or above 1.2 µg/L has caused injury to the PCA properties necessitating mitigation of soil vapor.

Union Pacific does not mount a challenge to the existence of these common questions. Rather, Union Pacific contends that these common questions will be overshadowed by the individual questions necessary to find common answers. The Court will fully address this argument in its analysis of the Rule 23(b)(3) requirement for Plaintiff to show that common questions predominate the litigation. As such, the Court finds that Plaintiff has met her burden of showing common questions capable of driving common answers apt to resolve the litigation.

## C.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "does not require that every member of the class share a fact situation identical to that of the named plaintiff."[25] Instead, "[t]ypicality requires only that the claims of the class representative and class members are based on the same legal or remedial theory."[26]

Plaintiff asserts that her home is impacted by the contamination plume in the same way as the proposed class members. Her home is within the geographic boundary drawn by Dr. Laton within which he contends the TCE groundwater contamination exceeds 1.2 µg/L. Dr. Kram opines that TCE contamination in the groundwater at this level will more likely than not result in TCE

---

[25] *Sherman*, 84 F.4th at 1193 (quoting *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014)).

[26] *Id.* (quoting *Menocal*, 882 F.3d at 924).

vapor intrusion in the PCA homes. Further, Dr. Kram has determined that preemptive mitigation is an appropriate remedy for the homes within the PCA. As such, Plaintiff asserts that her claim is typical of the proposed class members because the groundwater, soil, and soil vapor is contaminated underneath their homes by Union Pacific's common course of conduct and that the class members share an interest in mitigating the contamination.

Union Pacific responds that there are individual issues that defeat Plaintiff's showing of typicality. First, Union Pacific asserts that there are differences in the class area homes' characteristics. Second, Union Pacific asserts there are differences in the type of interference with the use-and-enjoyment element of Plaintiff's continuing nuisance claim. Third, Union Pacific contends there are differing causal factors of the contamination within the PCA. Finally, Union Pacific argues that the statue of limitations will be applied differently amongst the class members.

None of these arguments, however, impact Plaintiff's theory of liability that Union Pacific's Site is the source of TCE contamination in the groundwater, soil, and vapor underneath and within their homes. Nor do these arguments impact Plaintiff's remedial theory that vapor intrusion mitigation systems are necessary within the PCA homes. Rather, all of these arguments draw distinctions between the putative class members' factual circumstances. But this line of reasoning inappropriately shifts the focus of the typicality inquiry onto the wrong party. When "the claims of the named plaintiff[] and putative class members involve the same conduct by the *defendant*, typicality is established regardless of factual differences."[27] As such, Plaintiff has shown typicality by alleging that Union Pacific has negligently and tortiously caused her and the proposed class members injury by causing TCE to enter and remain on their properties.

---

[27] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*, 2020 WL 1180550, at *15 (D. Kan. Mar. 10, 2020) (emphasis added) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001)).

**D.      Adequacy**

The Rule 23(a)(4) adequacy inquiry asks "(1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class."[28] "To defeat class certification, a conflict must be fundamental and go to the specific issues in controversy."[29] "A fundamental conflict exists where some members of the class claim harm through a representative plaintiff's conduct that resulted in benefit to other class members."[30] "Minor conflicts will not defeat class certification."[31]

Neither Plaintiff nor counsel has any known conflicts with other class members. Union Pacific attempts to insert a conflict by speculating that some class members may have suffered personal injury and other damages for which Plaintiff has not sought relief. Union Pacific contends that class members who may have suffered personal injury and that are included in this class may be precluded from later bringing those personal injury claims. Indeed, Plaintiff has not sought to certify personal injury claims. But because a class action is one of the recognized exceptions to the rule against claim-splitting, class members should not be precluded from pursuing claims of personal injury.[32]

---

[28] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)).

[29] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (citation omitted).

[30] *Id.* (citation omitted).

[31] *Id.* (citation omitted).

[32] *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (reasoning that a plaintiff's direct claims would not be barred by the rule against claim-splitting because a class action "is one of the recognized exceptions to the rule against claim-splitting").

Second, Plaintiff has retained counsel that is experienced in prosecuting complex environmental class actions. Union Pacific does not dispute this point. The Court finds Plaintiff's retained counsel possess knowledge, resources, experience, and commitment to adequately represent the class.

Finding that no fundamental conflict exists and that Plaintiff and her counsel will vigorously prosecute this action, the Court finds that Plaintiff and her counsel can adequately represent the proposed class.

### E.    Rule 23(b)(3)

#### 1.    Predominance

"Rule 23(b)(3)'s predominance inquiry looks to whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues."[33] In assessing predominance of the issues, "[t]he court should *characterize* the issues in the case as common or not, and then *weigh* which issues predominate."[34] Common issues are susceptible to proof by the same evidence for each member or generalized, class-wide proof.[35] Individual issues, on the other hand, require class members to present evidence that varies from member to member.[36] The predominance inquiry begins with the elements of the underlying causes of action.[37] Before assessing the elements of Plaintiffs' claims, however, it is important to revisit Plaintiff's theory and Union Pacific's overarching arguments.

---

[33] *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1175 (10th Cir. 2023) (internal quotation marks and citation omitted).

[34] *Id.* (emphases in original) (citation omitted).

[35] *Id.*

[36] *Id.*

[37] *Id.*

Plaintiff relies on Dr. Laton to conclude that Union Pacific's Site is the source of a TCE groundwater contamination plume. Dr. Laton has mapped where the groundwater plume is at or exceeds 1.2 µg/L TCE concentration. Dr. Kram has determined that where the TCE concentration in the groundwater is at or exceeds1.2 µg/L, overlying homes are more likely than not going to experience TCE vapor intrusion at a level that requires mitigation. The Court has accepted the opinions of these experts for purpose of ruling on the class certification motion. As such, the common questions among all of Plaintiff's claims, and equally applicable to the putative class members, is whether (1) there is TCE in the groundwater attributable to Union Pacific's Site at the concentrations Dr. Laton describes; (2) whether the presence of TCE in the groundwater is likely to result in vapor intrusion in the overlying homes; and (3) whether the vapor intrusion risk requires mitigation.

Union Pacific posits several individual questions in an attempt to show that common questions do not predominate the litigation. Union Pacific asserts that proving vapor intrusion exists in each home will require an assessment of the individual characteristics of each home and property-by-property testing in each home. But this argument overlooks Plaintiff's experts' theories: namely, that individual assessments are not necessary because the TCE concentration in the groundwater at 1.2 µg/L more likely than not causes vapor intrusion in the overlying homes. As discussed above, the Court found that these opinions are not excludable at this stage of the proceedings. Next, Union Pacific asserts that Dr. Laton's mapping is flawed because he misused data and that he did not account for other potential sources of TCE in the groundwater. Dr. Laton's report does indeed consider other potential sources of TCE contamination, rendering this argument unpersuasive. Further, the Court addressed Dr. Laton's use of the testing data in detail in its order

on Union Pacific's motion to exclude Dr. Laton[38] and has since accepted Dr. Laton's revised map in ruling on this motion. As such, these overarching arguments are unpersuasive, and the Court turns to an analysis of the elements of each of Plaintiff's claims.

  a. Negligent Remediation

Plaintiff's negligent remediation claim requires her to show that (a) Union Pacific owed a duty of reasonable care to Plaintiff and the putative class members when it voluntarily undertook to render services to them which it should have recognized as necessary for their protection; (b) Union Pacific breached that duty; (c) Plaintiff and the putative class members suffered injury; and (d) that there is a causal connection between the breach and the injury suffered. [39]

It is undisputed that Union Pacific has undertaken remedial efforts to address the TCE contamination emanating from the Site. Nonetheless, Plaintiff contends that Union Pacific has failed in its duty to exercise reasonable care in two ways: (1) it has not installed remediation measures in individual homes and (2) it seeks to only remediate the groundwater contamination to 5 µg/L rather than to 1.2 µg/L. Plaintiff contends that these failures have caused damage to the PCA properties through the continued presence of TCE at unacceptable levels. Union Pacific responds that to prevail on a claim of negligent remediation, Plaintiff must show physical harm and does not. Rather, Union Pacific characterizes Plaintiff's injury as a mere risk of exposure to vapor intrusion. This is the same argument Union Pacific presented in its motion to dismiss for lack of standing. In ruling on that motion, the Court rejected the argument and found that Plaintiff's purported injury is an injury to her property rather than a speculative risk of vapor intrusion.[40]

---

[38] *Black*, 2026 WL 1623090, at *6–9.

[39] *See McGee ex rel. McGee v. Chalfant*, 248 Kan. 434, 806 P.2d 980, 983 (1991); *N.T. v. Taco Bell Corp.*, 411 F. Supp. 3d 1192, 1196 (D. Kan. 2019) (quoting Restatement (Second) of Torts § 324A (1964)).

[40] *See Black*, 2026 WL 1623090, at *4–6.

The issues presented here—whether Union Pacific should have installed mitigation systems in individual homes and whether it should remediate the groundwater TCE concentration to 1.2 µg/L—are common issues because they can be decided by common evidence. Further, whether TCE contamination in groundwater at or above 1.2 µg/L is an injury is also a common question. Finally, the causal connection between the contamination and Union Pacific's allegedly negligent remedial efforts is susceptible to common proof, namely through the opinions of Mr. Anastasi. Accordingly, the Court finds that these common issues predominate Plaintiff's negligent remediation cause of action.

### b.  Continuing Nuisance

The elements of Plaintiff's continuing nuisance claim are:

(1) [T]he defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use; (2) there was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended; (3) the interference that resulted and the physical harm, if any, from that interference proved to be substantial; and (4) the interference was of such a nature, duration, or amount as to constitute unreasonable interference with the use and enjoyment of the land.[41]

A nuisance claim can be brought under a theory of intentional conduct, negligence, or strict liability.[42] Although Plaintiff does not explicitly state under which theory she brings her continuing nuisance claim, for purposes of this Order, the Court assumes that Plaintiff presents this claim under a strict liability theory.

Here, Plaintiff asserts that the interference with the use and enjoyment of her (and the class members') land is the presence of TCE on their properties caused by Union Pacific's Site. As discussed above, she proposes that this can be established by common proof through Dr. Laton's

---

[41] *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 697 F.3d 1259, 1267 (10th Cir. 2012) (quoting *Pagel v. Burlington N. Santa Fe Ry. Co.*, 316 F. Supp. 2d 984, 989 (D. Kan. 2004)).

[42] *Macias v. BNSF Ry. Co.*, 2020 WL 3469680, at *8 (D. Kan. June 25, 2020) (citation omitted).

map. This interference is substantial because of the need for mitigation due to the health risks associated with vapor intrusion. Again, Plaintiff proposes establishing this by common proof through Dr. Kram's testimony of the likelihood of vapor intrusion in the overlying homes when the groundwater TCE concentration exceeds 1.2 μg/L.

Union Pacific contends that a nuisance claim is not susceptible of common proof because of the varying interferences among the class members, citing *Burdette v. Vigindustries, Inc.*.[43] There, the court denied certification of a property-contamination nuisance claim finding there was "no common interference claimed."[44] Instead, the *Burdette* class based their nuisance claim on various interferences, some that stemmed from subsidence, risk of future subsidence, and from the buyout of properties itself.[45] The Court reasoned that "[s]uch disparate interferences will require separate analyses of the relevant nuisance factors, different evidence, and possibly different defenses, which predominate over any common questions."[46]

Unlike *Burdette*, however, Plaintiff's theory of interference is singular and common to all, namely that TCE in the groundwater requires vapor intrusion mitigation. Because Plaintiff pleads a common interference subject to common proof, the Court finds that common issues predominate in Plaintiff's continuing nuisance claim.

---

[43] 2012 WL 405621 (D. Kan. Feb. 8, 2012).

[44] *Id.* at *8.

[45] *Id.*

[46] *Id.*

c.    Continuing Trespass

To show continuing trespass, Plaintiff must demonstrate that Union Pacific tortiously placed a thing on Plaintiff and the class members' land and failed to remove that thing.[47] Plaintiff contends that the Union Pacific caused TCE contamination to enter and remain on her and the class members' properties. Union Pacific asserts that she cannot provide common proof of these claims, but the Court has accepted Dr. Laton's and Dr. Kram's reports for purposes of this motion, which plainly supply common evidence to support this claim. Accordingly, the Court finds that Plaintiff's continuing trespass claim is predominated by common questions.

d.    Kansas Discharge Statute

Kansas's discharge statute, K.S.A. § 65-6203, requires anyone "responsible for an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state" to compensate the property owner.[48] This imposes strict liability on the releasor of such materials.[49] Like her other claims, Plaintiff seeks to show by common proof that Union Pacific's Site is the source of TCE contamination on her and the class members' properties. For the reasons described above, the Court finds that common issues predominate her claim here.

Union Pacific argues that the individual application of the three-year statute of limitations concerning their K.S.A. § 65-6203 claim will overwhelm the other common issues. Union Pacific rightly points to this Court's previous ruling that the discovery rule applies in determining when the statute of limitations began to run.[50] Union Pacific asserts that class members may have

---

[47] *See Pagel.*, 316 F. Supp. 2d at 988–89; *United Proteins, Inc. v. Farmland Indus., Inc.*, 259 Kan. 725, 915 P.2d 80, 83 (1996).

[48] K.S.A. § 65-6203(a).

[49] *Eastman v. Coffeyville Res. Refin. & Mktg. LLC*, 295 Kan. 470, 284 P.3d 1049, 1055 (2012).

[50] *Black v. Union Pacific R.R. Co.*, 2024 WL 1604620, at *10 (D. Kan. Apr. 12, 2024).

discovered the existence of their claims at different times, thereby requiring the Court to resolve the date of accrual for each individual class member. Accepting the allegations in Plaintiff's Amended Complaint as true, however, the class members were left in the dark regarding the contamination until a community meeting with KDHE was held on September 8, 2022—within three years of this action's filing. As such, Union Pacific's argument on this point is unpersuasive.

Union Pacific's citation to *Ebert v. General Mills, Inc.*[51] also warrants a brief discussion. In *Ebert*, the Eighth Circuit reversed a district court's certification of a class action brought by residential property owners alleging that General Mills was liable for damage caused by TCE contamination in the ground, causing TCE vapors to migrate into the residential areas and threaten the health of the residents.[52] The Eighth Circuit found that the district court abused its discretion in determining that common issues predominated over individualized issues.[53] On its face, this case seems strikingly similar, but two significant factors distinguish that case from Plaintiff's claims here.

First, the *Ebert* class sought damages based upon a diminution in value of their properties.[54] Here, Plaintiff has disclaimed that her damages assessment is based upon a diminution in value of the PCA properties. Second, the *Ebert* class's claimed injury was TCE vapors—which necessarily required a showing that the vapor intrusion presently occurred at each property. Here, Plaintiff's claimed injury is the TCE contamination in the groundwater at a concentration of 1.2 µg/L. Both Plaintiff's experts and Union Pacific's consultants have mapped plumes of TCE at various

---

[51] 823 F.3d 472 (8th Cir. 2016).

[52] *Id.* at 475.

[53] *Id.* at 479.

[54] *Id.* at 476.

concentrations in this case. Because the mapped plume defines the class area, Plaintiff's claimed injury—the existence of TCE in the groundwater—is susceptible of common proof. Although Plaintiff does complain of vapor intrusion, her expert's opinion is that individualized testing is unnecessary; Dr. Kram opines that every home overlying TCE contamination in the groundwater at 1.2 µg/L will more likely than not experience vapor intrusion. These significant factual differences distinguish Plaintiff's claims from the claims presented in *Ebert*. Accordingly, the Court finds that common issues predominate all of Plaintiff's claims.

### e.    Class-Wide Damages

Plaintiff offers that damages can be determined class-wide by relying on Mr. Hatton's testimony, who provided cost estimates for installing vapor intrusion mitigation systems in the PCA homes. Mr. Hatton identified two types of homes within the PCA and provided an estimate for each type of home. Union Pacific contends that Plaintiff fails to demonstrate that her damages can be determined class-wide by attacking Plaintiff's expert. But the Court found that Mr. Hatton's cost estimates of the vapor-intrusion mitigation systems within the two types of PCA homes that he identified acceptable for purposes of class certification.[55] Accordingly, the Court finds that Plaintiff has demonstrated that the question of damages can be answered by common evidence, namely through Mr. Hatton's opinions.

In sum the Court finds that Plaintiff has demonstrated that common questions predominate individual issues in all of her claims related to liability and damages.

### 2.    *Superiority*

Rule 23(b)(3) also requires that Plaintiff show that class litigation is "superior to other methods for fairly and efficiently adjudicating the controversy." Factors to consider are:

---

[55] *Black*, 2026 WL 1623090, at *13–14.

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

A class action is "superior when it allows for the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"[56]

Plaintiff contends that a class action is superior here because there is a high cost to litigating a complex environmental case like this requiring various experts, extensive discovery, and qualified counsel. Plaintiff contrasts the expense of litigating the suit with her estimate of damages recoverable by each putative class member. She estimates that cost of the suit well-exceeds $200,000, whereas the estimated recovery for each individual is approximately $30,000. Union Pacific's response primarily asserts that the individualized issues that it cited previously render individual suits more apt for this matter's resolution. Because the Court found that there are fewer individual issues than Union Pacific posits, the Court finds that Plaintiff has met her burden of showing that class treatment of the claims here is superior to individual suits—especially considering the expense of this litigation and anticipated recovery for individual plaintiffs.

In sum, Plaintiff has met her burden of demonstrating that class certification is appropriate by satisfying Rule 23(a) and (b)(3).

**F.    The Court appoints Plaintiff's proposed counsel as class counsel**

Under Rule 23(g)(1), the Court must appoint class counsel whenever it certifies a class. In doing so, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex

---

[56] *Menocal*, 882 F.3d at 915 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."[57]

Plaintiff request the Court appoint the following attorneys as class counsel: William R. Griffin of Martin, Pringle, Oliver, Wallace, & Bauer, LLP; Ryan D. Ellis of The Lanier Law Firm, PC; Christopher T. Nidel and Jonathan Nace of Nidel & Nace, PLLC; Ari Kresch of Kresch Legal Services PR, PLLC; and Steven J. German of German Rubenstein, LLP. Defendant offers no objection to any of the proposed class counsel. Still, the Court must analyze the four factors under Rule 23(g) instead of simply relying on the parties' agreement in this matter.

Relevant to the first and fourth factors, Plaintiff's counsel has already invested significant resources in pursuing this litigation and identifying or investigating potential claims over the past several years. Likewise, the second factor favors appointing Plaintiff's counsel because the counsels' firms are well-known entities with significant experience litigating complex civil claims as well as class actions. Third, there is little doubt based on counsel's wide experience and intelligent briefing in this case that they possess knowledge of the applicable law for Plaintiff's claims. Therefore, each of the factors favor appointing Plaintiff's counsel as class counsel in this case.

**IT IS THEREFORE ORDERED** Plaintiff's Motion to Revise Class Area (Doc. 217) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's class definition is modified to exclude single-family home residential real properties that have existing vapor barriers.

---

[57] Fed. R. Civ. Proc. 23(g)(1)(A).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Class Certification (Doc. 184) is **GRANTED** subject to the revision of the class area described in Plaintiff's Motion to Revise the Class Area and the Court's modification described above.

**IT IS FURTHER ORDERED** that William R. Griffin, Ryan D. Ellis, Christopher T. Nidel, Jonathan Nace, Ari Kresch, and Steven J. German are appointed as class counsel in this case.

**IT IS SO ORDERED**.

Dated this 30th day of June 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE